**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |

**DEBTORS' MOTION FOR ENTRY OF INTERIM AND
FINAL ORDERS (I) AUTHORIZING, BUT NOT DIRECTING, THE
DEBTORS TO (A) PAY PREPETITION WAGES, COMPENSATION,
EMPLOYEE BENEFITS, AND OTHER EMPLOYEE OBLIGATIONS
AND (B) CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS
IN THE ORDINARY COURSE; (II) AUTHORIZING ALL BANKS TO
HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION
EMPLOYEE OBLIGATIONS; AND (III) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), seek entry of interim and final orders, substantially in the forms attached hereto as **Exhibit A** and **Exhibit B** (the "Proposed Interim Order" and the "Proposed Final Order", respectively), (i) authorizing, but not directing the Debtors to (a) pay prepetition wages, compensation, employee benefits, and other employee obligations and (b) continue certain employee benefit programs in the ordinary course; (ii) authorizing all banks to honor prepetition checks for payment of prepetition employee obligations; and (iii) granting other related relief. In support of this motion (this "Motion"), the Debtors respectfully state as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

## JURISDICTION AND VENUE

1.      The United States Bankruptcy Court for the District of Delaware (this "Court") has jurisdiction over the above-captioned chapter 11 cases (these "Chapter 11 Cases"), the Debtors, property of the Debtors' estates, and these matters under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012.    This is a core proceeding within the meaning of 28 U.S.C. § 157(b)(2).

2.      Pursuant to rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors consent to the entry of a final judgment or order with respect to this Motion if it is determined that this Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

3.      Venue of these Chapter 11 Cases in this district is proper under 28 U.S.C. §§ 1408 and 1409.

4.      The statutory bases for the relief requested herein are sections 105(a), 363(b), 363(c), 507(a), and 541 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code") and rules 6003 and 6004 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules").

## GENERAL BACKGROUND

5.      On March 16, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties

as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made, and no official committees have been appointed in these Chapter 11 Cases.

6.     Born out of the desire to reimagine waste, the Debtors, originally founded in 2016, use their own proprietary process and licensed technology from a non-debtor affiliate to reduce plastic waste.  The company purchases hard-to-recycle mixed post-consumer and post-industrial plastic waste to convert into valuable chemical feedstocks that can be used to make new plastics. Through this method, the company repurposes hydrocarbons bound for the landfill, providing a more sustainable environmental future.

7.     Additional factual background the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these Chapter 11 Cases is set forth in the *Declaration of Craig R. Jalbert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), which is incorporated herein by reference.[2]

### RELIEF REQUESTED

8.     The Debtors seek entry of the Proposed Interim Order and the Proposed Final Order, pursuant to sections 105(a), 362, 363, 507(a), and 541 of the Bankruptcy Code and Bankruptcy Rules 6003 and 6004, authorizing, but not directing, the Debtors to (i) pay the Workforce Obligations (as defined below) in an aggregate amount not to exceed $325,000 on an interim basis, and $325,000 on a final basis and (ii) honor and continue the Workforce Programs (as defined below) in the ordinary course of business and granting related relief.

---

[2]     Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration.

3

9.      To assist in implementing the relief requested, the Debtors also request an order (i) authorizing the Debtors' banks to receive, process, honor, and pay all of the Debtors' prepetition checks and to fund transfers on account of any Workforce Obligations to the extent sufficient funds are available; and (ii) authorizing, but not directing, the Debtors to issue new postpetition checks or effect new postpetition fund transfers on account of the Workforce Obligations to replace any prepetition checks or fund transfer requests that may be dishonored or rejected.

## FACTS RELEVANT TO THIS MOTION

10.      As of the Petition Date, the Debtors maintain a workforce (the "Workforce") consisting of approximately 113 individuals, including salaried and hourly employees (the "Employees") and independent contractors (the "Contractors").

11.      As further described below, the Workforce provides a variety of essential functions, including, among other things, mechanical, construction, and operational services, as well as services related to human resources, finance, engineering, health and safety, and quality assurance. The Workforce includes personnel that are intimately familiar with the Debtors' business, many of whom have developed relationships with the Debtors' customers, suppliers, and key constituents essential to the Debtors' business. Thus, the Workforce is essential to the effective operation of the Debtors' business and their ability to maximize value during the pendency of these Chapter 11 Cases, as the Debtors work toward a sale of all or substantially all of their assets.

12.      In the ordinary course of their business, the Debtors maintain certain compensation and benefit programs, including, among others, healthcare programs, wellness programs, a 401(k) plan, certain time off programs, and a paid sick leave program, and pay various administrative fees

in connection therewith (collectively, the "<u>Workforce Programs</u>" and the obligations to the Workforce thereunder are the "<u>Workforce Obligations</u>," as more fully described below).[3]

13.    To effectuate a successful, value-maximizing chapter 11 sale process, and continue operating within these Chapter 11 Cases, the Debtors need the Workforce's continued commitment and support.  Therefore, the Debtors are requesting the relief set forth in this Motion to minimize any hardship to the Workforce resulting from the commencement of these Chapter 11 Cases.  The Debtors must take all necessary steps to retain the Workforce and bolster their morale to preserve and maximize the value of the Debtors' estates.

14.    The Debtors seek authority to pay and honor their prepetition Workforce Obligations, each as further detailed below, in the following amounts:

| Workforce Obligations | Interim Amount | Final Amount |
|---|---|---|
| Wages | $111,000 | $111,000 |
| Payroll Processor Fees | $2,000 | $2,000 |
| Withholdings | $26,000 | $26,000 |
| 401(K) Plan | $13,000 | $13,000 |
| Contractor Obligations | $150,000 | $150,000 |
| Reimbursable Expenses | $10,000 | $10,000 |
| Additional Benefits | $2,000 | $2,000 |
| Disability and Life and AD&D Programs | $11,000 | $11,000 |
| **Total:** | **$325,000** | **$325,000** |

---

[3]    The summary of the Workforce Obligations provided herein is qualified entirely by the Debtors' official policies or other practices, programs, or agreements, whether written or unwritten, evidencing an arrangement among the Debtors and their Workforce (each, an "<u>Official Policy</u>").  In the event of any inconsistency or ambiguity between the summary contained herein and an Official Policy, the terms of such Official Policy shall govern, but, for the avoidance of doubt, in no event shall the Debtors make any prepetition payments or honor any prepetition obligations other than what is authorized by the Court after consideration of the Motion.

15.     The Debtors will not pay any individual Employee an amount in excess of the $15,150.00 limit contained in section 507(a)(4) of the Bankruptcy Code (the "Priority Cap") on account of prepetition Workforce Obligations without further order of this Court.

## I.    The Independent Contractors

16.     The Debtors use approximately 15 Contractors that provide mechanical, construction, and operational services, among other services important to the Debtors' operations. The Debtors occasionally rely on the support of other Contractors to complete discrete projects in furtherance of the Debtors' business.

17.     The average monthly expense for the Contractors is approximately $300,000 depending on the Debtors' needs and the applicable project (the "Contractor Obligations"). As of the Petition Date, the Debtors anticipate owing $150,000 in prepetition obligations on account of the Contractor Obligations, all of which will become due during the first 30 days in these Chapter 11 Cases (the "Interim Period").

## II.    The Employees

18.     As of the Petition Date, the Debtors employ 98 full-time Employees, all of which are employed within the United States. Of the Employees, 20 are full-time salaried Employees, and 78 are full-time hourly Employees. Employees become eligible to participate in Workforce Programs on the first day of the month following their date of hire unless otherwise agreed to by the Debtors and the applicable Employee.

### A.    Employee Wages

19.     In the ordinary course of business, the Debtors pay their salaried Employees on the 15th and the last day of every month in arrears and hourly employees weekly in arrears (the "Wages"). The Debtors' payroll obligations are approximately $500,000 per month,

including Withholdings (defined below).  On March 14, 2025, the Debtors' paid salaried employees through March 15, 2025, and the Debtors' paid hourly employees through March 9, 2025.  The Debtors outstanding prepetition payroll obligation is included in Workforce Obligations (defined above).  The next hourly employee payroll, for work performed through March 16, 2025, is set to be funded on March 20, 2025, with payment occurring on March 21, 2025. As of the Petition Date, the Debtors estimate that there is approximately $111,000 in prepetition obligations owed on account of the Wages, all of which will become payable during the Interim Period.  The Debtors request authority to pay the outstanding prepetition Wages, as well as to continue paying Wages in the ordinary course of business.

**B.      Payroll Processing Fees**

20.      The Debtors' payroll process is administered through Paylocity.  In the ordinary course, Paylocity will draw necessary funds to cover payroll from the Debtors on the Thursday following the end of a pay period with respect to hourly Employees.  For salaried employees, Paylocity will draw the necessary funds on the business day prior to the next payment date.  The following day, Paylocity will pay Wages out to the Employees directly.

21.      The Debtors pay service fees of approximately $4,000 per month in arrears to Paylocity (the "Payroll Processor Fees") on account of the administration of Employee payroll. The Debtors owe approximately $2,000 in prepetition arrears on account of Payroll Processor Fees, all of which will become payable during the Interim Period.  The Debtors request authority to pay

the Payroll Processor Fees incurred prepetition, as well as continue to pay Payroll Processor Fees as they become due in the ordinary course.

### C. Social Security, Income Taxes, and Other Withholdings

22.     In connection with paying wages and salaries, the Debtors routinely withhold from Employees' Wages amounts that the Debtors are required to transmit to third parties ("Withholdings").   Examples of such Withholdings include, without limitation, FICA (Social Security and Medicare), federal, state, and local income taxes, garnishments, health care payments, and certain voluntary payroll deductions.   Typically, total Withholdings are approximately $70,000 per pay period, including both the Debtors' obligations and the Employees' obligations.   Such Withholdings, to the extent that they remain in the Debtors' possession, constitute monies held in trust and, therefore, are not property of the Debtors' estates. Accordingly, the Debtors hereby request authority to continue deducting and remitting amounts to the appropriate third parties, as applicable, in a manner consistent with historical practice for any unpaid Withholdings and to continue to honor the Withholdings in the ordinary course on a postpetition basis and consistent with past practice.

23.     As of the Petition Date, the Debtors estimate that there is approximately $26,000 outstanding in prepetition obligations owed on account of the Withholdings, all of which will become payable during the Interim Period.  The Debtors request authority to remit these amounts to the appropriate third parties, as applicable, on account of the unremitted prepetition Withholdings.

### D.    The 401(k) Plan

24.    The Debtors provide a 401(k)-retirement savings plan (the "401(k) Plan")[4] for eligible Employees.  The 401(k) Plan provides for pre-tax salary deductions of compensation and employer matching contributions up to limits established under the Internal Revenue Code.  The Debtors match 100% of the first 2% of an Employee's contribution to the 401(k) Plan and 37.5% of the next 4% of an Employee's contribution to the 401(k) Plan.  The 401(k) Plan is administered by Principal Financial Services, Inc.

25.    Employee participants in the 401(k) Plan have contributions deducted from their payroll based on predetermined contribution amounts.  These amounts are held in trust until remitted to the 401(k) Plan.

26.    As of the Petition Date, the Debtors anticipate approximately $26,000 in prepetition obligations on account of the 401(k) Plan, all of which will become payable during the Interim Period.  The Debtors request authority to pay the accrued prepetition contributions and to continue to contribute amounts on account of the 401(k) Plan as they become due in the ordinary course of business.

### E.    Other Employee Compensation

27.    In addition to Wages, the Debtors offer their Employees other forms of compensation, in the form of paid holidays and personal days (*i.e.*, vacation or illness).  The Debtors also reimburse certain business expenses incurred by Employees.  These forms of compensation are usual, customary, and necessary if the Debtors are to retain qualified Employees to continue operating in the normal course during these Chapter 11 Cases.  The Debtors request

---

[4]    The 401(k) Plan is sponsored by Jackson Healthcare Group, a non-Debtor affiliate.

authority, but not direction, to honor outstanding prepetition obligations with respect to paid time off and expense reimbursements in the ordinary course of business, subject to the Debtors' discretion and applicable restrictions under the Debtors' policies.

### i. Holiday Time Off

28.    In the ordinary course of business, the Debtors grant eligible Employees 10 days of paid holidays per year ("Holiday Pay").  All of the Employees are eligible for Holiday Pay.  Full-time hourly Employees are paid an amount equal to an eight-hour day of their regular pay for Holiday Pay.  Holiday Pay does not accrue and cannot be carried over into following years. Accordingly, the Debtors request authority, but not direction, to honor their Holiday Pay program in the ordinary course of these Chapter 11 Cases.

### ii. PTO Program

29.    In the ordinary course of business, the Debtors grant eligible hourly Employees up to 120 hours of paid time off (collectively, "PTO") per year, depending on the hourly Employee's organizational level and tenure with the Debtors (the "PTO Program").  PTO carries over from year to year but cannot exceed a cap of 180 hours, unless otherwise required by state law.  Upon termination, hourly Employees would typically be paid the value of all accrued but unused PTO pay at the hourly rate of pay in effect upon separation, unless otherwise stipulated by applicable local or state laws.  Such Employees are not required to make any payments to the Debtors if an Employee has a negative PTO accrual upon separation.  Meanwhile, salaried Employees have a "take-what-you-need" program, under which they can take time off as it accords with their needs and their occupational expectations.  As such, salaried Employees do not receive credits for their time off in the same way as hourly Employees.

30.     In addition to the main PTO Program, the Debtors provide 5 days of paid volunteer time off (collectively, "VTO") for their Employees.  Through this program (the "VTO Program"), Employees are encouraged to engage in volunteer activities in the community.  VTO days do not count against PTO accrual, and Employees do not receive any payout for unused VTO days upon separation.

31.     The Debtors also provide their Employees with 3 days of paid sick leave (the "Paid Sick Leave Program" and together with the PTO Program and the VTO Program, the "Time Off Programs").  Under the Paid Sick Leave Program, Employees may use their allotted time to take days off for their own or a family member's health needs.  Employees do not receive any payout for unused time under the Paid Sick Leave Program upon separation.

32.     The Debtors do not anticipate any outstanding obligations on account of the Time Off Programs (the "Time Off Obligations") as of the Petition Date.  However, out of an abundance of caution, the Debtors are requesting authority, but not direction, to (i) pay any outstanding prepetition Time Off Obligations and (ii) honor postpetition Time Off Obligations in the ordinary course of business during the pendency of these Chapter 11 Cases.

### iii.     Other Time-Off Policies

33.     The Debtors maintain policies governing requests by eligible Employees for time off from work, whether paid or unpaid, as the result of, among other things, bereavement leave, voting time, jury duty, family and medical leave, and other leaves of absences in compliance with applicable federal and state laws.  The Debtors seek authority, but not direction, to continue to honor their additional time-off policies in the ordinary course of business during the pendency of these Chapter 11 Cases.

### iv.    *Reimbursable Expenses*

34.    In the ordinary course of business, the Debtors routinely reimburse eligible Employees for certain reasonable expenses incurred within the scope of their employment, including expenses for travel, lodging, ground transportation, meals, supplies, and other business expenses (collectively, the "Reimbursable Expenses[5]").  The Debtors require Employees to submit claims for reimbursement within a timely manner after the expense is incurred.  The Employees may also charge the Reimbursable Expenses to their personal credit cards and submit a request for reimbursement from the Debtors.  Additionally, the Debtors maintain a company credit card, authorized signors of which are officers or other Employees with an essential need for card access due to their specific role.  The company credit cards are administered through Truist Bank.  The Debtors also maintain restricted cards, known as P-Cards, for materials and supplies.

35.    The Debtors believe that payment of the Reimbursable Expenses is important to the morale of the Debtors' Workforce, which, in turn, is critical to maintaining operations during the pendency of these Chapter 11 Cases.  Absent payment of the Reimbursable Expenses, the Debtors would encounter difficulties with retention of their Employees, who are key to the Debtors' ability to continue operating during these Chapter 11 Cases. The Reimbursable Expenses represent a relatively minimal cost to the Debtors' estates in light of the overall benefits achieved.

36.    As of the Petition Date, the Debtors estimate that they owe approximately $10,000 in Reimbursable Expenses.  All of the Reimbursable Expenses will become payable during the

---

[5]    In the ordinary course of business, Brightmark LLC, the parent of the Debtors, pays certain reimbursable expenses on behalf of the Debtors on account of certain of the Debtors' employees.  These amounts are included as "Intercompany Transactions" in the *Debtors' Motion for Entry of Interim and Final orders (I) Authorizing the Debtors to (A) Continue to Operate Their Cash Management System, (B) Honor Certain Prepetition Obligations Related Thereto, (C) Perform Intercompany Transactions, and (D) Maintain Existing Business Forms; (II) Authorizing the Debtors' Banks to Honor all Related Payment Requests; and (III) Granting Related Relief*, filed contemporaneously herewith.

Interim Period.  Requiring Employees to personally bear the cost of any approved, business-related expenses incurred in furtherance of their responsibilities to the Debtors would significantly impair Employee morale.  Accordingly, to avoid harm to the Debtors' business, the Debtors seek authority, but not direction, to pay all outstanding prepetition Reimbursable Expenses and to continue honoring their expense reimbursement policy in the ordinary course of business.

### F.    Health and Welfare Programs

37.    In the ordinary course of business, the Debtors have established standard and customary plans and policies to provide their eligible Employees with health benefits, including medical, prescription drug, dental, vision, life insurance, workers' compensation insurance, and other ancillary benefits programs (collectively, the "Health and Welfare Programs").

#### i.    Health Insurance Benefits.

38.    The Debtors offer eligible Employees and their dependents with medical and prescription healthcare plans (the "Medical Plan") through Blue Shield of California (the "Medical Insurance Provider").  The Debtors pay an average of approximately $130,000 monthly to the Medical Insurance Provider for premiums and administration fees on account of the Medical Plan.[6]

39.    In addition, the Debtors offer eligible Employees and their dependents a dental plan (the "Dental Plan") administered by The Guardian Life Insurance Company of America ("Guardian").  The Debtors pay an average of approximately $1,000 monthly to Guardian for premiums in connection with the Dental Plan.

40.    The Debtors also offer Employees and their dependents a vision plan (the "Vision Plan," and collectively with the Medical Plan and Dental Plan, the "Health Insurance Plans"),

---

[6]    The Debtors also provide Employees with approximately $200 per month in cash-in-lieu of medical insurance if the Employee chooses to forego procuring a health insurance plan (the "Cash-in-Lieu Program").  The Debtors are not aware of any outstanding prepetition obligations with respect to the Cash-in-Lieu Program.

which is administered by Vision Service Plan ("VSP").  The Debtors pay approximately $2,000 monthly to VSP for premiums in connection with the Vision Plan.

41.    Each of the Health Insurance Plans is important to the maintenance of Employee welfare and morale and is therefore critical to the uninterrupted operation of the Debtors' business. As of the Petition Date, the Debtors do not anticipate any outstanding prepetition amounts on account of the Health Insurance Plans.  Out of an abundance of caution, the Debtors request authority to (i) pay any outstanding prepetition obligations on account of the Health Insurance Plans, and (ii) continue to honor the Health Insurance Plans in the ordinary course during the pendency of these Chapter 11 Cases.

### ii.    *Employee Wellness Programs*

42.    In addition to the Health Insurance Plans, the Debtors offer various wellness and counseling resources to eligible Employees.  The Debtors offer certain general wellness benefits (collectively, the "Wellness Programs"), which provide Employees access to, among other things, an employee assistance program through Concern: Employee Assistance Program, a health advocacy program through Health Advocate, Inc., and certain other wellness resources through Calm.com, Inc.

43.    Expenses associated with the Wellness Programs are paid for by the Debtors' ultimate parent entity, Brightmark LLC.  Accordingly, there are no outstanding prepetition obligations on account of the Wellness Programs.  However, out of an abundance of caution, the Debtors request authority to continue to honor the Wellness Programs in the ordinary course during the pendency of these Chapter 11 Cases.

14

### iii.    Disability and Life and AD&D Benefits

44.    The Debtors offer eligible Employees access to short and long-term disability plans (the "Disability Plans").  In addition to the Disability Plans, the Debtors offer eligible Employees the option to purchase (a) basic life and accidental death and dismemberment insurance that pays benefits to the Employee's beneficiary in the event of a covered accident or death and (b) optional life and accidental death and dismemberment insurance that provides additional coverage in the event of a covered accident or death (collectively with the Disability Plans, the "Disability and Life and AD&D Programs").  The provider for each of the Disability and Life and AD&D Programs is Unum Life Insurance Company of America ("Unum").  The Debtors pay approximately $4,300 monthly to Unum to administer the Disability and Life and AD&D Programs.

45.    As of the Petition Date, the Debtors owe approximately $11,000 in prepetition obligations to Unum on account of the Disability and Life and AD&D Programs, all of which will come due during the Interim Period.  Accordingly, the Debtors request authority to (i) pay any outstanding prepetition obligations on account of the Disability and Life and AD&D Programs, and (ii) continue to honor the Disability and Life and AD&D Programs in the ordinary course during the pendency of these Chapter 11 Cases.

### iv.    Additional Benefits

46.    The Debtors offer several additional benefits (the "Additional Benefits") through WEX Health Inc. ("WEX").  The Additional Benefits include the option to utilize Health Savings Accounts and Flexible Spending Accounts, as well as to take advantage of certain benefits related to sustainable commuting practices.  The Debtors pay approximately $5,000 monthly to WEX to administer the Additional Benefits.

47.    As of the Petition Date, the Debtors owe approximately $2,000 in prepetition obligations to WEX on account of the Additional Benefits, all of which will come due during the Interim Period.  Accordingly, the Debtors request authority to (i) pay any outstanding prepetition obligations on account of the Additional Benefits, and (ii) continue to honor the Additional Benefits in the ordinary course during the pendency of these Chapter 11 Cases.

### G.    Workers' Compensation Program.[7]

48.    The Debtors also provide eligible Employees with workers' compensation insurance (the "Workers' Compensation Program"), which is described in further detail in the Insurance Motion.  The Debtors do not believe they have any outstanding prepetition amounts or claims on account of the Workers' Compensation Program.

49.    The Debtors may be statutorily or contractually obligated to maintain the Workers' Compensation Program, and their inability to do so may result in adverse legal consequences that potentially could disrupt the sale process.  The Workers' Compensation Program is similarly critical to maintaining Employee morale.  The Debtors respectfully request authority to: (a) pay any prepetition amounts owed on account of the Workers' Compensation Program; (b) modify the automatic stay solely to permit Employees to proceed with their workers' compensation claims in the appropriate judicial or administrative forum; and (c) pay all workers' compensation obligations, including any outstanding insurance premiums, as they become due in the ordinary course of the Debtors' business.

---

[7]    Concurrently herewith, the Debtors filed the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to (A) Maintain Existing Insurance Programs and Pay All Obligations Thereunder and (B) Renew, Revise, Extend, Supplement, or Enter into New Insurance Programs; (II) Authorizing All Banks to Honor Payments of Insurance Obligations; and (III) Granting Related Relief* (the "Insurance Motion").  To the extent not covered under the Insurance Motion, the Debtors hereby reincorporate and restate the relief requested in the Insurance Motion only as it pertains to the Workers' Compensation Program and the ability to continue funding the Workers' Compensation insurance policy in the ordinary course of business.

**BASIS FOR RELIEF**

50.     As a result of the commencement of these Chapter 11 Cases and in the absence of an order of the Court providing otherwise, the Debtors will be prohibited from paying or otherwise satisfying their prepetition Workforce Obligations, and the checks, wire transfers, and direct deposit transfers issued in respect of any such prepetition Workforce Obligations would be dishonored.   Failing to honor these obligations could have devastating consequences on the Debtors' business and, thus, these Chapter 11 Cases.

**I.      The Proposed Payment of Workforce Obligations Is Warranted Under Section 363(b) of the Bankruptcy Code and the Doctrine of Necessity.**

51.     Under section 363 of the Bankruptcy Code, a bankruptcy court is empowered to authorize a chapter 11 debtor to expend funds in the Court's discretion outside the ordinary course of business.  11 U.S.C. § 363.  Under section 363(b), courts require only that the debtor "show that a sound business purpose justifies such actions."  *In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (requiring that the debtor show a "sound business purpose" to justify its actions under section 363 of the Bankruptcy Code) (internal citations omitted); *see also In re Phx. Steel Corp.,* 82 B.R. 334, 335–36 (Bankr.  D. Del. 1987) (requiring a "good business reason" for a sale under section 363 of the Bankruptcy Code); *In re Adelphia Commc'ns Corp.*, 2003 WL 22316543, at *30 (Bankr. S.D.N.Y. Mar. 4, 2003) (requiring a "good business reason" for disposition of assets outside of the ordinary course in bankruptcy).

52.     Payment of prepetition wage and salary claims to preserve and protect a debtor's business, maximize value of the estate, and maintain positive employee morale, even if such payments were deemed to be outside the ordinary course of business, is a sufficient business justification for such an authorization.  *See In re Ionosphere Clubs, Inc.*, 98 B.R. 174, 175 (Bankr.

S.D.N.Y. 1989).  Accordingly, this Court should grant the requested relief herein under section 363 of the Bankruptcy Code.

53.     Even if a particular claim is not entitled to priority, payment is nonetheless justified under section 105(a) of the Bankruptcy Code and the well-established "necessity of payment doctrine."  Under the "necessity of payment doctrine" and section 105(a) of the Bankruptcy Code, courts have consistently permitted immediate payment of prepetition obligations where necessary to preserve or enhance the value of a debtor's estate for the benefit of all creditors, specifically including payment of prepetition employee claims.  *See, e.g.*, *Miltenberger v. Logansport C. & S.W. Ry. Co.*, 106 U.S. 286, 312 (1882) (stating that payment of pre-receivership claim prior to reorganization permitted to prevent "stoppage of . . . [crucial] business relations"); *see also Gregg v. Metro. Trust Co.*, 197 U.S. 183, 187 (1905) (stating that "the payment of the employees of the [rail]road is more certain to be necessary in order to keep it running than the payment of any other class of previously incurred debts"); *Ionosphere*, 98 B.R. at 175-76 (finding that payment of prepetition wages, salaries, reimbursable business expenses, and health benefits to active employees of debtor airline authorized).  The modern application of the doctrine of necessity is largely unchanged from the Supreme Court's reasoning in *Miltenberger*.  *See In re Lehigh & New Eng. Ry. Co.*, 657 F.2d 570, 581-82 (3d Cir. 1981) ("[I]n order to justify payment under the 'necessity of payment' rule, a real and immediate threat must exist that failure to pay will place the continued operation of the [debtor] in serious jeopardy."); *see also In re Just for Feet, Inc.*, 242 B.R. 821, 825 (Bankr. D. Del. 1999) ("The Supreme Court, the Third Circuit and the District of Delaware all recognize the court's power to authorize payment of pre-petition claims when such payment is necessary for the debtor's survival during chapter 11."); *In re Columbia Gas Sys., Inc.*, 171 B.R. 189, 191-92 (Bankr. D. Del. 1994).

54.     As described above and in the First Day Declaration, the Employees are highly skilled and experienced, and without them the Debtors could not operate.  Thus, the Debtors' ability to continue operating depends, in large part, upon the retention and motivation of the Employees.  Most of the Debtors' Workforce (and their families) are dependent upon the wages, salaries, reimbursements, and other benefits they receive from the Debtors.  Any disruption from Employee resignations or lack of morale could have devastating effects on the Debtors' sale efforts.  Indeed, payments that maintain the morale of the Debtors' Workforce add value to the estates because an unplanned reduction in the Workforce or productivity could harm the Debtors' business operations.  Accordingly, it is critical that the Debtors be authorized to honor their Workforce Obligations, subject to the limitations described herein.

## II.     The Proposed Payments of Workforce Obligations Do Not Exceed the Statutory Caps Under Section 507 of the Bankruptcy Code.

55.     The Debtors believe that the majority of the amounts they seek to pay are entitled to priority under sections 507(a)(4) or (a)(5) of the Bankruptcy Code.  Section 507(a)(4)(A) of the Bankruptcy Code grants priority to employee claims for "wages, salaries, or commissions, including vacation, severance and sick leave pay" earned within 180 days before the filing of the applicable petition up to $15,150 per employee.   11 U.S.C. § 507(a)(4).   Similarly, section 507(a)(5) of the Bankruptcy Code provides that claims for contributions to certain employee benefit plans are also afforded priority treatment to the extent of the number of employees covered by each plan multiplied by $15,150, less any amounts paid pursuant to section 507(a)(4) of the Bankruptcy Code. 11 U.S.C. § 507(a)(5).  Thus, granting the relief sought herein would affect only the timing, and not the amount, of most payments of the Workforce Obligations to the extent they constitute priority claims.

**III.    The Proposed Payment of Withholdings Is Authorized by Section 541 of the Bankruptcy Code.**

56.    Moreover, a portion of the Workforce Obligations constitutes funds held in trust for payment to third parties.  Specifically, under Bankruptcy Code section 541, all prepetition legal or equitable interests of a debtor are considered property of the estate subject to certain exclusions. Bankruptcy Code section 541(b)(7) explicitly excludes amounts withheld by an employer from employee wages as employee contributions to employee benefit plans under ERISA and health insurance plans under state law.  Thus, the payment of the employee contribution component of the employer taxes or payment of garnished wages will not prejudice the Debtors' estates because such withholdings are held in trust for the benefit of the related payees and, thus, do not constitute property of the Debtors' estates under section 541 of the Bankruptcy Code.  *See Begier v. IRS*, 496 U.S. 53, 57 (1990); *In re Am. Int'l Airways, Inc.*, 70 B.R. 102, 103 (Bankr.  E.D. Pa. 1987) (funds held in trust for federal excise and withholding taxes are not property of debtor's estate and, therefore, not available for distribution to creditors).

57.    Courts in this district have regularly granted to chapter 11 debtors similar relief as requested in this Motion.  *See, e.g.*, *In re Nikola, Corp.*, No. 25-10258 (TMH) (Bankr. D. Del. Feb. 20, 2025) (authorizing debtors to continue employee compensation and benefit programs and pay certain prepetition obligations related thereto on a postpetition basis); *In re Zurvita Holdings, Inc.*, No. 24-12823 (MFW) (Bankr. D. Del. Jan. 16, 2025) (same); *In re Biolase, Inc.*, No. 24-12245 (KBO) (Bankr. D. Del. Oct. 25, 2024) (same); *In re CalAmp Corp.*, No. 24-11136 (LSS) (Bankr. D. Del. June 26, 2024) (same); *In re Supply Source Enters., Inc.*, No. 24-11054 (BLS) (Bankr. D. Del. June 13, 2024) (same); *In re Ambri Inc.*, No. 24-10952 (LSS) (Bankr. D. Del. May 28, 2024)

(same); *In re Restoration Forest Prods. Group, LLC*, No. 24-10120 (KBO) (Bankr. D. Del. Feb. 22, 2024) (same).[8]

## IV.    A Limited Waiver of the Automatic Stay for Workers' Compensation Claims Is Appropriate Here.

58.    Section 362(a) of the Bankruptcy Code operates to stay:

> [T]he commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title[.]

11 U.S.C. § 362(a)(1).  Section 362(d) of the Bankruptcy Code, however, permits a debtor or other parties in interest to request a modification or termination of the automatic stay for "cause."  *Id.* at § 362(d)(1).

59.    In accordance with section 362(d) of the Bankruptcy Code, the Debtors seek to modify the automatic stay to permit Employees to proceed with their workers' compensation claims, if any, in the appropriate judicial or administrative forum.  Cause exists here to modify the automatic stay because staying the workers' compensation claims could have a detrimental effect on the financial wellbeing and morale of certain Employees and lead to the departure of Employees who are critical at this juncture.  Such departures could cause a severe disruption in the Debtors' businesses, which would be to the detriment of all parties in interest.

60.    For all the reasons previously set forth herein, the Debtors submit that payment of the Workforce Obligations and the continuation of the Workforce Programs are necessary to the success of the Debtors' Chapter 11 Cases and should be authorized by this Court.

---

[8]    Because of the voluminous nature of the unreported orders cited herein, they are not annexed to this Motion. Copies of these orders are available upon request.

## RESERVATION OF RIGHTS

61.     Nothing contained herein is intended or shall be construed as (i) an admission as to the validity, priority, or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim.  Likewise, if the Court grants the relief sought herein, any payment made pursuant to the Court's order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

## IMMEDIATE AND UNSTAYED RELIEF IS NECESSARY

62.     The Court may grant the relief requested in this Motion immediately if the "relief is needed to avoid immediate and irreparable harm."  Fed. R. Bankr. P. 6003; *In re First NLC Fin. Servs., LLC*, 382 B.R. 547, 549 (Bankr. S.D. Fla. 2008).  The Third Circuit has interpreted the language "immediate and irreparable harm" in the context of preliminary injunctions.  In that context, the Third Circuit has instructed that irreparable harm is that which "cannot be redressed by a legal or an equitable remedy following a trial."  *Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989).  The Debtors submit that, for the reasons already set forth herein, the relief requested in this Motion is necessary to avoid immediate and irreparable harm to the Debtors and their estates.

63.     Accordingly, the Debtors request that the Court waive the stay imposed by Bankruptcy Rule 6004(h), which provides that "[u]nless the court orders otherwise, an order

authorizing the use, sale, or lease of property (other than cash collateral) is stayed for 14 days after the order is entered." Fed. R. Bankr. P. 6004(h). As described above, the relief that the Debtors seek in this Motion is necessary for the Debtors to operate without interruption and to preserve value for their estates. Accordingly, the Debtors respectfully request that the Court waive the 14-day stay imposed by Bankruptcy Rule 6004(h) as the exigent nature of the relief sought herein justifies immediate relief.

## **NOTICE**

64.     Notice of this Motion will be provided to the following parties or their respective counsel: (a) the Office of the U.S. Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the DIP lender; (d) the Bridge Lender; (e) the Indenture Trustee; (f) the Internal Revenue Service; (g) the United States Attorney's Office for the District of Delaware; (h) the state attorneys general for all states in which the Debtors conduct business; (i) the banks and other financial institutions where the Debtors maintain accounts; and (j) any party that has requested notice pursuant to Bankruptcy Rule 2002. Given that this Motion seeks "first day" relief, within forty-eight (48) hours of the entry of an order granting this Motion, the Debtors will serve copies of this Motion and any order entered with respect to this Motion as required by Local Rule 9013-1(m). The Debtors respectfully submit that, in light of the relief requested, no further notice is necessary.

*[Remainder of Page Intentionally Left Blank]*

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that this Court enter the Proposed Interim

Order and the Proposed Final Order, substantially in the forms annexed hereto as **Exhibit A** and

**Exhibit B**, respectively, granting the relief requested herein and such other and further relief as

may be just and proper.

Dated: March 17, 2025
      Wilmington, Delaware

Respectfully submitted,

*/s/ R. Stephen McNeill*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Katelin A. Morales (No. 6683)
James R. Risener III (No. 7334)
Andrew C. Ehrmann (No. 7395)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
      rmcneill@potteranderson.com
      kmorales@potteranderson.com
      jrisener@potteranderson.com
      aehrmann@potteranderson.com

*Proposed Counsel to the Debtors and Debtors
in Possession*

## EXHIBIT A

**Proposed Interim Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket No. __** |

**INTERIM ORDER (I) AUTHORIZING, BUT
NOT DIRECTING, THE DEBTORS TO (A) PAY
PREPETITION WAGES, COMPENSATION, EMPLOYEE
BENEFITS, AND OTHER EMPLOYEE OBLIGATIONS AND
(B) CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS
IN THE ORDINARY COURSE; (II) AUTHORIZING ALL BANKS TO
HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION
EMPLOYEE OBLIGATIONS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "'Motion")[2] of the above-captioned debtors and debtors in possession (collectively, the "Debtors") for entry of an interim order (this "Interim Order"), (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, compensation, employee benefits, and other employee obligations, and (b) continue certain employee benefit programs in the ordinary course; (ii) authorizing all banks to honor prepetition checks for payment of prepetition employee obligations; and (iii) granting other related relief, all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789).  The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2]    Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on

the Motion were appropriate under the circumstances and no other notice need be provided; and

this Court having determined that the legal and factual bases set forth in the Motion establish just

cause for the relief granted herein and that such relief is in the best interests of the Debtors, their

estates, their creditors and all parties in interest; and upon all of the proceedings had before the

Court after due deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED

THAT,

      1.      The Motion is GRANTED on an interim basis as set forth herein.

      2.      The final hearing (the "Final Hearing") on the Motion shall be held on

April __, 2025, at__:__ _.m., prevailing Eastern Time.  Any objections or responses to entry of a

final order on the Motion shall be filed with the Court, and served so as to be **received** by the

following parties, **by no later than 4:00 p.m., prevailing Eastern Time, on March __, 2025**:

(i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street,

6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com),

R. Stephen McNeill (rmcneill@potteranderson.com), and Katelin A. Morales

(kmorales@potteranderson.com)); (ii) Office of the United States Trustee for the District of

Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35,

Wilmington, DE 19801 (Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov));

(iii) counsel to the DIP Lender, (a) Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street

NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Paul M. Rosenblatt (prosenblatt@ktslaw.com)),

and (b) Chipman Brown Cicero & Cole LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (iv) counsel to the Indenture Trustee, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019 (Attn: Mark A. Angelov (mark.angelov@afslaw.com)); and (v) if any statutory committee has been appointed in these cases, counsel to such committee.

3.     The Debtors are authorized, but not directed, to pay and honor in their discretion, all prepetition Workforce Obligations, including processing and administrative fees, in an aggregate amount not to exceed $325,000 during the Interim Period.

4.     Notwithstanding the foregoing, payments made on account of the prepetition Workforce Obligations during the Interim Period shall be limited by 11 U.S.C. §§ 507(a)(4) or 507(a)(5).

5.     The Debtors are authorized, but not directed, in their discretion, to honor and continue the Workforce Programs that were in effect as of the Petition Date; *provided*, *however*, that such relief shall not constitute or be deemed an assumption or an authorization to assume any of such Workforce Programs under section 365(a) of the Bankruptcy Code.

6.     Nothing herein shall be deemed to authorize the payment of any amounts that would violate or implicate section 503(c) of the Bankruptcy Code.

7.     The Debtors shall not make any cash-out payments to Employees on account of the PTO Program during the Interim Period unless required by applicable state law, *provided*, *however*, the Debtors will continue to honor the PTO Program in the ordinary course.

8.     The Debtors' banks and other financial institutions shall be and hereby are authorized to receive, process, honor, and pay all prepetition and postpetition checks and fund transfers on account of the Workforce Obligations that had not been honored and paid as of the

Petition Date, up to the amounts authorized to be paid pursuant to this Interim Order, *provided that* sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition funds transfers on account of the Workforce Obligations to replace any prepetition checks or funds transfer requests that may be dishonored or rejected.

9.      Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified solely to the extent necessary to allow Employees to proceed with their claims under the Workers' Compensation Program in the appropriate judicial or administrative forum, and Employees are authorized to so proceed. The Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business. The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

10.     The Debtors may pay any and all Withholdings, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding, and other types of Withholdings, whether these relate to the period prior to Petition Date or subsequent thereto.

11.     The Debtors are authorized, but not directed, to pay all processing fees associated with, and all costs incident to, the foregoing, including but not limited to, the Payroll Processor Fees.

12.     Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, priority, or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors or rights of setoff asserted against the Debtors; (iii) a waiver of

4

any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim. Likewise, any payment made pursuant to this Interim Order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

13.     The Court finds and determines that the requirements of Bankruptcy Rule 6003 are satisfied, and that the interim relief requested is necessary to avoid immediate and irreparable harm.

14.     The notice requirement of Bankruptcy Rule 6004(a) is hereby waived.

15.     Notwithstanding Bankruptcy Rule 6004(h), this Interim Order shall be effective and enforceable upon entry hereof.

16.     The Debtors are authorized and empowered to take all actions necessary to implement the relief granted in this Interim Order.

17.     This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Interim Order.

**<u>EXHIBIT B</u>**

**Proposed Final Order**

**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. __** |

**FINAL ORDER (I) AUTHORIZING, BUT
NOT DIRECTING, THE DEBTORS TO (A) PAY
PREPETITION WAGES, COMPENSATION, EMPLOYEE
BENEFITS, AND OTHER EMPLOYEE OBLIGATIONS AND
(B) CONTINUE CERTAIN EMPLOYEE BENEFIT PROGRAMS
IN THE ORDINARY COURSE; (II) AUTHORIZING ALL BANKS TO
HONOR PREPETITION CHECKS FOR PAYMENT OF PREPETITION
EMPLOYEE OBLIGATIONS; AND (III) GRANTING RELATED RELIEF**

Upon the motion (the "<u>Motion</u>")[2] of the above-captioned debtors and debtors in possession (collectively, the "<u>Debtors</u>"), for entry of an order (this "<u>Final Order</u>") (i) authorizing, but not directing, the Debtors to (a) pay prepetition wages, compensation, employee benefits, and other employee obligations, and (b) continue certain employee benefit programs in the ordinary course; (ii) authorizing all banks to honor prepetition checks for payment of prepetition employee obligations; and (iii) granting other related relief; all as more fully set forth in the Motion; and upon the First Day Declaration; and this Court having jurisdiction over this matter in accordance with 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference from the United States District Court for the District of Delaware*, dated February 29, 2012; and this Court having

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789).  The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2]    Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Motion.

found that this is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) and that this Court may enter

a final order consistent with Article III of the United States Constitution; and this Court having

found that venue of these Chapter 11 Cases is proper pursuant to 28 U.S.C. §§ 1408 and 1409; and

this Court having found that the Debtors' notice of the Motion and opportunity for a hearing on

the Motion were appropriate and no other notice need be provided; and this Court having

determined that the legal and factual bases set forth in the Motion establish just cause for the relief

granted herein and that such relief is in the best interests of the Debtors, their estates, their creditors

and all parties in interest; and upon all of the proceedings had before the Court after due

deliberation and sufficient cause appearing therefor, it is HEREBY ORDERED THAT,

1.       The Motion is GRANTED on a final basis as set forth herein.

2.       The Debtors are authorized, but not directed, to pay and honor in their discretion

all prepetition Workforce Obligations, including processing and administrative fees, in an

aggregate amount not to exceed $325,000.

3.       Notwithstanding the foregoing, the Debtors shall not make any payments on

account of the prepetition Workforce Obligations in excess of the limits provided for under

11 U.S.C. §§ 507(a)(4) or 507(a)(5).

4.       The Debtors are authorized, but not directed, in their discretion to honor and

continue, amend, renew, replace, modify, revise, supplement, or terminate the Workforce

Programs that were in effect as of the Petition Date; *provided*, *however*, that such relief shall not

constitute or be deemed an assumption or an authorization to assume any of such Workforce

Programs under section 365(a) of the Bankruptcy Code.

5.       Pursuant to section 362(d) of the Bankruptcy Code, the automatic stay is modified

solely to the extent necessary to allow Employees to proceed with their claims under the

Workers' Compensation Program in the appropriate judicial or administrative forum, and Employees are authorized to so proceed. The Debtors are authorized, but not directed, to continue the Workers' Compensation Program and pay all prepetition amounts relating thereto in the ordinary course of business. The modification of the automatic stay set forth in this paragraph pertains solely to claims under the Workers' Compensation Program.

6.    Nothing herein shall be deemed to authorize the payment of any amounts that would violate or implicate section 503(c) of the Bankruptcy Code.

7.    The Debtors shall not make any cash-out payments to Employees on account of PTO Program unless required by applicable state law, provided, however, the Debtors will continue to honor the PTO Program in the ordinary course.

8.    The Debtors' banks and other financial institutions shall be and hereby are authorized to receive, process, honor, and pay all prepetition and postpetition checks and funds transfers on account of the Workforce Obligations that had not been honored and paid as of the Petition Date, up to the amounts authorized to be paid pursuant to this Final Order, provided that sufficient funds are on deposit in the applicable accounts to cover such payments. The Debtors shall be and hereby are authorized to issue new postpetition checks or effect new postpetition funds transfers on account of the Workforce Obligations to replace any prepetition checks or funds transfer requests that may be dishonored or rejected.

9.    The Debtors may pay any and all Withholdings, including social security, FICA, federal and state income taxes, garnishments, health care payments, retirement fund withholding, and other types of Withholdings, whether these relate to the period prior to the Petition Date or subsequent thereto.

10.    The Debtors are authorized, but not directed, to pay all processing fees associated with, and all costs incident to, the foregoing, including but not limited to, the Payroll Processor Fees.

11.    Nothing contained herein is intended or shall be construed as: (i) an admission as to the validity, priority, or amount of any claim against the Debtors; (ii) a waiver of the Debtors' or any appropriate party in interest's rights to dispute the amount of, basis for, validity, or priority of any claim against the Debtors or rights of setoff asserted against the Debtors; (iii) a waiver of any claims or causes of action which may exist against any creditor or interest holder; (iv) an approval, assumption, adoption, or rejection of any agreement, contract, lease, program, or policy between the Debtors and any third party under section 365 of the Bankruptcy Code; or (v) a promise to pay a claim.  Likewise, any payment made pursuant to this Final Order is not intended to be and should not be construed as an admission to the validity, priority, or amount of any claim or a waiver of the Debtors' rights to dispute such claim subsequently.

12.    All objections to entry of this Final Order, to the extent not withdrawn or settled, are overruled.

13.    The Debtors are authorized to take all actions necessary to effectuate the relief granted in this Final Order in accordance with the Motion.

14.    This Final Order shall be immediately effective and enforceable upon its entry.  The 14-day stay imposed by Bankruptcy Rule 6004(h) is hereby waived.

15.    This Court retains jurisdiction with respect to all matters arising from or related to the implementation, interpretation, and enforcement of this Final Order.

4