### IN THE UNITED STATES BANKRUPTCY COURT
### FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |
| | **Hearing Date: TBD**<br>**Obj. Deadline: TBD** |

**DEBTORS' MOTION FOR ENTRY OF ORDERS (I)(A) APPROVING
BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF
THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO DESIGNATE ONE
OR MORE STALKING HORSE BIDDERS AND TO PROVIDE BID PROTECTIONS,
(C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT
PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM
AND MANNER OF NOTICE THEREOF AND (F) GRANTING RELATED RELIEF;
AND (II)(A) APPROVING SALE OF THE DEBTORS' ASSETS FREE AND CLEAR OF
LIENS, CLAIMS, INTERESTS, AND ENCUMBRANCES, (B) APPROVING THE
ASSUMPTION AND ASSIGNMENT OF CERTAIN EXECUTORY CONTRACTS
AND UNEXPIRED LEASES, AND (C) GRANTING RELATED RELIEF**

The above-captioned debtors and debtors in possession (collectively, the "Debtors")

hereby file this motion (the "Motion")[2] for the entry of an order, substantially in the form attached

hereto as **Exhibit A** (the "Bidding Procedures Order"), (i)(a) approving bidding procedures,

substantially in the form attached to the Bidding Procedures Order as **Exhibit 1** (the "Bidding

Procedures"), to be used in connection with the sale (the "Sale") of all or substantially all of the

Debtors' assets (the "Assets"), (b) authorizing the Debtors to designate one or more Stalking Horse

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the First Day Declaration or the Bidding Procedures (as defined herein).

Bidders (as defined herein) and provide Bid Protections (as defined herein) in accordance with the Stalking Horse Designation Procedures (as defined herein), (c) scheduling an auction of the Assets (the "Auction"), (d) authorizing procedures governing the assumption and assignment of certain executory contracts and unexpired leases (the "Contracts") in connection with any Sale (the "Assumption and Assignment Procedures"), and approving the form and manner of notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3** (the "Assumption and Assignment Notice"), to be distributed to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale, (e) scheduling the hearing to approve a sale of the Assets (the "Sale Hearing") and approving the form and manner of notice of the entry of the Bidding Procedures Order, approval of the Bidding Procedures, the Sale Hearing, and certain objection deadlines related thereto, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2** (the "Sale Notice"), and (f) granting related relief, and (ii)(a) approving the Sale of the Debtors' Assets free and clear of all liens claims, interest, and encumbrances, (b) approving the assumption and assigned of certain Contracts to a Successful Bidder, and (c) granting related relief.

The Debtors will seek entry of a sale order (the "Sale Order")[3] at the Sale Hearing, which the Debtor will file in advance of the Sale Hearing.  The proposed Sale Order will, among other things: (a) authorize and approve the Sale to the Successful Bidder, on the terms substantially set forth in the Successful Bid; (b) authorize and approve the Sale of the Assets free and clear of any liens, claims, interests, and encumbrances to the extent set forth in the asset purchase agreement

---

[3]    The proposed Sale Order will be filed prior to the Sale Hearing.

with the Successful Bidder, attached to the Sale Order; (c) authorize and approve the assumption and assignment of certain Contracts to the Successful Bidder; and (d) grant related relief.

In support of this Motion, the Debtors rely upon and incorporate by reference the *Declaration of Mark E. Chesen in Support of Debtors' Motion for Entry of an Order (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief*, filed contemporaneously herewith (the "Chesen Declaration") and the *Declaration of Craig R. Jalbert in Support of Chapter 11 Petitions and First Day Pleadings* (the "First Day Declaration") filed substantially contemporaneously herewith.  In further support of this Motion, the Debtors represent as follows:

## PRELIMINARY STATEMENT

1.     After facing financial challenges, the Debtors began a study of strategic transactions under the oversight of Timothy J. Bernlohr, as independent manager (the "Independent Manager") of Debtor Brightmark Plastics Renewal LLC, and Craig R. Jalbert, as chief restructuring officer ("CRO") of the Debtors.  The Debtors retained SSG Advisors, LLC ("SSG") to provide investment banking services to the Debtors and to run a comprehensive sale process.  After carefully considering alternatives, the Debtors, in an exercise of their reasonable business judgment and as authorized by the Independent Manager, have determined that pursuit of a sale under section 363 of the Bankruptcy Code provides the best opportunity to maximize the value of their Assets for the benefit of their estates and creditors.  Accordingly, the Debtors are seeking authority to conduct a marketing process for the sale of all or substantially all of their Assets.

2.     Additionally, in support of their marketing and sale process, the Debtors and their advisors have developed Bidding Procedures for the orderly and value-maximizing marketing and sale of the Assets.  In addition, SSG has drafted a teaser and other marketing materials, established a virtual data room, and prepared a form non-disclosure agreement to be ready to immediately commence the postpetition marketing of the Assets, while the Debtors seek approval of the Bidding Procedures in parallel.

3.     The Bidding Procedures were designed with the objective of generating the greatest level of interest in, and highest or best value for, the Assets while affording the Debtors maximum flexibility to execute a sale transaction as quickly and efficiently as possible.  The Debtors, the Independent Manager, and the CRO are confident the Bidding Procedures and the other relief requested herein will maximize recoveries for all stakeholders.  The Debtors propose to establish the following key dates and deadlines for the sale process:

| Deadline | Event |
|---|---|
| **Three business days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Notice and Assumption and Assignment Notice |
| **Five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Publication Notice |
| **Wednesday, April 16, 2025** | Deadline for Debtors to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement |
| **Monday, April 21, 2025 at 4:00 p.m. (ET)** | Deadline to object to Cure Costs |
| **Monday, April 28, 2025 at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **Monday, May 5, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Tuesday, May 6, 2025** | Deadline to designate Qualified Bids or to cancel the Auction, as applicable |
| **Wednesday, May 7, 2025 at 10:00 a.m. (ET)** | Auction (if needed) |
| **One day after the conclusion of the Auction** | Deadline for Debtors to file and serve Notice of Auction Results |

| | |
|---|---|
| **Friday, May 9, 2025 at 4:00 p.m. (ET)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| **12:00 p.m. (ET) one business day before Sale Hearing** | Debtors' Deadline to Reply to any Sale Objections or Supplemental Sale Objections |
| **[Tuesday, May 13], 2025 at [●] (ET)** | [Proposed] Sale Hearing |
| **Friday, May 16, 2025** | Deadline to Consummate Sale |

4. Given the Debtors' financial condition, an orderly but expeditious sale of the Assets is critical to maximizing recoveries for all creditors. Moreover, the proposed timeline of the sale process is required under the DIP Credit Agreement, without which, the Debtors would not be able to fund the sale process or these chapter 11 cases. Accordingly, the Debtors request approval of a comprehensive set of procedures that will facilitate a potential sale transaction in a timely and efficient manner.

## JURISDICTION AND VENUE

5. This Court has jurisdiction to consider this Motion under 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012. This is a core proceeding under 28 U.S.C. § 157(b), and pursuant to Rule 9013-1(f) of the Local Rules of the United States Bankruptcy Court for the District of Delaware (the "Local Rules"), the Debtors confirm their consent to the entry of a final order or judgment by the Court with respect to this Motion to the extent it is later determined that the Court, absent consent of the parties, cannot enter final orders or judgments consistent with Article III of the United States Constitution.

6. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409

7. The statutory and legal predicates for the relief sought herein are sections 105, 363 and 365 of title 11 of the United States Code, 11 U.S.C. §§ 101-1532 (the "Bankruptcy Code"),

Rules 2002, 6004, 6006, 9007, 9008 and 9014 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and Local Rules 2002-1, 6004-1 and 9006-1.

## GENERAL BACKGROUND

8.      On March 16, 2025 (the "Petition Date"), each of the Debtors filed a voluntary petition for relief pursuant to Chapter 11 of the Bankruptcy Code.  The Debtors have also filed a motion requesting joint administration of these Chapter 11 Cases pursuant to Bankruptcy Rule 1015(b).  The Debtors are operating their business and managing their properties as debtors in possession pursuant to sections 1107 and 1108 of the Bankruptcy Code.  No request for the appointment of a trustee or examiner has been made, and no official committees have been appointed in these Chapter 11 Cases.

9.      Born out of the desire to reimagine waste, the Debtors, originally founded in 2016, use their own proprietary process and licensed technology from a non-debtor affiliate to reduce plastic waste.  The company purchases hard-to-recycle mixed post-consumer and post-industrial plastic waste to convert into valuable chemical feedstocks that can be used to make new plastics. Through this method, the company repurposes hydrocarbons bound for the landfill, providing a more sustainable environmental future.

10.      Additional factual background regarding the Debtors, including their business operations, their corporate and capital structure, and the events leading to the filing of these Chapter 11 Cases is set forth in the First Day Declaration.

## MARKETING AND SALE PROCESS

11.      On February 26, 2025, the Debtors retained SSG as investment banker to, among other things: (i) identify and evaluate potential counterparties for a potential sale process, (ii) prepare a marketing plan and information materials to distribute to potential buyers on a confidential basis, (iii) solicit third-party interest in an acquisition of the Debtors' assets,

(iv) review the debtor in possession financing facility for reasonableness, and investigate alternative sources of funding, and (v) assist the Debtors in contacting potential buyers, arranging meetings with potential buyers, and coordinating due diligence.  During its engagement, SSG has worked closely with the Debtors' management and other restructuring professionals and has become knowledgeable and familiar with the Debtors' capital structure, liquidity needs, and business operations.

12.     Since the engagement, the professionals at SSG have worked with the Debtors and their other advisors to prepare for the sale process.  This includes, among other things, drafting a teaser and other marketing materials, establishing a virtual data room, and preparing a form non-disclosure agreement to be ready to immediately commence the postpetition marketing of the Assets, while the Debtors seek approval of the Bidding Procedures in parallel.  SSG is poised to immediately commence its postpetition marketing efforts.  In addition, SSG has begun an initial outreach to potential strategic and financial buyers and intends to contact 287 parties, including strategic buyers, private equity funds, and other financial institutions, that are reasonably likely to be interested in consummating a proposed Sale.

13.     Brightmark Parent had originally contemplated making a stalking horse offer to support the sales process and give comfort to all constituents that there would be a continuity of operations postpetition.  However, given the reaction of the Prepetition Secured Lenders to the originally proposed sale and funding strategy for these chapter 11 cases, the Debtors deemed it advisable to request that Brightmark Parent not serve as a stalking horse purchaser.  The rationale is simple.  The Debtors, under the oversight of the Independent Manager and CRO, want there to be no misapprehension that the Debtors are conducting an open and unimpeded sale process.  The

Debtors are proposing a process whose principal purpose is to be a market driven valuation of the Prepetition Secured Lenders' collateral.

14.     During this process, the Debtors, under the oversight of the Independent Manager and CRO, will engage with and facilitate diligence for any potential bidders who may be interested in purchasing the Assets in chapter 11.  Accordingly, the Debtors believe the Bidding Procedures set forth herein will allow the Debtors to maximize the value of their estates for the benefit of creditors.

## NEED FOR A TIMELY PROCESS

15.     The facts and circumstances of these chapter 11 cases require that the Debtors run an expedited, but robust, sale process.  Speed and certainty are critical here, especially because the Debtors' ability to access the DIP Facility (which will provide the Debtors with the necessary liquidity to fund continued operations and these chapter 11 cases) is conditioned upon adherence to strict sale milestones.  Having made the decision to fund these chapter 11 cases on a junior basis, and at tremendous financial exposure, the DIP Lender reasonably has requested an expedited timeline to limit that exposure.  The Debtors simply do not have liquidity to support a protracted sale process.

16.     More importantly, and as set forth in the Chesen Declaration, the Debtors believe that the Court's approval of Bidding Procedures sooner rather than later will generate more interest in the Assets and increase the likelihood that the Debtors receive one or more Qualified Bids for their Assets.  This, in turn, is more likely to lead to a Sale transaction that maximizes the value of the Assets for the benefit of the Debtors, their estates, and their creditors.  Accordingly, the Debtors submit that running a longer Court-approved postpetition marketing and sale process, consistent

with the timeline set forth in the Bidding Procedures Order, is necessary under the circumstances and appropriate in these chapter 11 cases.

17.        Thus, pursuing the Sale in the manner and within the time periods prescribed in the Bidding Procedures is in the best interest of the Debtors' estates and will provide interested parties with sufficient opportunity to participate.

## STALKING HORSE DESIGNATION PROCEDURES

18.        As part of the Bidding Procedures, the Debtors seek authority, subject to the terms of the Bidding Procedures Order, to designate a stalking horse bid (the "Stalking Horse Bid"), pursuant to the procedures set forth in section IV of the Bidding Procedures (the "Stalking Horse Designation Procedures") for any or all of the Assets and, upon consultation with the Consultation Parties to enter into a purchase agreement (the "Stalking Horse Agreement") with a potential bidder (the "Stalking Horse Bidder").  If the Debtors propose to designate any Stalking Horse Bidder, they shall enter into any Stalking Horse Agreement **no later than April 16, 2024**, which deadline may be extended by the Debtors (after consultation with the Consultation Parties).

19.        The Debtors believe that the ability to enter into a Stalking Horse Agreement with a potential buyer will assist in driving value for the Debtors' estates, as a Stalking Horse Bid will set the baseline bid in what the Debtors anticipate will be a robust auction process.  Consistent with the market for this kind of process, the Debtors anticipate that it may be necessary to afford a Stalking Horse Bidder certain protections to induce the Stalking Horse Bidder to provide a substantial bid and firm commitment to the Sale.

20.        Pursuant to the Bidding Procedures, the Debtors re hereby requesting authority to, upon the designation of a Stalking Horse Bidder and in consultation with the Consultation Parties, seek approval of an award to a Stalking Horse Bidder with incentives in the form of a break-up fee

and reimbursement of documented, actual, and necessary expenses incurred by the Stalking Horse Bidder in connection with submitting its Stalking Horse Bid (collectively, the "Bid Protections"). Those Bid Protections will be described with specificity in a motion seeking approval of such Bid Protections (the "Stalking Horse Motion").  The Debtors will request, including on shortened notice, that the Court schedule a hearing (the "Stalking Horse Hearing") to consider the Stalking Horse Motion and any Bid Protections.  All parties in interest shall have the right at the Stalking Horse Hearing to object to the Debtors' entry into a Stalking Horse Agreement on any grounds, including objections to the Bid Protections and the form of Stalking Horse Order.

### BIDDING PROCEDURES, NOTICE PROCEDURES, AND ASSIGNMENT PROCEDURES

**A.    Bidding Procedures**

21.    The Bidding Procedures are intended to facilitate a competitive marketing and sale process, including identifying the highest or otherwise best offer or offers for the Assets.  The Sale may be for all of the Assets or for a portion thereof to one or more purchasers as potential purchasers may direct, and based on the highest or otherwise best return for the Debtors' estates.

22.    As the Bidding Procedures are attached to the Bidding Procedures Order, they are not restated in their entirety herein.  Pursuant to Local Rule 6004-1, certain of the key terms of the Bidding Procedures are set forth in the chart below.[4]

---

[4]    In the event of any conflict between the summary of Bidding Procedures set forth in this Motion and the Bidding Procedures, the Bidding Procedures as approved by the Court shall govern in all respects.  Capitalized terms used but not defined in this section shall have the meanings ascribed to such terms in the Bidding Procedures.

| MATERIAL TERMS OF THE BIDDING PROCEDURES AND BIDDING PROCEDURES ORDER | |
|---|---|
| **Provisions Governing Qualification of Bidders and Qualified Bids**<br><br>L.R. 6004-1(c)(i)(A)-(B) | Due Diligence, Qualified Bid and Qualified Bidder Requirements are set forth in Sections III, V, and VI of the Bidding Procedures.<br><br>**A.  Due Diligence**.<br><br>Each person or entity that desires to participate as a bidder in the Auction process (each, a "<u>Prospective Bidder</u>") must first deliver to SSG Advisors, LLC ("<u>SSG</u>") the following:<br><br><ul><li>documentation identifying the Prospective Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale;</li><li>an executed confidentiality agreement, in form and substance satisfactory to the Debtors;</li><li>a statement and other factual support demonstrating to the Debtors and their advisors, in their sole judgment, that the Prospective Bidder has a *bona fide* interest in purchasing some or all of the Assets; and</li><li>preliminary proof by the Prospective Bidder of its financial capacity to close a proposed sale transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Bidder (or, if the Prospective Bidder is an entity formed for the purpose of acquiring the Assets to be sold, the party that will bear liability for a breach by the Prospective Bidder of an asset purchase agreement or other agreement entered into in respect of the sale transaction), the adequacy of which the Debtors will determine in their sole judgment.</li></ul>Without the need for any further action, any Stalking Horse Bidder is a Qualified Bidder.<br><br>Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Debtors may grant a Prospective Bidder that the Debtors identify as reasonably likely to become a Qualified Bidder with access to information allowing such Prospective Bidder to conduct due diligence with respect to the potential acquisition of some or all of the Assets.  If any Prospective Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Prospective Bidder any trade secrets or proprietary information (as determined by the Debtors in their sole discretion), unless the confidentiality agreement executed by such Prospective Bidder is satisfactory to the Debtors and contains provisions sufficient to ensure that such Prospective Bidder will not use such trade secrets or proprietary information for an improper purpose or to gain an unfair competitive advantage.<br><br>If the Debtors determine, after consulting with the Consultation Parties, that a Prospective Bidder is unlikely to qualify as a Qualified Bidder or fails to become a Qualified Bidder, then such Prospective Bidder shall have no further right to access due diligence or any other non-public information.  The Prospective Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Prospective Bidder.  For purposes hereof, the term "Consultation Parties" shall include the Committee |

and, solely to the extent it is not participating in the Auction as a bidder and is not otherwise a participant in any active or prospective Bid with respect to any Assets, the DIP Lender.

All diligence requests shall be directed to the Debtors' investment banker, SSG.

**B.  Bid Deadline.  May 5, 2025 at 5:00 p.m. (ET).**

**C.  Qualified Bid Requirements.**  To qualify as a "Qualified Bid," a bid must be in writing and satisfy the following requirements:

1.  Identification of Bidder.  A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid), or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtors, any other known Prospective Bidder, any Stalking Horse Bidder, or Qualified Bidder, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtors).

2.  Purchased Assets.  A Qualified Bid must identify the following:

   a.  the Assets to be purchased, including any executory contracts and unexpired leases (collectively, the "Contracts") that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtors in connection with the proposed sale; and

   b.  the liabilities, if any, to be assumed, including any debt to be assumed.

3.  Form of Consideration.

   a.  Credit Bidding.  In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code; provided that the Credit Bid complies with the orders of the Bankruptcy Court.

   b.  Consideration.  Each other bid must include a statement confirming that the bid is based on an all-cash offer, or if a bid includes forms of consideration other than cash, the bidder shall include an analysis or description of the value of such non-cash components, including any supporting documentation, to assist the Debtors and the Consultation Parties in evaluating the bid.

4.  Minimum Bid for Assets.  If a Stalking Horse Bidder has been designated, each bid that is not a Stalking Horse Bid must have a value to the Debtors, as determined by the Debtors, in consultation with the Consultation Parties, that is greater than or equal to the sum of (a) the value offered under the Stalking Horse Agreement, plus (b) the amount of the Bid Protections, if any, plus (c) $100,000 (collectively, the "Minimum Bid Amount").  Any subsequent bid made by the Stalking Horse Bidder shall be deemed to have been made in an amount equal

to such subsequent bid plus the Bid Protections, if any, to the extent provided for in the Stalking Horse Agreement.

If the value of a bid relative to the Stalking Horse Bid includes non-cash components (such as fewer contingencies than are in such Stalking Horse Agreement), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtors and the Consultation Parties in better evaluating the competing bid. The Debtors, in consultation with their advisors and the Consultation Parties, reserve the right in their sole discretion to ascribe a value to any non-cash components of competing bids and the Stalking Horse Bid.

If a Stalking Horse Bidder is not designated pursuant to the Stalking Horse Designation Procedures, the Debtors may set a minimum bid requirement, which shall be considered the Minimum Bid Amount for all purposes hereunder. In such case, the Debtors shall inform (email being sufficient) any known potential bidder of such Minimum Bid Amount.

5.     Proposed Asset Purchase Agreement. A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (each, a "Proposed Asset Purchase Agreement"). A Proposed Asset Purchase Agreement shall be (a) duly authorized and executed; (b) based on, and marked against the form asset purchase agreement (the "Form APA") or, if a Stalking Horse Bidder has been designated, the Stalking Horse Agreement, to reflect the proposed sale transaction and to show any other proposed modifications to the Form APA or Stalking Horse Agreement, as applicable; (c) specify the proposed purchase price for the Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtors); and (e) identify any Contracts that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtors in connection with the proposed sale transaction.

6.     Financial Information. A Qualified Bid must include the following:

a.     a statement that the Prospective Bidder is financially capable of consummating the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement;

b.     sufficient evidence, as determined by the Debtors in their sole discretion, to determine that the Prospective Bidder has, or will obtain, the financial wherewithal to consummate the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; and

c.     Adequate Assurance Information with respect to any Contracts included or that may be included in the Prospective Bidder's bid, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Bidder), including contact information for such proposed assignee.

7.     Good Faith Deposit. Each Qualified Bid must be accompanied by a good faith deposit (each, a "Good Faith Deposit") in the form of cash in an amount equal to ten percent (10%) of the proposed purchase price for the Assets. The Good

Faith Deposit shall be deposited no later than the Bid Deadline with an escrow agent selected by the Debtors (the "Escrow Agent") and held in escrow until ten (10) business days after the conclusion of the Auction, except for the Good Faith Deposit of any bidder who is selected at the Auction as a Successful Bidder or as a Backup Bidder, and thereafter returned to the respective Qualified Bidders in accordance with these Bidding Procedures.

8.  Adequate Assurance.  A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its bid.  The Debtors may require the following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the bid, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns, and (iv) annual reports; and (b) the Prospective Bidder's (or any other relevant assignee's) proposed use of any leased premises or other property included in the bid (the information described in clauses (a) and (b), the "Adequate Assurance Information").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract counterparties ("Counterparties").

9.  Representations and Warranties (As-Is, Where-Is).  Each Qualified Bid must include a written acknowledgement and representation that (a) the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its Qualified Bid, (b) the Prospective Bidder has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Bid, (c) the Prospective Bidder did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Prospective Bidder's Proposed Asset Purchase Agreement; and (d) the Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtors.

10. Authorization.  A Qualified Bid must (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of any bid for the Assets, participation in the Auction, and closing of the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; or, (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed sale transaction, a Qualified Bid must provide written evidence acceptable to the Debtors of authorization and the approval by the equity holder(s) of such Prospective Bidder.

11. Other Requirements.  A Qualified Bid must:

a.      state that the Prospective Bidder agrees to serve as a backup bidder (a "Backup Bidder") if such bidder's Qualified Bid is selected at the

|  | |
|---|---|
|  | Auction as the next highest or next best bid after the Successful Bid for the Assets (each such bid, a "<u>Backup Bid</u>"); |
|  | b.    state that the bid represents a binding, good-faith, and bona fide offer to purchase the Assets and is not subject to or conditioned on any further due diligence, and is irrevocable (i) until the selection of the Successful Bid in accordance with these Bidding Procedures; or (ii) if the bid is selected as a Successful Bid or as a Backup Bid, until the Backup Bid Expiration Date; |
|  | c.    state and acknowledge that the Prospective Bidder shall not be entitled to any bidding protection or payment in connection with the submission of a bid for the Assets or otherwise participating in the Sale Process; |
|  | d.    for any bidder other than the Stalking Horse Bidder, state that the Prospective Bidder is committed to closing the sale transaction contemplated in its bid as soon as practicable (and in no event later than May 16, 2025); |
|  | e.    expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Process; |
|  | f.    not contain any financing contingencies of any kind; |
|  | g.    state whether the Prospective Bidder intends to offer future employment to any of the Debtors' employees and, if so, to whom; |
|  | h.    certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture, or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtors; |
|  | i.    include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and |
|  | j.    contain such other information as may be reasonably requested by the Debtors. |
|  | By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, and (d) waives any and all rights (whether actual or potential) to contest any of the Debtors' determinations made during, or in connection with, any aspect of the Bidding Process. |
| **Provisions Providing Bid Protections to Stalking Horse Bidder**<br><br>Local Rule 6004-1(c)(i)(C) | The procedures set forth in Section IV of the Bidding Procedures (the "<u>Stalking Horse Designation Procedures</u>") shall apply to the designation of any Stalking Horse Bidder, Stalking Horse Agreement and Bid Protections.<br><br>Subject to the provisions set forth herein, the Bidding Procedures Order, and in consultation with the Consultation Parties, the Debtors may designate a Stalking Horse Bidder that submits a Qualified Bid acceptable to the Debtors and enter into a Stalking Horse Agreement, subject |

| | |
|---|---|
| | to higher or otherwise better offers at the Auction, **no later than April 16, 2025**, which deadline may be extended by the Debtors (after consultation with the Consultation Parties). |
| | The Debtors, in consultation with the Consultation Parties, may seek approval of one or more bid protections, including, break-up fees and/or reimbursement of expenses, if any, for documented, actual, and necessary expenses incurred by any Stalking Horse Bidder (collectively, the "<u>Bid Protections</u>"). |
| | The Debtors shall file a motion (a "<u>Stalking Horse Motion</u>") seeking authority to allow Bid Protections.  If the Debtors filed the Stalking Horse Motion on or before April 16, 2025, the Debtors shall request a hearing, which may be on shortened notice, to consider the Stalking Horse Motion (a "<u>Stalking Horse Hearing</u>"), subject to the Court's availability.  All parties in interest shall have the right at the Stalking Horse Hearing to object to the Debtors' entry into a Stalking Horse Agreement and to object to the Bid Protections and the form of proposed order (a "<u>Stalking Horse Order</u>"). |
| | Upon entry of a Stalking Horse Order, any Stalking Horse Agreement executed by the Debtors and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtors will be deemed to be a Qualified Bidder. |
| | Other than as provided by order of the Court, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse Bidder.  Any substantial contribution claims by any bidder are deemed waived. |
| **Modification of Bidding Procedures**<br><br>Local Rule 6004-1(c)(i)(D) | Section IX of the Bidding Procedures provides that Debtors reserve the right to, in their reasonable business judgment, after consultation with the Consultation Parties and in a manner consistent with their fiduciary duties and applicable law, (i) modify these Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein, adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; or (ii) otherwise modify these Bidding Procedures to further promote competitive bidding for, and maximizing the of value of, the Assets, in each case, to the extent not materially inconsistent with these Bidding Procedures or the Bidding Procedures Order. |
| **Closing with Alternative Back-up Bidders**<br><br>Local Rule 6004-1(c)(i)(E) | Section VII.C.2 of the Bidding Procedures sets forth the primary requirements with respect to Backup Bids:<br><br><u>Backup Bids</u>.   Immediately prior to the conclusion of the Auction, the Debtors will (a) determine, in a manner consistent with these Bidding Procedures and in consultation with the Consultation Parties, which Qualified Bid, other than any Credit Bid, is the Backup Bid; and (b) notify all Qualified Bidders at the Auction of the identity of the Backup Bidder and the amount of the purchase price and other material terms of the Backup Bid.<br><br>Except as may otherwise be provided in any Stalking Horse Agreement, a Backup Bid will remain binding on the applicable Backup Bidder until the earlier of (a) the first business day after the closing of the sale transaction with the Successful Bidder for the Assets and (b) thirty (30) days after the Sale Hearing (such date, the "<u>Backup Bid Expiration Date</u>").  If the sale transaction with the Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder for the Assets and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction. |

| | |
|---|---|
| **Provisions Governing the Auction**<br><br>Local Rule 6004-1(c)(ii) | Section VII of the Bidding Procedures sets forth the procedures governing the Auction.<br><br>If the Debtors receive more than one Qualified Bid (including a combination of bids that, when considered together, constitute a Qualified Bid) for the Assets, the Debtors will conduct an Auction for the Assets. If the Stalking Horse Bid is the only Qualified Bid received in respect of the Assets, the Debtors will not conduct an Auction for the Assets and will seek approval of such Stalking Horse Bid at the Sale Hearing. If the Debtors determine not to hold an Auction, the Debtors will file with the Court, and cause to be served and published on the Case Website, a notice containing the following information, as applicable: (i) a statement that the Auction for the Assets has been canceled; (ii) the identity of the Successful Bidder; (iii) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (iv) the date, time, and location of the Sale Hearing.<br><br>The Auction, if required, will be conducted either at the offices of Potter Anderson & Corroon LLP, 1313 N. Market Street, Wilmington, Delaware 19801 or virtually, **on May 7, 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties. If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail. The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Parties, and will cause publication of such change to occur on the Case Website.<br><br>If held, the Auction proceedings will be transcribed and/or video recorded.<br><br>A.  Participation and Attendees.<br><br>Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative. Subject to the Auction procedures set forth herein, all Qualified Bidders and the Consultation Parties are permitted to attend the Auction; *provided* that the Debtors may, in their sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction.<br><br>Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith, and bona fide offer to purchase the Assets identified in such bids.<br><br>All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful Bidder, and Backup Bidder) shall be deemed to have (i) agreed that all proceedings in the Court related to these Bidding Procedures, the Auction, any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction are core proceedings as described in 28 U.S.C. § 157; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction; and (iii) consented to the entry of a final order or judgment by the Court in connection with any disputes relating to these Bidding Procedures, the Auction, or the |

construction or enforcement of any agreement or any other document relating directly to the sale transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

Any party in interest may attend the Auction; provided that any such party request attendance at least two (2) days prior to the start of the Auction by emailing counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)).

B.    Auction Proceedings.

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment (in a manner consistent with their fiduciary duties and in consultation with the Consultation Parties):

1.    Baseline Bids.  Prior to the commencement of the Auction, the Debtors will determine, in their reasonable business judgment (and in consultation with the Consultation Parties) the highest or otherwise best Qualified Bid submitted for the Assets (such Qualified Bid, a "Baseline Bid").  Bidding at the Auction shall commence at the amount of the Baseline Bid.  **No later than May 6, 2025**, the Debtors will provide all Qualified Bidders with (a) a notice identifying all the Qualified Bidders and which Qualified Bid is the Baseline Bid; and (b) a copy of the Baseline Bid.

2.    Minimum Overbid.  Bidding shall commence at the Baseline Bid.  The first overbid at the Auction shall be in an amount not less than the amount of the Baseline Bid (plus the Bid Protections, if any, if a Stalking Horse Bid is the Baseline Bid) plus $100,000 (the "Minimum Overbid").  At each round of bidding, Qualified Bidders may submit successive bids higher than the Leading Bid (as defined below) from the prior round.  During the Auction, the Debtors may, in their reasonable discretion, announce increases or reductions to Minimum Overbids at any time.

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to the Baseline Bid, the Debtors will, at each round of bidding, consider and/or give effect to (a) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured; and (b) any additional costs that may be imposed on the Debtors.  Any subsequent bid made by any Stalking Horse Bidder shall be deemed to have been made in an amount equal to such subsequent bid plus the Bid Protections, if any, to the extent provided for in the Stalking Horse Agreement.

3.    Leading Bid.  After the first round of bidding and between each subsequent round of bidding, the Debtors will announce, after consultation with the Consultation Parties, the bid that they believe to be the highest or otherwise best offer for the Assets (such bid, a "Leading Bid") and describe the material terms thereof.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the material terms of the Leading Bid.

The Auction will include open bidding in the presence of all other Qualified Bidders.  Each Qualified Bidder shall have the right to be present for all rounds of bidding and to submit additional bids and make modifications to its Proposed

| | Asset Purchase Agreement at the Auction to improve its bid. The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.<br><br>The Debtors shall have the right to determine, in their reasonable business judgment after consultation with the Consultation Parties, which bid is the highest or otherwise best bid with respect to the Assets and, after consultation with the Consultation Parties, reject, at any time, without liability (but only in the absence of gross negligence or willful misconduct), any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Court, or the best interests of the Debtors and their estates. |
|---|---|

## B.    Key Dates and Deadlines.

23.    The Debtors propose the following key dates and deadlines for the sale process, certain of which dates and deadlines may be subject to extension in accordance with the Bidding Procedures:

| Deadline | Event |
|---|---|
| **Three business days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Notice and Assumption and Assignment Notice |
| **Five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Publication Notice |
| **Wednesday, April 16, 2025** | Deadline for Debtors to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement |
| **Monday, April 21, 2025 at 4:00 p.m. (ET)** | Deadline to object to Cure Costs |
| **Monday, April 28, 2025 at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **Monday, May 5, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Tuesday, May 6, 2025** | Deadline to designate Qualified Bids or to cancel the Auction, as applicable |
| **Wednesday, May 7, 2025 at 10:00 a.m. (ET)** | Auction (if needed) |
| **One day after the conclusion of the Auction** | Deadline for Debtors to file and serve Notice of Auction Results |
| **Friday, May 9, 2025 at 4:00 p.m. (ET)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |

| | |
|---|---|
| **12:00 p.m. (ET) one business day before Sale Hearing** | Debtors' Deadline to Reply to any Sale Objections or Supplemental Sale Objections |
| **[Tuesday, May 13], 2025 at [●] (ET)** | [Proposed] Sale Hearing |
| **Friday, May 16, 2025** | Deadline to Consummate Sale |

## C.     Sale Noticing and Objection Procedures

24.     The Bidding Procedures provide the following "Noticing Procedures":

a.     **Stalking Horse Order**.  As soon as practicable after the Debtors file the Stalking Horse Motion with the Court, the Debtors will cause a copy thereof to be served on the Sale Notice Parties and any Prospective Bidder.

b.     **Sale Notice.**  Within three (3) business days after entry of the Bidding Procedures Order, or as soon as reasonably practicable thereafter, the Debtors shall file and serve on the Sale Notice Parties and cause to be published on the Case Website the Sale Notice.

c.     **Publication**.  As soon as practicable but no later than five (5) business days after the entry of the Bidding Procedures Order, the Debtors will cause the information contained in the Sale Notice to be published once in the national edition of the *USA Today* or *The New York Times* (the "Publication Notice").

d.     **Sale Objection**.  Except objections to the conduct of the Auction, all objections to a sale of the Assets, including any objection to a sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, must be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) filed with the Court by **no later than April 28, 2025 at 4:00 p.m. (ET)** and served on the Objection Notice Parties.

e.     **Notice of Determination of Qualified Bids**.  The Debtors, in consultation with the Consultation Parties, will make a determination regarding which bids qualify as Qualified Bids and will notify Potential Bidders whether they have been selected as Qualified Bidders by **no later than May 6, 2025**.

   i.     **No later than May 6, 2025**, the Debtors will provide all Qualified Bidders copies of the Qualified Bid that the Debtors, after consultation with the Consultation Parties, determines is the highest or otherwise best offer for the Assets (the "Baseline Bid").

f.     **Auction Results**.  Within one day after the conclusion of the Auction, the Debtors shall file with the Court and cause to be served and published on the Case Website, a notice setting forth the results of the Auction

(the "Notice of Auction Results").  The Notice of Auction Results will (i) identify each Successful Bidder and each Backup Bidder; (ii) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bid, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Website; and (iii) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise the Objection Notice Parties of the outcome of the Auction.

g.      **Supplemental Sale Objections.**  Following service of the Notice of Auction Results, parties in interest may file an objection solely with respect to the conduct of the Auction (each a "Supplemental Sale Objection").  Any Supplemental Sale Objection shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) filed with the Court by **no later than May 9, 2025 at 4:00 p.m. (ET)** (the "Supplemental Sale Objection Deadline"); and (iii) served on the Objection Notice Parties.

25.     The Debtors believe that the Noticing Procedures constitute adequate and reasonable notice of the key dates and deadlines for the sale process, including, the dates and deadlines identified above.  Accordingly, the Debtors request that the Court find that the Noticing Procedures are adequate and appropriate under the circumstances and comply with the requirements of Bankruptcy Rule 2002 and Local Rule 2002-1.

**D.      Assumption and Assignment Procedures**

26.     In connection with the Sale, the Debtors likely will seek to assume and assign to the Successful Bidder one or more Contracts.  The Assumption and Assignment Procedures are designed to, among other things, govern the Debtors' provision of Adequate Assurance Information and notice of Cure Costs to applicable Counterparties.

27.     Accordingly, the Debtors hereby seek approval of the proposed Assumption and Assignment Procedures set forth below, which are designed to, among other things, (i) outline the process by which the Debtors will serve notice to all Counterparties regarding the proposed assumption and assignment, related Cure Costs, if any, and information regarding the Successful Bidder's adequate assurance of future performance, and (ii) establish objection and other relevant

deadlines and the manner for resolving disputes relating to assumption and assignment of executory contacts and unexpired leases.    Specifically, the Assumption and Assignment Procedures are as follows:

a.    **Potential Assumption and Assignment Notice**.  Within three (3) business days after the entry of the Bidding Procedures Order, the Debtors will file with the Court and serve on each Counterparty to a Contract that may be assumed in connection with any Sale an Assumption and Assignment Notice, which will (i) identify the applicable Contracts; (ii) list the Debtors' good-faith calculation of Cure Costs with respect to each such Contract; (iii) expressly state that assumption or assignment of a Contract is not guaranteed and is subject to Court approval; and (iv) prominently display the deadlines to file Cure Objections and Adequate Assurance Objections (each as defined below).  The Assumption and Assignment Notice shall also be served on each Counterparty listed therein via first class mail.

b.    **Assumption and Assignment Objections**.

   i.    Cure Objection Deadline. Any objection to the proposed Cure Costs (each a "Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than April 21, 2025, at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

   ii.    Resolution of Cure Objections. The Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the sale of the Assets, the Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the sale of the Assets (subject to the terms of the applicable purchase agreement).

   iii.    Adjournment.  If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, with the agreement of the Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, be adjourned to a subsequent hearing, with notice to the party having filed the Cure Objection (each an "Adjourned Cure Objection").  An Adjourned Cure Objection may be resolved after the closing of the Sale of the

Assets.  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale of the Assets.

iv.    <u>Failure to Timely Object</u>. If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract.  The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

v.    <u>Adequate Assurance Objection Deadline</u>. Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is the provision of adequate assurance of future performance with respect to the Contract (each such objection, an "<u>Adequate Assurance Objection</u>"), shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than May 9, 2025 at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

vi.    <u>Resolution of Adequate Assurance Objections</u>.  The Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

vii.    <u>Failure to Timely Object</u>.  If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance.

The Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B), and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

c.   **Supplemental Assumption and Assignment Notice**. If (i) the Debtors identify (a) additional Contracts to be assumed and assigned to a Successful Bidder or a Stalking Horse Bidder (any "<u>Additional Contracts</u>"), or (b) modifications that need to be made to a proposed Cure Cost previously stated in the Assumption and Assignment Notice, or (ii) a Successful Bidder designates any Additional Contracts not previously included on the Assumption and Assignment Notice for assumption in accordance with the time period set forth in the applicable purchase agreement between the Debtors and such Successful Bidder or Stalking Horse Bidder, the Debtors shall promptly file with the Court and serve by first class mail a supplemental Assumption and Assignment Notice, the form of which shall be substantially similar to the form of Assumption and Assignment Notice (each, a "<u>Supplemental Assumption and Assignment Notice</u>"), only on the Counterparties to each added, removed, or otherwise affected Contract. As soon as reasonably practicable after filing a Supplemental Assumption and Assignment Notice, the Debtors shall post a copy of the Supplemental Assumption and Assignment Notice on the Case Website. Any Cure Objection with respect to Cure Costs set forth in a Supplemental Assumption and Assignment Notice or any Adequate Assurance Objection with respect to the provision of adequate assurance of future performance must be filed no less than fourteen (14) calendar days after service of a Supplemental Assumption and Assignment Notice and must otherwise comply with the requirements herein for Cure Objections.

d.   **Notice of Assumed Contracts**. As soon as reasonably practicable after the closing of the Sale, the Debtors will file with the Court, serve on the applicable Counterparties and cause to be published on the Case Website, a notice containing the list of Contracts that the Debtors assumed and assigned pursuant to the asset purchase agreement with the Successful Bidder.

e.   **Reservation of Rights**. The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtors, any Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned. The Debtors reserve all rights, claims, and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**RELIEF REQUESTED**

28.     By this Motion, pursuant to sections 105(a), 363, 365, 503 and 507 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 6006, and Local Rule 6004-1, the Debtors request entry of the following:

    a.     the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A,** granting the following relief:

        (i)     approving the Bidding Procedures, substantially in the form attached to the Bidding Procedures Order as **Exhibit 1**, to be used in connection with one or more Sale of all, substantially all, or portion of the Debtors' Assets;

        (ii)     authorizing the Debtors to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures;

        (iii)     scheduling (A) the Auction of the Assets and (B) the Sale Hearing to consider approval of the proposed Sale;

        (iv)     approving the Sale Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 2**;

        (v)     approving the Assumption and Assignment Procedures;

        (vi)     approving the Assumption and Assignment Notice, substantially in the form attached to the Bidding Procedures Order as **Exhibit 3**; and

        (vii)     granting related relief; and

    b.     a Sale Order, granting the following relief:

        (i)     authorizing the sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances and assumed liabilities as determined by the Debtors and the Successful Bidder, with liens to attach to the proceeds of the Sale;

        (ii)     authorizing the assumption and assignment of certain Contracts in connection with an Sale; and

        (iii)     granting related relief.

**BASIS FOR RELIEF**

**A.      The Proposed Bidding Procedures Are Fair, Appropriate and Should Be Approved**

29.      The Bidding Procedures are specifically designed to promote what courts have deemed to be the paramount goal of any proposed sale of property of a debtor's estate: maximizing the value of sale proceeds received by the estate.  *See Burtch v. Ganz (In re Mushroom Transp. Co.)*, 382 F.3d 325, 339 (3d Cir. 2004) (finding that a debtor had a fiduciary duty to maximize and protect the value of the estate's assets); *In re Food Barn Stores, Inc.*, 107 F.3d 558, 564-65 (8th Cir. 1997) (recognizing that a main goal of any proposed sale of property of a debtor's estate is to maximize value).  Courts uniformly recognize that procedures established for the purpose of enhancing competitive bidding are consistent with the fundamental goal of maximizing the value of a debtor's estate.  *See Calpine Corp. v. O'Brien Envtl. Energy, Inc. (In re O'Brien Envtl. Energy, Inc.)*, 181 F.3d 527, 536-37 (3d Cir. 1999) (noting that bidding procedures that promote competitive bidding provide a benefit to a debtor's estate); *Official Comm. of Subordinated Bondholders v. Integrated Res. Inc. (In re Integrated Res. Inc.)*, 147 B.R. 650, 659 (S.D.N.Y. 1992) (observing the benefit of sale procedures that "encourage bidding and . . . maximize the value of the debtor's assets").

30.      Here, the Bidding Procedures meet this standard because the proposed timeframe is necessary to allow the Debtors to emerge as a going concern, and the Debtors believe that the auction process and time periods set forth in the Bidding Procedures are reasonable and will provide interested parties with sufficient time and information necessary to formulate a bid to purchase all or substantially all of the Assets.  The proposed timeline will facilitate a fair and open sale process and will position the Debtors to maximize the value received for the Assets.

31.      The facts and circumstances of these chapter 11 cases require that the Debtors run an expedited, but robust, sale process.  Speed and certainty are critical here, especially because the

Debtors' ability to access the DIP Facility and cash collateral (which will provide the Debtors with the necessary liquidity to fund continued operations and these chapter 11 cases) are both conditioned upon adherence to strict sale milestones.  Having made the decision to fund these chapter 11 cases on a junior basis, and at tremendous financial exposure, the DIP Lender reasonably has requested an expedited timeline to limit that exposure.  The Debtors simply do not have liquidity to support a protracted sale process.

33.    More importantly, and as set forth in the Chesen Declaration, the Debtors believe that the Court's approval of Bidding Procedures sooner rather than later will generate more interest in the Assets and increase the likelihood that the Debtors receive one or more Qualified Bids for their Assets.  This, in turn, is more likely to lead to a Sale transaction that maximizes the value of the Assets for the benefit of the Debtors, their estates, and their creditors.  Accordingly, the Debtors submit than running a longer Court-approved postpetition marketing and sale process, consistent with the timeline set forth in the Bidding Procedures Order, is necessary under the circumstances and appropriate in these chapter 11 cases.

33.    The proposed Bidding Procedures provide interested parties with fifty (50) days after the Petition Date to continue diligence and submit a qualified bid, and with fifty-eight (58) days from the Petition Date to the proposed Sale Hearing.  The timeline set forth in the Bidding Procedures is sufficient to provide these potential purchasers with an adequate amount of  time to diligence the assets and submit bids.

34.    Additionally, the Bidding Procedures will allow the Debtors to conduct the Auction in a transparent manner that will encourage participation by financially capable bidders with demonstrated ability to consummate a timely Sale.  Specifically, the Bidding Procedures contemplate an open auction process with no barriers to entry and provide potential bidding parties

with sufficient time to perform due diligence and acquire the information necessary to submit a timely and well-informed bid.  Accordingly, the Bidding Procedures should be approved because, under the circumstances, they are reasonable, appropriate and in the best interests of the Debtors, its estates and all parties in interest.

35.     Courts in this District routinely approve procedures substantially similar to the proposed Bidding Procedures.  *See, e.g.*, *In re Lucira Health, Inc.*, No. 23-10242 (MFW) (Bankr. D. Del. Mar. 27, 2023) (sale hearing held 57 days after the petition date)*; In re The Rockport Company, LLC*, et al. Case No. 23-10774 (BLS) (Bankr. D. Del. July 25, 2023) (sale hearing held 41 days after the petition date); *In re Performance Powersports Group Holdings, Inc.*, No. 23-10047 (LSS) (Bankr. D. Del. Feb. 27, 2023) (sale hearing held 57 days after the petition date); *In re Enjoy Tech., Inc.*, Case No. 22-10580 (JKS) (Bankr. D. Del. Jul. 26, 2022) (sale hearing held 43 days after the petition date); *In re Gold Standard Baking, LLC*, Case No. 22-10559 (JKS) (Bankr. D. Del. Jul. 8, 2022) (sale hearing held 42 days after the petition date).[5]

**B.      The Proposed Bid Protections Have Sound Business Purposes and Should Be Approved**

36.     As described above, the Bid Protections, if they prove necessary for the entry into any Stalking Horse Agreement, include break-up fees and reimbursement of reasonable, documented expenses.   The Debtors believe that the Bid Protections may be necessary to encourage prospective bidders to become the Stalking Horse Bidder and enter into a binding Stalking Horse Agreement.  The Debtors believe that the presence of a Stalking Horse Bidder will set a floor for the value of the Assets and attract other potential buyers to bid for the Assets, thereby

---

[5]      Because of the voluminous nature of the orders cited herein, such orders have not been attached to this motion. Copies of these orders are available upon request to the Debtors' proposed counsel.

maximizing the realizable value of the Assets for the benefit of the Debtors' estates, their creditors, and all other parties-in-interest.

37.     Approval of the Bid Protections is governed by standards for determining the appropriateness of bid protections in the bankruptcy context.  Courts have identified at least two instances in which bid protections may benefit the estate.  *First*, a break-up fee may be necessary to preserve the value of a debtor's estate if assurance of the fee "promote[s] more competitive bidding, such as by inducing a bid that otherwise would not have been made and without which bidding would have been limited."  *In re O'Brien Envtl. Energy, Inc.*, 181 F.3d at 537.  *Second*, if the availability of a break-up fee was to induce a bidder to research the value of the debtor and convert the value to a dollar figure on which other bidders can rely, the bidder may have provided a benefit to the estate by increasing the likelihood that the price at which the debtor is sold will reflect its true worth."  *Id.*; *see also In re Reliant Energy Channelview LP*, 594 F.3d 200, 206-08 (3d Cir. 2010) (reasoning that a break-up fee should be approved if it is necessary to entice a party to make the first bid or if it would induce a stalking horse bidder to remain committed to a purchase).

38.     In *O'Brien*, the Third Circuit reviewed the following nine factors set forth by the lower court as relevant in deciding whether to award a break-up fee:

      a.      the presence of self-dealing or manipulation in negotiating the break-up fee;

      b.      whether the fee hampers, rather than encourages, bidding;

      c.      the reasonableness of the break-up fee relative to the purchase price;

      d.      whether the unsuccessful bidder placed the estate property in a "sale configuration mode" to attract other bidders to the auction;

     e.     the ability of the request for a break-up fee to serve to attract or retain a potentially successful bid, establish a bid standard or minimum for other bidders or attract additional bidders;

     f.     the correlation of the fee to a maximum value of the debtor's estate;

     g.     the support of the principal secured creditors and creditors' committees of the break-up fee;

     h.     the benefits of the safeguards to the debtor's estate; and

     i.     the substantial adverse impact of the break-up fee on unsecured creditors, where such creditors are in opposition to the break-up fee.

*See O'Brien*, 181 F.3d at 536.

39.    While none of the factors is dispositive, an application of the facts to several of such factors supports the approval of the Bid Protections.  In particular, the Bid Protections are necessary to preserve the value of the Debtors' estates because they may enable the Debtors to secure an adequate floor for the Assets and to therefore insist that competing bids be materially higher or otherwise better than any Stalking Horse Agreement—a clear benefit to the Debtors' estates.  Further, a Stalking Horse Bidder may not agree to act as a "stalking horse" without the Bid Protections, given the substantial time and expense that would be incurred in connection with entering into definitive documentation and the risk that it will be outbid at the Auction.  Without the Bid Protections, the Debtors might lose the opportunity to obtain the highest or otherwise best offer for the Assets and would certainly lose any downside protection that would be afforded by the existence of a Stalking Horse Bidder.  The bid of a Stalking Horse Bidder would send a message to all potential bidders that the Assets are worth at least as much as any Stalking Horse Bid.  Therefore, without the benefit of the bid of a Stalking Horse Bidder (*i.e.*, a bid providing the floor), the bids received at auction for the Assets could be substantially lower than any bid offered by a Stalking Horse Bidder.

40.     "The usual rule is that if break-up fees encourage bidding, they are enforceable; if they stifle bidding, they are not enforceable." *In re Integrated Res., Inc.*, 147 B.R. at 659.  The Debtors do not believe that the Bid Protections will stifle bidding.  To the contrary, the Debtors believe that such bid protections will encourage bidding by serving "any of three possible useful functions: (1) to attract or retain a potentially successful bid, (2) to establish a bid standard or minimum for other bidders to follow, or (3) to attract additional bidders." *Id.* at 662.

41.     Here, the bid of a Stalking Horse Bidder would serve all three functions.  *First*, a Stalking Horse Bidder might not enter into a Stalking Horse Agreement without the Bid Protections.  *Second*, pursuant to the Bidding Procedures, any bidder that wishes to participate in the Auction must submit an offer that is higher or otherwise better than the bid of any Stalking Horse Bidder.  *Third*, the bid of the Stalking Horse Bidder could attract additional bidders because, among other things, additional bidders would be able to save considerable time and expense because they could use many of the documents that a Stalking Horse Bidder may negotiate, including, among other things, any Stalking Horse Agreement and the schedules thereto, in making their bid.  In sum, if all, substantially all, or portion of the Assets are sold to a Successful Bidder other than a Stalking Horse Bidder, the Sale likely will be the result of the Stalking Horse Bidder's crucial role as an initial bidder generating interest in the Assets and establishing a minimum acceptable price and offer against which other parties can bid.

42.     In addition, "[a] break-up fee should constitute a fair and reasonable percentage of the proposed purchase price, and should be reasonably related to the risk, effort, and expenses of the prospective purchaser.  'When reasonable in relation to the bidder's efforts and to the magnitude of the transaction, break-up fees are generally permissible.'" *Id*. (citation omitted).

43.     Here, the Bidding Procedures would authorize the Debtors to file a Stalking Horse Motion and allow a hearing on an expedited basis to approve Bid Protections in an amount to be set forth in such Stalking Horse Motion.

**C.     Approval of a Sale of the Assets Is Warranted Under Section 363 of the Bankruptcy Code.**

44.     Ample authority exists for approval of the Sale contemplated by this Motion. Section 363 of the Bankruptcy Code provides, in relevant part, that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1).  Although section 363 of the Bankruptcy Code does not specify a standard for determining when it is appropriate for a court to authorize the use, sale or lease of property of a debtor's estate, courts have approved the authorization of a sale of a debtor's assets if such sale is based upon the sound business judgment of the debtor.  *See, e.g.*, *Meyers v. Martin (In re Martin)*, 91 F.3d 389, 395 (3d Cir. 1996) (citing *In re Schipper*, 933 F.2d 513 (7th Cir. 1991)); *In re Chateaugay Corp.*, 973 F.2d 141, 143 (2d Cir. 1992); *Stephen Indus., Inc. v. McClung*, 789 F.2d 386, 389-90 (6th Cir. 1986); *Committee of Equity Security Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063, 1071 (2d Cir. 1983).

45.     Courts typically consider the following factors in determining whether a proposed sale satisfies this standard:   (i) whether a sound business justification exists for the sale; (ii) whether adequate and reasonable notice of the sale was provided to interested parties; (iii) whether the sale will produce a fair and reasonable price for the property; and (iv) whether the parties have acted in good faith.  *See In re Decora Indus., Inc.*, No. 00-4459 (JJF), 2002 WL 32332749, at *2 (D. Del. May 20, 2002) (citing *In re Del. & Hudson Ry. Co.*, 124 B.R. 169, 176 (D. Del. 1991)).  Where a debtor demonstrates a valid business justification for a decision, it is presumed that "in making a business decision the directors of a corporation acted on an informed

basis, in good faith and in the honest belief that the action taken was in the best interests of the company." *In re Integrated Res., Inc.*, 147 B.R. at 656.

> 1.     **The Debtors Have Demonstrated a Sound Business Justification for the Sale of the Assets.**

46.     A sound business purpose for the sale of a debtor's assets outside the ordinary course of business exists where such sale is necessary to preserve the value of the estate for the benefit of creditors and interest holders.  *See, e.g.*, *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d 143, 148 (3d Cir. 1986); *In re Lionel Corp.*, 722 F.2d at 1070-71; *In re Food Barn Stores, Inc.*, 107 F.3d at 564-65 (recognizing the paramount goal of any proposed sale of property of estate is to maximize value).

47.     As set forth above, a strong business justification exists for the sale of all, substantially all, or portion of the Assets as described herein.  An orderly and expeditious sale of the Assets is critical to maximizing the value of the Debtors' estates and recoveries for the Debtors' economic stakeholders.  Absent a sale, the Debtors lack liquidity to reorganize and will be forced to shut down and liquidate.

> 2.     **Noticing Procedures Are Reasonable and Appropriate.**

48.     Bankruptcy Rules 2002 and 6004 require the Debtors to notify creditors of the proposed sale, provide a description of the Assets and disclose the time and place of the Auction, the terms and conditions of any proposed Sale, and the Objection Deadlines.  *See* Fed. R. Bankr. P. 2002(a), 2002(c), 6004(a).  The Noticing Procedures described herein are reasonably calculated to provide all of the Debtors' known creditors and all other parties-in-interest with adequate and timely notice of, among other things, the proposed Sale, the Bidding Procedures, the Stalking Horse Designation Procedures, the Auction, and the Sale Hearing.  Further, publishing notice is designed to capture any creditors and parties in interest not currently known to the Debtors.

Accordingly, the Debtors request that the Court approve the Noticing Procedures described herein and in the Bidding Procedures Order.

> ### 3. The Proposed Sale Will Yield a Fair and Reasonable Purchase Price for the Assets.

49.     As set forth above, the Debtors believe that any Sale governed by the Bidding Procedures will yield a fair and reasonable price for the Assets in the circumstances.  The Bidding Procedures were designed to facilitate a competitive bidding process.

50.     The Debtors also constructed the Bidding Procedures to promote transparency, good faith and fairness throughout the entire sale process. The Bidding Procedures provide an appropriate framework for the Debtors to review, analyze and compare bids for the Assets and to engage with bidders on an arm's-length basis to work to improve the quality of their bids for the benefit of all parties in interest.

51.     A Sale governed by the Bidding Procedures undoubtedly will serve the important objectives of obtaining not only a fair and reasonable purchase price for the Assets, but also the highest or otherwise best value for the Assets.  This is a critical feature of the Bidding Procedures, which will inure to the benefit of all parties-in-interest in these chapter 11 cases.

> ### 4. The Bidding Procedures Ensure that the Sale Process Is Conducted in Good Faith and that the Ultimate Purchaser of the Applicable Assets Is Entitled to the Protections Afforded by Section 363(m) of the Bankruptcy Code.

52.     Section 363(m) of the Bankruptcy Code is designed to protect the sale of a debtor's assets to a good-faith purchaser.  Specifically, section 363(m) provides the following:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal,

unless such authorization and such sale . . . were stayed pending
appeal.

11 U.S.C. § 363(m).  Section 363(m) of the Bankruptcy Code fosters the "policy of not only

affording finality to the judgment of the [B]ankruptcy [C]ourt, but particularly to give finality to

those orders and judgments upon which third parties rely." *In re Abbotts Dairies*, 788 F.2d at 147;

*see also Allstate Ins. Co. v. Hughes*, 174 B.R. 884, 888 (S.D.N.Y. 1994) ("Section 363(m) . . .

provides that good faith transfers of property will not be affected by the reversal or modification

on appeal of an unstayed order, whether or not the transferee knew of the pendency of the appeal.").

53.    While the Bankruptcy Code does not define "good faith," the Third Circuit has held

that indicia of bad faith typically include "fraud, collusion between the purchaser and other bidders

or the trustee, or an attempt to take grossly unfair advantage of other bidders." *Abbotts Dairies*,

788 F.2d at 147 (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978))

(other citations omitted); *see also Kabro Assoc. of West Islip, L.L.C. v. Colony Hill Assocs. (In re

Colony Hill Assocs.)*, 111 F.3d 269, 276 (2d Cir. 1997).

54.    In other words, a party would have to show fraud or collusion between the buyer

and the debtor in possession, the trustee or other bidders to demonstrate a lack of good faith.  *See

Kabro Assocs. of West Islip, LLC v. Colony Hill Assocs. (In re Colony Hill Assocs.)*, 111 F.3d 269,

276 (2d Cir. 1997) ("[t]ypically, the misconduct that would destroy a [buyer]'s good faith status

at a judicial sale involves fraud, collusion between the [buyer] and other bidders or the trustee, or

an attempt to take grossly unfair advantage of other bidders") (quoting *In re Rock Indus. Mach

Corp.*, 572 F. 2d 1195, 1998 (7th Cir. 1978)).  Due to the absence of a bright-line test for good

faith, the determination is based on the facts of each case, with a focus on the "integrity of [a

bidder's] conduct in the course of the sale proceedings." *In re Pisces Leasing Corp.*, 66 B.R. 671,

673 (E.D.N.Y. 1986) (quoting *In re Rock Indus. Mach. Corp.*, 572 F.2d at 1998).

55.    The Debtors submit that any Successful Bidder will be a "good faith purchaser" within the meaning of section 363(m) of the Bankruptcy Code.  As set forth above, the Bidding Procedures are designed to produce a fair and transparent competitive bidding process.  In addition, SSG is an independent investment bank retained by the Debtors for the purpose of exploring strategic alternatives, marketing the Debtors' business, soliciting bids, and negotiating the terms of a potential Sale.  Each Qualified Bidder participating in the Auction must confirm that it has not engaged in any collusion with respect to the bidding or the sale of the Assets.  Any purchase agreement with a Successful Bidder executed by the Debtors will be negotiated at arm's-length and in good faith by sophisticated parties represented by competent counsel under the oversight of the Independent Manager and the CRO.  Accordingly, the Debtors seek a finding that any Successful Bidder is a good faith purchaser and is entitled to the full protections afforded by section 363(m) of the Bankruptcy Code.

56.    Based on the foregoing, the Debtors submit that they have demonstrated that the proposed Sale is a sound exercise of its business judgment and should be approved as a good faith transaction.

**D.    A Sale of the Assets Free and Clear of Liens, Claims, Interests and Encumbrances Is Appropriate under Section 363(f) of the Bankruptcy Code.**

57.    A free and clear sale is a pre-requisite to ensuring that the Debtors are able to attract the best or otherwise highest offers and achieve a value-maximizing transaction in these chapter 11 cases for the benefit of the Debtors and their stakeholders.

58.    Section 363(f) of the Bankruptcy Code authorizes a debtor to sell assets free and clear of all liens, claims, interests and encumbrances of an entity other than the estate if any one of the following conditions is met:

      a.    applicable non-bankruptcy law permits sale of such property free and clear of such interest;

     b.       such entity consents;

     c.       such interest is a lien and the price at which such property is to be sold is greater than the aggregate value of all liens on such property;

     d.       such interest is in *bona fide* dispute; or

     e.       such entity could be compelled, in legal or equitable proceeding, to accept a money satisfaction of such interest.

11 U.S.C. § 363(f)(1)-(5); *see also In re Kellstrom Indus., Inc.*, 282 B.R. 787, 793 (Bankr. D. Del. 2002) ("Section 363(f) is written in the disjunctive, not the conjunctive, and if any of the five conditions are met, the debtor has the authority to conduct the sale free and clear of all liens."); *Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) (same).

59.      The Debtors anticipate that any Sale they elect to pursue will satisfy one or more of the requirements under section 363(f) of the Bankruptcy Code to permit a "free and clear" sale of the applicable Assets.

60.      Accordingly, the Debtors request that the Court authorize the sale of the Assets free and clear of any liens, claims, interests and encumbrances, to the fullest extent permitted by section 363(f) of the Bankruptcy Code.

**E.     The Debtors' Assumption and Assignment of Executory Contracts and Unexpired Leases Are Appropriate under Section 365 of the Bankruptcy Code.**

61.      Section 365(a) of the Bankruptcy Code provides that a debtor "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).  Courts employ the business judgment standard in determining whether to approve a debtor's decision to assume or reject an executory contract or an unexpired lease. *See, e.g., In re Market Square Inn, Inc.*, 978 F.2d 116, 121 (3d Cir. 1992) (finding that assumption or rejection of a lease "will be a matter of business judgment . . . ."); *In re HQ Global Holdings, Inc.*, 290 B.R. 507, 511 (Bankr. D. Del. 2003) (finding debtor's decision to assume or reject executory contract

is governed by business judgment standard and can only be overturned if decision was product of

bad faith, whim or caprice).  In this context, the business judgment test only requires that a debtor

demonstrate that assumption or rejection of an executory contract or unexpired lease benefits the

estate. *See Sharon Steel Corp. v. Nat'l Fuel Gas Distrib. Corp.*, 872 F.2d 36, 40 (3d Cir. 1989);

*Wheeling-Pittsburgh Steel Corp. v. West Penn Power Co., (In re Wheeling-Pittsburgh Steel Corp.)*,

72 B.R. 845, 846 (Bankr. W.D. Pa. 1987).

62.     Any proposed Sale will provide a Successful Bidder with the opportunity to

designate certain Contracts for assumption and assignment. Assumption of any Contracts is an

exercise of the Debtors' sound business judgment because the transfer of Contracts in connection

with a Sale is an essential element in the Debtors' ability to maximize the value of the Assets—

and particularly so when a Contract is integral to the ownership or operation of the Assets to be

acquired.  Further, the ability to assume and assign Contracts will increase the likelihood that the

Debtors will be able to sell the Assets as a going concern, thereby avoiding needless value-

destruction through a liquidation.

63.     The consummation of any Sale involving the assignment of a Contract will be

contingent upon the Debtors' compliance with the applicable requirements of section 365 of the

Bankruptcy Code.  Section 365(b)(1) requires that the Debtors either cure, or provide adequate

assurance that they will promptly cure, any outstanding defaults under the Contracts to be assumed.

*See* 11 U.S.C. § 365(b)(1).  The Debtors' assumption and assignment of any Contracts will be

dependent upon payment of Cure Costs and effective only upon the closing of a Sale.  As described

with specificity herein, subject to the Court's approval, the Debtors will file with the Court and

serve on each Counterparty an Assumption and Assignment Notice setting forth the Debtors' good-

faith calculation of the Cure Costs for each Contract that could be assumed in connection with a

Sale. Counterparties will have an opportunity to raise any Cure Objections in advance of the Sale Hearing.

64.     Section 365(f) of the Bankruptcy Code requires, in part, that the assignee of any executory contract provide "adequate assurance of future performance . . . whether or not there has been a default in such contract."  11 U.S.C. § 365(f)(2).  While the Bankruptcy Code does not define "adequate assurance," courts have held that what constitutes "adequate assurance" should be determined by "a practical, pragmatic construction based upon the facts and circumstances of each case."  *See Carlisle Homes, Inc. v. Azzari (In re Carlisle Homes, Inc.)*, 103 B.R. 524, 538 (Bankr. D.N.J. 1988) (quoting *In re Bon Ton Rest. & Pastry Shop, Inc.*, 53 B.R. 789, 803 (Bankr. N.D. Ill. 1985)); *see also In re Alipat, Inc.*, 36 B.R. 274, 276-77 (Bankr. E.D. Mo. 1984) (recognizing that the term adequate assurance "borrowed its critical language . . . from Section 2-609 of the Uniform Commercial Code" which "suggest[s] that adequate assurance is to be defined by commercial rather than legal standards . . . [and] factual considerations").  While no single standard governs every case, adequate assurance "will fall considerably short of an absolute guarantee of performance."  *In re Carlisle Homes, Inc.*, 103 B.R. at 538 (citations omitted); *In re Natco Indus., Inc.*, 54 B.R. 436, 440 (Bankr. S.D.N.Y. 1985) (adequate assurance of future performance does not mean absolute assurance that debtor will thrive and pay rent).

65.     Adequate assurance may be provided by demonstrating, among other things, the assignee's financial health and experience in managing the type of enterprise or property assigned. *See, e.g., In re Bygaph, Inc.*, 56 B.R. 596, 605-06 (Bankr. S.D.N.Y. 1986) (finding that industrial expertise, past success in running a similar business and financial wherewithal satisfied the adequate assurance requirement of section 365 of the Bankruptcy Code).

66.    The Bidding Procedures expressly specify that for a bid to qualify as a "Qualified Bid," a Prospective Bidder must include with its bid Adequate Assurance Information regarding the Prospective Bidder's (or any other relevant assignee's) ability to perform the applicable obligations under any Contracts that may be included in the bid.  The Debtors will furnish all available Adequate Assurance Information to the relevant Counterparties as soon as reasonably possible following its receipt of such information, upon such Counterparty's request.  Finally, any Counterparty that is dissatisfied with the content or quality of any relevant Adequate Assurance Information will have an opportunity to request additional information from the Debtors and, if necessary, file an Adequate Assurance Objection in advance of the Sale Hearing.  In light of the foregoing, the Debtors' assumption and assignment of any Contracts in accordance with the Assumption and Assignment Procedures would satisfy the requirements of section 365 of the Bankruptcy Code and should be approved.

67.    Finally, to facilitate the assumption and assignment of Contracts in furtherance of maximizing the value of the Assets, the Debtors also request that the Court find that any anti-assignment provision included in any Contract, whether such provision expressly prohibits, or has the effect of restricting or limiting assignment of a Contract, is unenforceable and prohibited pursuant to section 365(f) of the Bankruptcy Code.

**F.    Requests for Immediate Relief and Waiver of Stay.**

68.    Pursuant to Bankruptcy Rules 6004(h) and 6006(d), the Debtors seek a waiver of any stay of the effectiveness of the Bidding Procedures Order, any Sale Order, any order authorizing the assumption or assumption and assignment of a Contract in connection with a Sale, and any other order entered by this Court in connection with the Sale.  Bankruptcy Rule 6004(h) provides that "[u]nless the court orders otherwise, an order authorizing the use, sale, or lease of property (other than cash collateral) is stay for 14 days after the order is entered."  Fed. R. Bankr.

P. 6004(h).  Bankruptcy Rule 6006(d) provides that "[u]nless the court orders otherwise, an order authorizing the trustee to assign an executory contract or unexpired lease under § 365(f) is stayed for 14 days after the order is entered."  Fed. R. Bankr. P. 6006(d).

69.     The relief requested herein is necessary and appropriate to maximize the value of the Assets for the benefit of the Debtors' economic stakeholders.  Given the Debtors' precarious financial condition and limited cash runway, the relief requested herein should be granted and effective as soon as practicable.  Any delay in the sale process could jeopardize the Debtors' chapter 11 strategy and the ability of the Debtors to consummate a value-maximizing transaction. Accordingly, the Debtors submit that ample cause exists to justify waiving the fourteen-day stays imposed by Bankruptcy Rules 6004(h) and 6006(d), in each case, to the extent that such stay applies to the relief requested herein.

## NOTICE

70.     Notice of this Motion will be provided to the following parties or their respective counsel:  (a) the Office of the United States Trustee for the District of Delaware; (b) the holders of the thirty (30) largest unsecured claims against the Debtors on a consolidated basis; (c) the DIP Lender; (d) the Bridge Lender; (e) the Indenture Trustee; (f) the Internal Revenue Service; (g) the United States Attorney's Office for the District of Delaware; (h) the state attorneys general for all states in which the Debtors conduct business; and (i) any party that has requested notice pursuant to Bankruptcy Rule 2002.  The Debtors respectfully submit that, in light of the nature of the relief requested, no further notice is necessary.

## NO PRIOR REQUEST

71.     The Debtors have not previously sought the relief requested herein from the Court or any other court.

## **CONCLUSION**

WHEREFORE, the Debtors respectfully request that the Court (i) enter the Bidding Procedures Order, substantially in the form attached hereto as **Exhibit A**; (ii) and, after the Sale Hearing, the Sale Order, respectively, granting the relief requested in the Motion; and (iii) grant such other and further relief to the Debtors as the Court may deem proper.

Dated: March 17, 2025          POTTER ANDERSON & CORROON LLP
Wilmington, Delaware

*/s/ Brett M. Haywood*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Brett M. Haywood (No. 6166)
Katelin A. Morales (No. 6683)
James R. Risener III (No. 7334)
Andrew C. Ehrmann (No. 7395)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
           rmcneill@potteranderson.com
           bhaywood@potteranderson.com
           kmorales@potteranderson.com
           jrisener@potteranderson.com
           aehrmann@potteranderson.com

*Proposed Counsel for Debtors and Debtors in Possession*

**<u>EXHIBIT A</u>**

**Bidding Procedures Order**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |

**ORDER (I) APPROVING BIDDING PROCEDURES FOR THE SALE
OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (II) AUTHORIZING
THE DEBTORS TO DESIGNATE ONE OR MORE STALKING HORSE BIDDERS
AND TO PROVIDE BID PROTECTIONS, (III) SCHEDULING AN AUCTION AND
APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (IV) APPROVING
ASSUMPTION AND ASSIGNMENT PROCEDURES, (V) SCHEDULING A
SALE HEARING AND APPROVING THE FORM AND MANNER OF
NOTICE THEREOF, AND (VI) GRANTING RELATED RELIEF**

Upon consideration of the Motion[2] filed by the debtors and debtors in possession

(the "Debtors") in the above-captioned chapter 11 cases; and the Court having reviewed the

Motion, the First Day Declaration and the Chesen Declaration; and the Court having considered

the statements of counsel and the evidence adduced with respect to the Motion at a hearing before

the Court (if any) to consider certain of the relief requested in the Motion (the "Bidding Procedures

Hearing"); and after due deliberation, this Court having determined that the legal and factual bases

set forth in the Motion, the First Day Declaration, and the Chesen Declaration, establish just cause

for the relief granted herein; and it appearing that the relief requested in the Motion is in the best

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789).  The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2]   Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Motion.

interests of the Debtors, their estates, and their creditors, and the Debtors having demonstrated good, sufficient, and sound business justifications for the relief granted herein;

**IT IS HEREBY FOUND AND DETERMINED THAT:**

A.    The Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334 and the *Amended Standing Order of Reference* from the United States District Court for the District of Delaware, dated February 29, 2012.  This matter is a core proceeding pursuant to 28 U.S.C. § 157(b).

B.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

C.    Notice of the Motion and the Bidding Procedures Hearing was sufficient under the circumstances of these chapter 11 cases, and such notice complied with all applicable requirements of the Bankruptcy Code, Bankruptcy Rules, and the Local Rules.  Accordingly, no other or further notice of the Motion, the Bidding Procedures Hearing, or this Order need be provided.

D.    The bidding procedures, substantially in the form attached hereto as **<u>Exhibit 1</u>** (the "<u>Bidding Procedures</u>") and incorporated herein by reference as if fully set forth in this Order, are fair, reasonable, and appropriate and are designed to maximize the value of the proceeds of the sale of all, substantially all, or a portion of the Debtors' assets (the "<u>Assets</u>").

E.    The Bidding Procedures comply with the requirements of Local Rule 6004-1(c).

F.    The procedures set forth herein regarding the Debtors' assumption and assignment of executory contracts and unexpired leases (collectively, the "<u>Contracts</u>") in connection with a sale of the Assets (the "<u>Assumption and Assignment Procedures</u>") are fair, reasonable, and appropriate and comply with the provisions of section 365 of the Bankruptcy Code and Rule 6006 of the Federal Rules of Bankruptcy Procedure (the "<u>Bankruptcy Rules</u>").

G.      The Debtors have articulated good and sufficient business reasons for the Court to approve the relief requested in the Motion, including, without limitation, (i) the Bidding Procedures; (ii) the form and manner of notice of the Bidding Procedures, the auction of the Assets (the "Auction"), and the final hearing to consider approval of a sale of the Assets (the "Sale Hearing"), substantially in the form attached hereto as **Exhibit 2** (the "Sale Notice"); (iii) the form and manner of notice to each relevant non-debtor counterparty to a Contract (each, a "Counterparty") of (a) the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Costs") and (b) certain other information regarding the potential assumption and assignment of Contracts in connection with the sale of the Assets, substantially in the form attached hereto as **Exhibit 3** (the "Assumption and Assignment Notice"); and (iv) the Assumption and Assignment Procedures.  Such good and sufficient business reasons, which were set forth in the Motion and on the record at the Bidding Procedures Hearing, including the First Day Declaration and the Chesen Declaration, and are incorporated herein by reference and, among other things, form the basis for the findings of fact and conclusions of law set forth herein.

H.      The Bidding Procedures are reasonably designed to promote active bidding at, and participation in, the Auction to ensure that the highest or otherwise best value is generated for the Assets.

I.      The Debtors are authorized, in consultation with the Consultation Parties, to select a Stalking Horse Bidder, to file a Stalking Horse Motion, and to seek entry of a Stalking Horse Order, approving, among other things, Bid Protections at the Stalking Horse Hearing.

J.      The Sale Notice, the Publication Notice, and the Assumption and Assignment Notice are appropriate and reasonably calculated to provide all interested parties with timely and

proper notice of the Auction, the Sale Hearing, the Bidding Procedures, the Assumption and Assignment Procedures, the Debtors' proposed Cure Costs, any proposed assumption of a Contract in connection with a sale of the Assets, and all relevant and important dates and deadlines with respect to the foregoing, and no other or further notice of the Auction, the Sale of the Assets, or the assumption and assignment of Contracts in connection therewith shall be required.

K.      The findings of fact and conclusions of law herein constitute the Court's findings of fact and conclusions of law for the purposes of Bankruptcy Rule 7052, made applicable pursuant to Bankruptcy Rule 9014. To the extent any findings of facts are conclusions of law, they are adopted as such.  To the extent any conclusions of law are findings of fact, they are adopted as such.

**IT IS HEREBY ORDERED, ADJUDGED, AND DECREED THAT:**

1.      The Motion is GRANTED to the extent set forth herein.

2.      All objections to the relief granted in this Order that have not been withdrawn, waived, or settled, and all reservations of rights included therein, are hereby overruled, and denied on the merits with prejudice.

**A.      The Timeline for the Sale**

3.      The Debtors are authorized to proceed with the sale transaction in accordance with the Bidding Procedures and to take any and all actions reasonably necessary or appropriate to implement the Bidding Procedures in accordance with the following timeline:

| Deadline | Event |
|---|---|
| **Three business days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Notice and Assumption and Assignment Notice |
| **Five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Publication Notice |

4

| | |
|---|---|
| **Wednesday, April 16, 2025** | Deadline for Debtors to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement |
| **Monday, April 21, 2025 at 4:00 p.m. (ET)** | Deadline to object to Cure Costs |
| **Monday, April 28, 2025 at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **Monday, May 5, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Tuesday, May 6, 2025** | Deadline to designate Qualified Bids or to cancel the Auction, as applicable |
| **Wednesday, May 7, 2025 at 10:00 a.m. (ET)** | Auction (if needed) |
| **One day after the conclusion of the Auction** | Deadline for Debtors to file and serve Notice of Auction Results |
| **Friday, May 9, 2025 at 4:00 p.m. (ET)** | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| **12:00 p.m. (ET) one business day before Sale Hearing** | Debtors' Deadline to Reply to any Sale Objections or Supplemental Sale Objections |
| **[Tuesday, May 13], 2025 at [●] (ET)** | [Proposed] Sale Hearing |
| **Friday, May 16, 2025** | Deadline to Consummate Sale |

## B.    The Bidding Procedures

4.    The Bidding Procedures attached hereto as **<u>Exhibit 1</u>** are hereby approved in their entirety and are incorporated by reference as if fully set forth herein.  The Bidding Procedures shall govern the selection of a Stalking Horse Bidder, bids and proceedings related to the Auction and the sale of the Assets.  The failure to specifically include or reference a particular provision of the Bidding Procedures in this Order shall not diminish or impair the effectiveness of such provision.

5.    Subject to this Order and the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right to, following consultation with the Official Committee of Unsecured Creditors (if any, the "<u>Committee</u>") and, solely to the extent it is not participating in the Auction as a bidder and is not otherwise a participant in any active or prospective Bid with

respect to any Assets, the DIP Lender (together, the "Consultation Parties"): (i) select a Stalking Horse Bidder and provide such Stalking Horse with Bid Protections; (ii) determine which bidders qualify as "Qualified Bidders," and which bids qualify as "Qualified Bids;" (iii) make final determinations as to whether the Debtors will conduct an Auction; (iv) select the Baseline Bid for the Assets; (v) determine the amount of each Minimum Overbid; (vi) determine the highest or otherwise best offer for the Assets (such bid, a "Leading Bid"); (vii) determine which Qualified Bid is the highest or otherwise best bid for the Assets (such Qualified Bid, including the Stalking Horse Bid if no other Qualified Bids are received and no Auction conducted, a "Successful Bid") and which Qualified Bid is the next highest and otherwise best bid after the Successful Bid for the Assets (such Qualified Bid, a "Backup Bid"); (viii) reject any bid that is (a) inadequate or insufficient; (b) not in conformity with the requirements of this Order or any other applicable order of the Court, the Bidding Procedures, the Bankruptcy Code, or other applicable law; or (c) contrary to the best interests of the Debtors and their estates; (ix) adjourn or cancel the Auction in accordance with the Bidding Procedures; and (x) adjourn the Sale Hearing in accordance with the Bidding Procedures.

6.    In accordance with and subject to the Bidding Procedures, the Debtors, in the exercise of their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, shall have the right, in consultation with the Consultation Parties, to modify the Bidding Procedures, including to (i) extend or waive deadlines or other terms and conditions set forth herein or therein; (ii) adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders; and (iii) otherwise modify the Bidding Procedures to further promote competitive bidding for, and maximizing the value of, the Assets.

7.      In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "Credit Bid") pursuant to section 363(k) of the Bankruptcy Code; *provided* that the Credit Bid complies with the orders of the Bankruptcy Court.

**C.      Stalking Horse Agreement and Bid Protections**

8.      The Stalking Horse Designation Procedures are approved, and the Debtors are authorized to seek approval of a Stalking Horse Agreement with a Stalking Horse Bidder and provide Bid Protections, in accordance with the Stalking Horse Designation Procedures.  The Debtors may designate a Stalking Horse Bidder **no later than April 16, 2025**, which deadline may be extended by the Debtors (after consultation with the Consultation Parties).

9.      To the extent the Debtors file a Stalking Horse Motion on or before April 16, 2025, the Debtors shall request a hearing to consider the Stalking Horse Motion (a "Stalking Horse Hearing"), subject to the Court's availability.

**D.      Bid Deadline and Auction**

10.      Any Prospective Bidder that intends to participate in the Auction must submit in writing to SSG a Qualified Bid on or before **May 5, 2025 at 5:00 p.m. (ET)** (the "Bid Deadline"). The Debtors shall promptly provide a copy of each bid to each of the Consultation Parties, but in no event later than the day after the date of the Bid Deadline.

11.      If the Debtors receive more than one Qualified Bid for the Assets, the Debtors shall conduct an Auction for the Assets.

12.      The Auction, if required, will be conducted either at the offices of Potter Anderson & Corroon LLP, 1313 N. Market Street, Wilmington, Delaware 19801 or virtually, on

**May 7, 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties.  If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail.  The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders and the Consultation Parties and will cause publication of such change to occur on the Case Website (as defined below).  If held, the Auction proceedings shall be transcribed or video recorded.

13.     If the Debtors determine not to hold an Auction, the Debtors shall file with the Court, and cause to be served and published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at https://www.omniagentsolutions.com/BrightmarkPlastics (the "Case Website"), a notice containing the following information (as applicable): (i) a statement that the Auction has been canceled; (ii) the identity of the Successful Bidder; (iii) either include a copy of the Successful Bid or a summary of the material terms of such bid, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (iv) the date, time, and location of the Sale Hearing.

14.     Only a Qualified Bidder that has submitted a Qualified Bid shall be eligible to participate in the Auction, subject to any other limitations as the Debtors may reasonably impose in accordance with the Bidding Procedures.  Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative.  The Debtors may establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction.

15.     Each Qualified Bidder participating in the Auction shall confirm in writing on the record that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets; and (ii) the Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction constitutes a binding, good-faith, and *bona fide* offer to purchase the Assets identified in such bids.

16.     Within one day after the conclusion of the Auction, the Debtors shall file with the Court, and cause to be served and published on the Case Website, a notice setting forth the results of the Auction (the "Notice of Auction Results").  The Notice of Auction Results will (i) identify each Successful Bidder and each Backup Bidder; (ii) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bid, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Website; and (iii) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.  The Notice of Auction Results shall also include the deadline to file and serve Adequate Assurance Objections with respect to any Successful Bidder.

**E.     Sale Noticing and Objection Procedures**

17.     Except objections to the conduct of the Auction, all objections to the sale of the Assets (each, a "Sale Objection"), including any objection to the sale of any Assets free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) filed with the Court by **no later than April 28, 2025, at 4:00 p.m. (ET)** (the "Sale Objection Deadline"); and (iii) served on the following parties

(collectively, the "Objection Notice Parties"): (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)); (iii) counsel to the DIP Lender, (a) Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Paul M. Rosenblatt (prosenblatt@ktslaw.com)), and (b) Chipman Brown Cicero & Cole LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (iv) counsel to the Indenture Trustee, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019 (Attn: Mark A. Angelov (mark.angelov@afslaw.com)); (v) if any statutory committee has been appointed in these cases, counsel to such committee; (vi) if applicable, counsel for the Successful Bidder; and (vii) if applicable, counsel for the Backup Bidder.

18.     Following service of the Notice of Auction Results, parties in interest may file an objection solely with respect to the conduct of the Auction (each a "Supplemental Sale Objection"). Any Supplemental Sale Objection shall be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (ii) filed with the Court by **no later than May 9, 2025 at 4:00 p.m. (ET)** (the "Supplemental Sale Objection Deadline"); and (iii) served on the Objection Notice Parties.

19.     Any party who fails to file and serve a timely Sale Objection or Supplemental Sale Objection in accordance with the terms of this Order shall be forever barred from asserting, at the

Sale Hearing or thereafter, any Sale Objection or Supplemental Sale Objection to the relief requested in the Motion, or to the consummation or performance of the sale of the Assets, including the transfer of Assets to the Successful Bidder free and clear of liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code, and shall be deemed to "consent" to such sale for purposes of section 363(f) of the Bankruptcy Code.

20.     The Debtors shall file any reply to any Sale Objection or Supplemental Sale Objection, if any, **by no later than 12:00 p.m. one (1) business days before the Sale Hearing (ET).**

21.     Consummation of the sale of the Assets pursuant to a Successful Bid shall be subject to Court approval.  The Sale Hearing to (a) approve a sale of all, substantially all, or a portion of the Assets to the Successful Bidder(s) and (b) authorize the assumption and assignment of certain Contracts shall be held before the Court on **[May 13], 2025 at [●:●●] [a/p.m.] (ET)**. The Sale Hearing may be adjourned without further notice other than announcing such adjournment at the Sale Hearing or filing a notice on the Court's docket indicating such adjournment.

22.     The Sale Notice, substantially in the form attached hereto as **<u>Exhibit 2</u>**, is approved, and no other or further notice of the proposed Sale of the Assets, the Auction, the Sale Hearing, the Sale Objection Deadline, or the Supplemental Sale Objection Deadline shall be required if the Debtors serve and publish the Sale Notice in the manner provided in the Bidding Procedures and this Order.  **By no later than three (3) business days after entry of this Order**, the Debtors shall file with the Court, serve on the Sale Notice Parties, and cause to be published on the Case Website, the Sale Notice.

23.     **As soon as practicable but no later than five (5) business days after the entry of this Order**, the Debtors shall cause the information substantially in the form contained in the Sale Notice, with such modifications as may be appropriate for purposes of publication, to be published once in the national edition of *USA Today* or *The New York Times* (the "Publication Notice").

**F.      Assumption and Assignment Procedures**

24.     The Assumption and Assignment Notice, substantially in the form attached hereto as **Exhibit 3**, is approved, and no other or further notice of the assumption or the assumption and assignment of the Contracts or of the proposed Cure Costs is necessary or required.

25.     **By no later than three (3) business days after entry of this Order**, the Debtors shall file with the Court, serve on the applicable Counterparties (and counsel, if known), and cause to be published on the Case Website, the Assumption and Assignment Notice.

26.     Any objection to the proposed Cure Costs (each a "Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than April 21, 2025, at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

27.     The Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, and the objecting Counterparty shall first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the sale of the Assets, the Debtors or the Successful Bidder may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned in connection with the sale of the Assets (subject to the terms of the applicable purchase agreement).

If a timely Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing or, with the agreement of the Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, be adjourned to a subsequent hearing, with notice to the party having filed the Cure Objection (each an "Adjourned Cure Objection").  An Adjourned Cure Objection may be resolved after the closing of the Sale of the Assets.  Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the Contract that was the subject of such Adjourned Cure Objection shall be deemed assumed and assigned to the Successful Bidder as of the closing date of the Sale of the Assets.

28.    If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Cure Objection, the Counterparty forever shall be barred from asserting any objection with regard to the cost to cure any defaults under the applicable Contract.  The Cure Costs set forth in the applicable Assumption and Assignment Notice shall be controlling and will be the only amount necessary to cure outstanding defaults under the Contract and satisfy the requirements of section 365(b) of the Bankruptcy Code, and the Counterparty to the Contract shall be bound by and deemed to have consented to the Cure Costs.

29.    In accordance with the Bidding Procedures, Qualified Bids shall be accompanied by Adequate Assurance Information (as defined in the Bidding Procedures).  The Debtors shall promptly provide, upon a Counterparty's request to the Debtors' counsel, the Adequate Assurance Information to any Counterparty (and counsel, if known) to any Contract that may be assumed by the applicable Qualified Bidder.

30.    Any objection to the proposed assumption and assignment of a Contract, the subject of which objection is the provision of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), shall be (a) in writing and

state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than May 9, 2025 at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

31.    The Debtors, any Stalking Horse Bidder, or the Successful Bidder, as applicable, and a Counterparty that has filed an Adequate Assurance Objection shall first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention.  If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtors, the Stalking Horse Bidder, or the Successful Bidder, as applicable, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

32.    If a Counterparty fails to file with the Court and serve on the Objection Notice Parties a timely Adequate Assurance Objection, the Counterparty shall be forever barred from asserting any objection to the assumption and/or assignment of a Contract with regard to adequate assurance of future performance.  The Successful Bidder shall be deemed to have provided adequate assurance of future performance with respect to a Contract in accordance with Bankruptcy Code sections 365(b)(1)(C), 365(f)(2)(B), and, if applicable, Bankruptcy Code section 365(b)(3), notwithstanding anything to the contrary in the Contract or any other document.

33.    If (i) the Debtors identify (a) additional Contracts to be assumed and assigned to a Successful Bidder (any "Additional Contracts"), or (b) modifications that need to be made to a proposed Cure Cost previously stated in the Assumption and Assignment Notice, or (ii) a Stalking Horse Bidder or Successful Bidder designates any Additional Contracts not previously included

14

on the Assumption and Assignment Notice for assumption in accordance with the time period set forth in the applicable purchase agreement between the Debtors and such Successful Bidder, the Debtors shall promptly file with the Court and serve by first class mail a supplemental Assumption and Assignment Notice, the form of which shall be substantially similar to the form of Assumption and Assignment Notice (each, a "Supplemental Assumption and Assignment Notice"), only on the Counterparties to each added, removed, or otherwise affected Contract. As soon as reasonably practicable after filing a Supplemental Assumption and Assignment Notice, the Debtors shall post a copy of the Supplemental Assumption and Assignment Notice on the Case Website. Any Cure Objection with respect to Cure Costs set forth in a Supplemental Assumption and Assignment Notice or any Adequate Assurance Objection with respect to the provision of adequate assurance of future performance must be filed no less than fourteen (14) calendar days after service of a Supplemental Assumption and Assignment Notice and must otherwise comply with the requirements herein for Cure Objections.

34.     As soon as reasonably practicable after the closing of the Sale of the Assets, the Debtors shall file with the Court, serve on the applicable Counterparties, and cause to be published on the Case Website, a notice containing the list of Contracts that the Debtors assumed and assigned pursuant to any asset purchase agreement with a Successful Bidder.

35.     The inclusion of a Contract or Cure Costs with respect to any Contract on any Assumption and Assignment Notice, shall not constitute or be deemed a determination or admission by the Debtors, a Stalking Horse Bidder, any Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code, and shall not be a guarantee that such Contract ultimately will be assumed or assigned. The

Debtors reserve all rights, claims, and causes of action with respect to each Contract listed on any Assumption and Assignment Notice.

**G.      Other Related Relief**

36.      All persons and entities that participate in the Auction or bid for the Assets during the sale process shall be deemed to have knowingly and voluntarily (i) consented to the core jurisdiction of the Court to enter any order related to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; (ii) waived any right to a jury trial in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order; and (iii) consented to the entry of a final order or judgment in connection with any disputes relating to the Bidding Procedures, the Auction, or any other relief requested in the Motion or granted in this Order, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

37.      Nothing in this Order, or any of the Exhibits hereto, shall (i) prevent the Debtors from, in the exercise of their fiduciary duties, pursuing or otherwise consummating an alternative transaction or (ii) obligate the Debtors to pursue or consummate any transaction with any Qualified Bidder.

38.      Notwithstanding the applicability of any of Bankruptcy Rules 6004(h), 6006(d), 7062, 9014, or any other provisions of the Bankruptcy Rules or the Local Rules stating to the contrary, the terms and provisions of this Order shall be immediately effective and enforceable upon its entry, and any applicable stay of the effectiveness and enforceability of this Order is hereby waived.

39.    The Debtors are authorized to take all steps necessary or appropriate to implement the relief granted in this Order.

40.    This Order shall be binding on and inure to the benefit of the Debtors, including any Chapter 7 or Chapter 11 trustee or other fiduciary appointed for the estates of the Debtors.

41.    This Court shall retain jurisdiction over any and all matters arising from or related to the implementation or interpretation of this Order.

## Exhibit 1

**Bidding Procedures**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |

## BIDDING PROCEDURES

      The above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases will use the procedures set forth herein (the "Bidding Procedures") in connection with a sale or disposition of all, substantially all, or a portion of the Debtors' assets (the "Assets").

      On March [●], 2025, the Debtors filed with the United States Bankruptcy Court for the District of Delaware (the "Court") the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. ●] (the "Motion").  By the Motion, the Debtors sought, among other things, entry of an order approving Bidding Procedures for soliciting bids for an auction (the "Auction") of, and consummating a sale of, the Assets, as further described herein.

      On [●], 2025, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protection, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. ●] (the "Bidding Procedures Order").[2]

---

[1]    The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789).  The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2]    Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in these Bidding Procedures or in the Bidding Procedures Order, as applicable.

## I.      ASSETS FOR SALE

The Debtors intend to sell all, substantially all, or a portion of their Assets, including their owned real property, intellectual property, and all claims, causes of action, lawsuits, judgments, and demands of any nature, in each case, available to or being pursued by the Debtors.

A Prospective Bidder may bid on the Assets, subject to the conditions set forth herein.

The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court.  In addition to any Stalking Horse Bid, and as set forth herein, the Debtors will consider bids for the Assets from other parties.

Parties may submit bids for all or some of the Debtors' business and assets, including for parts of the Debtors' business or assets (each, a "Partial Bid"), which bids may be combined with other Partial Bids or be considered independently and/or together with the liquidation value (as reasonably determined by the Debtors in good faith) of the Debtors' business or assets that are not the subject of other Partial Bids to be deemed a Qualified Bid.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker:

**SSG Advisors, LLC**
Attn: Mark Chesen and Neil Gupta
mchesen@ssgca.com | (610) 940-5801
ngupta@ssgca.com | (610) 940-2663

## II.      KEY DATES AND DEADLINES

| Deadline | Event |
|---|---|
| **Three business days after the entry of the Bidding Procedures Order** | Deadline for Debtors to file and serve Sale Notice and Assumption and Assignment Notice |
| **Five business days after entry of the Bidding Procedures Order** | Deadline for Debtors to publish Publication Notice |
| **Wednesday, April 16, 2025** | Deadline for Debtors to designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement |
| **Monday, April 21, 2025 at 4:00 p.m. (ET)** | Deadline to object to Cure Costs |
| **Monday, April 28, 2025 at 4:00 p.m. (ET)** | Sale Objection Deadline |
| **Monday, May 5, 2025 at 5:00 p.m. (ET)** | Bid Deadline |
| **Tuesday, May 6, 2025** | Deadline to designate Qualified Bids or to cancel the Auction, as applicable |

| Wednesday, May 7, 2025 at 10:00 a.m. (ET) | Auction (if needed) |
|---|---|
| One day after the conclusion of the Auction | Deadline for Debtors to file and serve Notice of Auction Results |
| Friday, May 9, 2025 at 4:00 p.m. (ET) | Supplemental Sale Objection Deadline and Adequate Assurance Objection Deadline |
| 12:00 p.m. (ET) one business day before Sale Hearing | Debtors' Deadline to Reply to any Sale Objections or Supplemental Sale Objections |
| [Tuesday, May 13], 2025 at [●] (ET) | [Proposed] Sale Hearing |
| Friday, May 16, 2025 | Deadline to Consummate Sale |

## III.   DUE DILIGENCE

Each person or entity that desires to participate as a bidder in the Auction process (each, a "Prospective Bidder") must first deliver to SSG Advisors, LLC ("SSG") the following:

- documentation identifying the Prospective Bidder, its principals, and the representatives thereof who are authorized to appear and act on its behalf for all purposes regarding the contemplated Sale;

- an executed confidentiality agreement, in form and substance satisfactory to the Debtors;

- a statement and other factual support demonstrating to the Debtors and their advisors, in their sole judgment, that the Prospective Bidder has a *bona fide* interest in purchasing some or all of the Assets; and

- preliminary proof by the Prospective Bidder of its financial capacity to close a proposed sale transaction, which may include current unaudited or verified financial statements of, or verified financial commitments obtained by, the Prospective Bidder (or, if the Prospective Bidder is an entity formed for the purpose of acquiring the Assets to be sold, the party that will bear liability for a breach by the Prospective Bidder of an asset purchase agreement or other agreement entered into in respect of the sale transaction), the adequacy of which the Debtors will determine in their sole judgment.

Without the need for any further action, any Stalking Horse Bidder is a Qualified Bidder.

Upon execution of a valid confidentiality agreement and subject to the other limitations and guidelines set forth herein, the Debtors may grant a Prospective Bidder that the Debtors identify as reasonably likely to become a Qualified Bidder with access to information allowing such Prospective Bidder to conduct due diligence with respect to the potential acquisition of some or all of the Assets. If any Prospective Bidder is (or is affiliated with) a competitor of the Debtors, the Debtors will not be required to disclose to such Prospective Bidder any trade secrets or

proprietary information (as determined by the Debtors in their sole discretion), unless the confidentiality agreement executed by such Prospective Bidder is satisfactory to the Debtors and contains provisions sufficient to ensure that such Prospective Bidder will not use such trade secrets or proprietary information for an improper purpose or to gain an unfair competitive advantage.

If the Debtors determine, after consulting with the Consultation Parties, that a Prospective Bidder is unlikely to qualify as a Qualified Bidder or fails to become a Qualified Bidder, then such Prospective Bidder shall have no further right to access due diligence or any other non-public information. The Prospective Bidder shall return or destroy any non-public information the Debtors or their advisors provided to the Prospective Bidder in accordance with the terms of the confidentiality agreement executed by the Debtors and the Prospective Bidder. For purposes hereof, the term "Consultation Parties" shall include the Committee and, solely to the extent it is not participating in the Auction as a bidder and is not otherwise a participant in any active or prospective Bid with respect to any Assets, the DIP Lender.

The Debtors will try to accommodate all reasonable requests from Prospective Bidders for additional information and due diligence access. All due diligence requests shall be directed to the Debtors' investment banker:

**SSG Advisors, LLC**
Attn: Mark Chesen and Neil Gupta
mchesen@ssgca.com | (610) 940-5801
ngupta@ssgca.com | (610) 940-2663

## IV.    STALKING HORSE AGREEMENT AND BID PROTECTIONS

The procedures set forth in this section (the "Stalking Horse Designation Procedures") shall apply to the designation of any Stalking Horse Bidder, Stalking Horse Agreement and Bid Protections.

Subject to the provisions set forth herein, the Bidding Procedures Order, and in consultation with the Consultation Parties, the Debtors may designate a Stalking Horse Bidder that submits a Qualified Bid acceptable to the Debtors and enter into a Stalking Horse Agreement, subject to higher or otherwise better offers at the Auction, **no later than April 16, 2025**, which deadline may be extended by the Debtors (after consultation with the Consultation Parties).

The Debtors, in consultation with the Consultation Parties, may seek approval of one or more bid protections, including, break-up fees and/or reimbursement of expenses, if any, for documented, actual, and necessary expenses incurred by any Stalking Horse Bidder (collectively, the "Bid Protections").

The Debtors shall file a motion (a "Stalking Horse Motion") seeking authority to allow Bid Protections. If the Debtors filed the Stalking Horse Motion on or before April 16, 2025, the Debtors shall request a hearing, which may be on shortened notice, to consider the Stalking Horse Motion (a "Stalking Horse Hearing"), subject to the Court's availability. All parties in interest shall have the right at the Stalking Horse Hearing to object to the Debtors' entry into a Stalking Horse Agreement and to object to the Bid Protections and the form of proposed order (a "Stalking Horse Order").

4

Upon entry of a Stalking Horse Order, any Stalking Horse Agreement executed by the Debtors and the transactions contemplated thereby will be deemed a Qualified Bid for all purposes, and any Stalking Horse Bidder party to a Stalking Horse Agreement executed by the Debtors will be deemed to be a Qualified Bidder.

Other than as provided by order of the Court, no party submitting a Bid shall be entitled to a break-up fee or expense reimbursement except for the Bid Protections for any Stalking Horse Bidder.  Any substantial contribution claims by any bidder are deemed waived.

## V.    BID DEADLINE

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a Qualified Bid on or before **May 5, 2025 at 5:00 p.m. (ET)** (the "Bid Deadline").  The Debtors shall promptly provide a copy of each bid to each of the Consultation Parties, but in no event later than the day after the date of the Bid Deadline.

## VI.    BID REQUIREMENTS

### A.    Qualified Bid Requirements

To qualify as a "Qualified Bid," a bid must be in writing and satisfy the following requirements:

1.    Identification of Bidder.  A Qualified Bid must fully disclose the following: (a) the legal identity of each person or entity bidding for the Assets and/or otherwise sponsoring, financing (including through the issuance of debt in connection with such bid), or participating in (including through license or similar arrangement with respect to the Assets to be acquired in connection with such bid) the Auction in connection with such bid and the complete terms of any such participation; and (b) any past or present connections or agreements with the Debtors, any other known Prospective Bidder, any Stalking Horse Bidder, or Qualified Bidder, or any officer or director of any of the foregoing (including any current or former officer or director of the Debtors).

2.    Purchased Assets.  A Qualified Bid must identify the following:

a.    the Assets to be purchased, including any executory contracts and unexpired leases (collectively, the "Contracts") that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtors in connection with the proposed sale; and

b.    the liabilities, if any, to be assumed, including any debt to be assumed.

3.     <u>Form of Consideration</u>.

    a.     <u>Credit Bidding</u>. In connection with the Sale of all or any portion of the Assets, a person or entity holding a perfected security interest in such Assets may seek to credit bid some or all of their claims for their respective collateral (each such bid, a "<u>Credit Bid</u>") pursuant to section 363(k) of the Bankruptcy Code; *provided* that the Credit Bid complies with the orders of the Bankruptcy Court.

    b.     <u>Consideration</u>. Each other bid must include a statement confirming that the bid is based on an all-cash offer, or if a bid includes forms of consideration other than cash, the bidder shall include an analysis or description of the value of such non-cash components, including any supporting documentation, to assist the Debtors and the Consultation Parties in evaluating the bid.

4.     <u>Minimum Bid for Assets</u>. If a Stalking Horse Bidder has been designated, each bid that is not a Stalking Horse Bid must have a value to the Debtors, as determined by the Debtors, in consultation with the Consultation Parties, that is greater than or equal to the sum of (a) the value offered under the Stalking Horse Agreement, <u>plus</u> (b) the amount of the Bid Protections, if any, <u>plus</u> (c) $100,000 (collectively, the "<u>Minimum Bid Amount</u>"). Any subsequent bid made by the Stalking Horse Bidder shall be deemed to have been made in an amount equal to such subsequent bid plus the Bid Protections, if any, to the extent provided for in the Stalking Horse Agreement.

If the value of a bid relative to the Stalking Horse Bid includes non-cash components (such as fewer contingencies than are in such Stalking Horse Agreement), the bidder should include an analysis or description of the value of any such additional non-cash components, including any supporting documentation, to assist the Debtors and the Consultation Parties in better evaluating the competing bid. The Debtors, in consultation with their advisors and the Consultation Parties, reserve the right in their sole discretion to ascribe a value to any non-cash components of competing bids and the Stalking Horse Bid.

If a Stalking Horse Bidder is not designated pursuant to the Stalking Horse Designation Procedures, the Debtors may set a minimum bid requirement, which shall be considered the Minimum Bid Amount for all purposes hereunder. In such case, the Debtors shall inform (email being sufficient) any known potential bidder of such Minimum Bid Amount.

5.     <u>Proposed Asset Purchase Agreement</u>. A Qualified Bid must constitute an irrevocable offer and be in the form of an asset purchase agreement reflecting the terms and conditions of the bid (each, a "<u>Proposed Asset Purchase Agreement</u>"). A Proposed Asset Purchase Agreement shall be (a)

duly authorized and executed; (b) based on, and marked against the form asset purchase agreement (the "Form APA") or, if a Stalking Horse Bidder has been designated, the Stalking Horse Agreement, to reflect the proposed sale transaction and to show any other proposed modifications to the Form APA or Stalking Horse Agreement, as applicable; (c) specify the proposed purchase price for the Assets in U.S. dollars; (d) include all exhibits and schedules contemplated thereby (other than exhibits and schedules that, by their nature, must be prepared by the Debtors); and (e) identify any Contracts that, as of the submission of such bid, the Prospective Bidder proposes to be assumed and assigned by the Debtors in connection with the proposed sale transaction.

6.  <u>Financial Information</u>.  A Qualified Bid must include the following:

   a.  a statement that the Prospective Bidder is financially capable of consummating the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement;

   b.  sufficient evidence, as determined by the Debtors in their sole discretion, to determine that the Prospective Bidder has, or will obtain, the financial wherewithal to consummate the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; and

   c.  Adequate Assurance Information with respect to any Contracts included or that may be included in the Prospective Bidder's bid, including the identity of any known proposed assignee of the applicable Contracts (if different from the Prospective Bidder), including contact information for such proposed assignee.

7.  <u>Good Faith Deposit</u>.  Each Qualified Bid must be accompanied by a good faith deposit (each, a "<u>Good Faith Deposit</u>") in the form of cash in an amount equal to ten percent (10%) of the proposed purchase price for the Assets.  The Good Faith Deposit shall be deposited **no later than the Bid Deadline** with an escrow agent selected by the Debtors (the "<u>Escrow Agent</u>") and held in escrow until ten (10) business days after the conclusion of the Auction, except for the Good Faith Deposit of any bidder who is selected at the Auction as a Successful Bidder or as a Backup Bidder, and thereafter returned to the respective Qualified Bidders in accordance with these Bidding Procedures.

8.  <u>Adequate Assurance</u>.  A Qualified Bid must include evidence of the Prospective Bidder's (or any other relevant assignee's) ability to comply with section 365 of the Bankruptcy Code (to the extent applicable), including providing adequate assurance of such Prospective Bidder's (or any other relevant assignee's) ability to perform future obligations arising under any Contracts included in its bid.  The Debtors may require the

following information in connection with demonstrating adequate assurance of future performance: (a) information evidencing the Prospective Bidder's (or any other relevant assignee's) financial wherewithal and willingness to perform under any Contracts included in the bid, which information may include (i) a corporate organizational chart or similar disclosure identifying corporate ownership and control, (ii) financial statements, (iii) tax returns, and (iv) annual reports; and (b) the Prospective Bidder's (or any other relevant assignee's) proposed use of any leased premises or other property included in the bid (the information described in clauses (a) and (b), the "<u>Adequate Assurance Information</u>").

All Adequate Assurance Information must be in a form that will permit its immediate dissemination to Contract counterparties ("<u>Counterparties</u>").

9. <u>Representations and Warranties (As-Is, Where-Is)</u>.  Each Qualified Bid must include a written acknowledgement and representation that (a) the Prospective Bidder has had an opportunity to conduct any and all due diligence regarding the Assets prior to making its Qualified Bid, (b) the Prospective Bidder has relied solely upon its own or its advisors' independent review, investigation, and/or inspection of any documents and/or the Assets in making its Qualified Bid, (c) the Prospective Bidder did not rely upon any written or oral statements, representations, promises, warranties, or guaranties whatsoever, whether express, implied, by operation of law, or otherwise, regarding the Assets, or the completeness of any information provided in connection therewith or the Auction, except as expressly stated in the Prospective Bidder's Proposed Asset Purchase Agreement; and (d) the Assets will be conveyed "as is, where is, with all faults," with limited representations and warranties, and no indemnification or guarantees by the Debtor.

10. <u>Authorization</u>.  A Qualified Bid must (a) include evidence of authorization and approval from the Prospective Bidder's board of directors (or comparable governing body) with respect to the submission, execution, and delivery of any bid for the Assets, participation in the Auction, and closing of the sale transaction contemplated by the Prospective Bidder's Proposed Asset Purchase Agreement; or, (b) if the Prospective Bidder is an entity formed for the purpose of effecting the proposed sale transaction, a Qualified Bid must provide written evidence acceptable to the Debtors of authorization and the approval by the equity holder(s) of such Prospective Bidder.

11. <u>Other Requirements</u>.  A Qualified Bid must:

a.    state that the Prospective Bidder agrees to serve as a backup bidder (a "<u>Backup Bidder</u>") if such bidder's Qualified Bid is selected at the Auction as the next highest or next best bid after the Successful Bid for the Assets (each such bid, a "<u>Backup Bid</u>");

b.      state that the bid represents a binding, good-faith, and *bona fide* offer to purchase the Assets and is not subject to or conditioned on any further due diligence, and is irrevocable (i) until the selection of the Successful Bid in accordance with these Bidding Procedures; or (ii) if the bid is selected as a Successful Bid or as a Backup Bid, until the Backup Bid Expiration Date;

c.      state and acknowledge that the Prospective Bidder shall not be entitled to any bidding protection or payment in connection with the submission of a bid for the Assets or otherwise participating in the Sale Process;

d.      for any bidder other than a Stalking Horse Bidder, state that the Prospective Bidder is committed to closing the sale transaction contemplated in its bid as soon as practicable (and in no event later than May 16, 2025);

e.      expressly waive any claim or right to assert any substantial contribution administrative expense claim under section 503(b) of the Bankruptcy Code in connection with bidding for any of the Assets and/or otherwise participating in the Auction or the Sale Process;

f.      not contain any financing contingencies of any kind;

g.      state whether the Prospective Bidder intends to offer future employment to any of the Debtors' employees and, if so, to whom;

h.      certify that the Prospective Bidder did not collude with any other bidders and is not otherwise a partnership, joint venture, or other entity in which more than one bidder (or any affiliates of a bidder) has a direct or indirect interest, unless consented to in writing by the Debtors;

i.      include a covenant to comply with the terms of these Bidding Procedures and the Bidding Procedures Order; and

j.      contain such other information as may be reasonably requested by the Debtors.

By submission of its bid, each Qualified Bidder shall be deemed to acknowledge and represent that it (a) has reviewed, understands, and accepts these Bidding Procedures, (b) has consented to the jurisdiction of the Court, (c) intends to consummate its Qualified Bid if it is selected as the Successful Bidder, and (d) waives any and all rights (whether actual or potential) to contest any of the Debtors' determinations made during, or in connection with, any aspect of the Bidding Process.

### B.    Bid Review Process

The Debtors will evaluate bids and, based upon their evaluation of the content of each bid, the Debtors may, as they deem appropriate in their reasonable business judgment and in a manner consistent with their fiduciary duties and applicable law, engage in negotiations with any Prospective Bidder for the purposes of (i) curing any deficiencies in a bid that prevents it from constituting a Qualified Bid, (ii) improving the terms of the Prospective Bidder's bid, or (iii) otherwise promoting a more competitive bidding and Auction process with the ultimate goal of maximizing the value of the Assets.

In evaluating a bid, the Debtors may take into consideration any and all factors that the Debtors deem reasonably pertinent, including (i) the amount of the proposed purchase price and proposed form of consideration; (ii) any Assets included in, or excluded from, the bid, including any Contracts to be assumed and assigned; (iii) the value to be provided to the Debtors under the bid, including the net economic effect on the Debtors' estates; (iv) any benefits to the Debtors' estates from any assumption or waiver of liabilities contemplated by the bid; (v) the structure of the proposed sale transaction and any attendant execution risk, including conditions to, timing of, and certainty of closing, termination provisions, availability of financing and general financial wherewithal to meet all commitments, and any required governmental approvals; and (vi) the impact of the proposed sale transaction on the Debtors' employees, trade creditors, landlords, and any other parties in interest.

The Debtors will evaluate timely bids and will (i) after consultation with the Consultation Parties, determine which bids qualify as Qualified Bids and which Qualified Bid has been selected as the Baseline Bid and (ii) notify bidders whether they are Qualified Bidders as soon as commercially reasonable following the Bid Deadline. A Qualified Bidder shall not (without the consent of the Debtors), modify, amend, or withdraw its Qualified Bid, unless for the purposes of increasing the purchase price or otherwise improving the terms of the Qualified Bid, as determined by the Debtors in their reasonable business judgment.

### C.    Qualified Bidders

A bid received for the Assets that the Debtors determine satisfies the requirements set forth herein will qualify as a "Qualified Bid," and any bidder that submits a Qualified Bid will qualify as a "Qualified Bidder."

The Debtors may, after consultation with the Consultation Parties, in their reasonable business judgment, in a manner consistent with their fiduciary duties and applicable law, amend or waive the conditions precedent to qualifying as a Qualified Bidder.

### D.    Bidding Protections

Other than any Bid Protections approved by the Court in connection with a Stalking Horse Bid, if any, no bidder or any other party shall be entitled to any termination or "break-up" fee,

expense reimbursement, or any other bidding protection in connection with the submission of a bid for the Assets or otherwise participating in the Auction or the Sale Process.

## VII.    THE AUCTION

If the Debtors receive more than one Qualified Bid (including a combination of bids that, when considered together, constitute a Qualified Bid) for the Assets, the Debtors will conduct an Auction for the Assets.  If the Stalking Horse Bid is the only Qualified Bid received in respect of the Assets, the Debtors will not conduct an Auction for the Assets and will seek approval of such Stalking Horse Bid at the Sale Hearing.  If the Debtors determine not to hold an Auction, the Debtors will file with the Court, and cause to be served and published on the Case Website, a notice containing the following information, as applicable: (i) a statement that the Auction for the Assets has been canceled; (ii) the identity of the Successful Bidder; (iii) a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (iv) the date, time, and location of the Sale Hearing.

The Auction, if required, will be conducted either at the offices of Potter Anderson & Corroon LLP, 1313 N. Market Street, Wilmington, Delaware 19801 or virtually, on **May 7, 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties.  If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail.  The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders and the Consultation Parties, and will cause publication of such change to occur on the Case Website.

If held, the Auction proceedings will be transcribed and/or video recorded.

### A.    Participants and Attendees

Only Qualified Bidders are eligible to participate in the Auction, subject to other limitations as may be reasonably imposed by the Debtors in accordance with these Bidding Procedures. Qualified Bidders participating in the Auction must attend the Auction personally or through a duly authorized representative.  Subject to the Auction procedures set forth herein, all Qualified Bidders and the Consultation Parties are permitted to attend the Auction; *provided* that the Debtors may, in their sole discretion, establish a reasonable limit on the number of representatives and/or professional advisors that may appear on behalf of a Qualified Bidder or otherwise attend the Auction.

Each Qualified Bidder participating in the Auction will be required to confirm in writing and on the record at the Auction that (i) it has not engaged in any collusion with respect to the Auction or the submission of any bid for any of the Assets and (ii) its Qualified Bid that gained the Qualified Bidder admission to participate in the Auction and each Qualified Bid submitted by the Qualified Bidder at the Auction is a binding, good-faith, and *bona fide* offer to purchase the Assets identified in such bids.

11

All Prospective Bidders and Qualified Bidders (including any Stalking Horse Bidder, Successful bidder, and Backup Bidder) shall be deemed to have (i) agreed that all proceedings in the Court related to these Bidding Procedures, the Auction, any other relief requested in the Motion or granted pursuant to the Bidding Procedures Order, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction are core proceedings as described in 28 U.S.C. § 157; (ii) waived any right to a jury trial in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document directly relating to the sale transaction; and (iii) consented to the entry of a final order or judgment by the Court in connection with any disputes relating to these Bidding Procedures, the Auction, or the construction or enforcement of any agreement or any other document relating directly to the sale transaction, if it is determined that the Court would lack Article III jurisdiction to enter such a final order or judgment absent the consent of the relevant parties.

Any party in interest may attend the Auction; *provided* that any such party request attendance at least two (2) days prior to the start of the Auction by emailing counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)).

### B.    Auction Procedures

The Auction shall be governed by the following procedures, subject to the Debtors' right to modify such procedures in their reasonable business judgment (in a manner consistent with their fiduciary duties and in consultation with the Consultation Parties):

1.    <u>Baseline Bids</u>.  Prior to the commencement of the Auction, the Debtors will determine, in their reasonable business judgment (and in consultation with the Consultation Parties) the highest or otherwise best Qualified Bid submitted for the Assets (such Qualified Bid, a "<u>Baseline Bid</u>").  Bidding at the Auction shall commence at the amount of the Baseline Bid.  **No later than May 6, 2025**, the Debtors will provide all Qualified Bidders with (a) a notice identifying all the Qualified Bidders and which Qualified Bid is the Baseline Bid; and (b) a copy of the Baseline Bid.

2.    <u>Minimum Overbid</u>.  Bidding shall commence at the Baseline Bid.  The first overbid at the Auction shall be in an amount not less than the amount of the Baseline Bid (<u>plus</u> the Bid Protections, if any, if a Stalking Horse Bid is the Baseline Bid) <u>plus</u> $100,000 (the "<u>Minimum Overbid</u>").  At each round of bidding, Qualified Bidders may submit successive bids higher than the Leading Bid (as defined below) from the prior round.  During the Auction, the Debtors may, in their reasonable discretion, announce increases or reductions to Minimum Overbids at any time.

Except as specifically set forth herein, for the purpose of evaluating the value of the consideration provided by any bid subsequent to the Baseline Bid, the Debtors will, at each round of bidding, consider and/or give effect

to (a) any additional liabilities to be assumed by a Qualified Bidder under the bid, including whether such liabilities are secured or unsecured; and (b) any additional costs that may be imposed on the Debtors. Any subsequent bid made by any Stalking Horse Bidder shall be deemed to have been made in an amount equal to such subsequent bid plus the Bid Protections, if any, to the extent provided for in the Stalking Horse Agreement.

3.      <u>Leading Bid</u>.  After the first round of bidding and between each subsequent round of bidding, the Debtors will announce, after consultation with the Consultation Parties, the bid that they believe to be the highest or otherwise best offer for the Assets (such bid, a "<u>Leading Bid</u>") and describe the material terms thereof.  Each round of bidding will conclude after each participating Qualified Bidder has had the opportunity to submit a subsequent bid with full knowledge of the material terms of the Leading Bid.

The Auction will include open bidding in the presence of all other Qualified Bidders.  Each Qualified Bidder shall have the right to be present for all rounds of bidding and to submit additional bids and make modifications to its Proposed Asset Purchase Agreement at the Auction to improve its bid.  The Debtors may, in their reasonable business judgment, negotiate with any and all Qualified Bidders participating in the Auction.

The Debtors shall have the right to determine, in their reasonable business judgment after consultation with the Consultation Parties, which bid is the highest or otherwise best bid with respect to the Assets and, after consultation with the Consultation Parties, reject, at any time, without liability (but only in the absence of gross negligence or willful misconduct), any bid that the Debtors deem to be inadequate or insufficient, not in conformity with the requirements of the Bankruptcy Code, the Bankruptcy Rules, the Local Rules, these Bidding Procedures, any order of the Court, or the best interests of the Debtors and their estates.

## C.      **Auction Results**

1.      <u>Successful Bids</u>.  Immediately prior to the conclusion of the Auction, the Debtors will (a) determine, consistent with these Bidding Procedures and in consultation with the Consultation Parties, which Qualified Bid constitutes the highest or otherwise best bid (such bid, including a Stalking Horse Bid if no additional Qualified Bids are received and no Auction conducted, a "<u>Successful Bid</u>") and (b) notify all Qualified Bidders at the Auction of the identity of the bidder that submitted the Successful Bid (such bidder, a "<u>Successful Bidder</u>") and the amount of the purchase price and other material terms of the Successful Bid.

2.      Backup Bids.  Immediately prior to the conclusion of the Auction, the Debtors will (a) determine, in a manner consistent with these Bidding Procedures and in consultation with the Consultation Parties, which Qualified Bid, other than any Credit Bid, is the Backup Bid; and (b) notify all Qualified Bidders at the Auction of the identity of the Backup Bidder and the amount of the purchase price and other material terms of the Backup Bid.

Except as may otherwise be provided in any Stalking Horse Agreement, a Backup Bid will remain binding on the applicable Backup Bidder until the earlier of (a) the first business day after the closing of the sale transaction with the Successful Bidder for the Assets and (b) thirty (30) days after the Sale Hearing (such date, the "Backup Bid Expiration Date").  If the sale transaction with the Successful Bidder is terminated prior to the Backup Bid Expiration Date, the Backup Bidder shall be deemed the new Successful Bidder for the Assets and shall be obligated to consummate the Backup Bid as if it were the Successful Bid at the Auction.

3.      Notice of Auction Results.  Within one day after the conclusion of the Auction, the Debtors will file with the Court and cause to be served and published on the Case Website, a notice setting forth the results of the Auction (the "Notice of Auction Results"), which will (a) identify each Successful Bidder and the Backup Bidder; (b) include a copy of each Successful Bid and the Backup Bid or a summary of the material terms of such bids, or provide instructions for accessing each Successful Bid and the Backup Bid free of charge from the Case Website; and (c) set forth the Supplemental Sale Objection Deadline, the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.  The Notice of Auction Results shall also include the deadline to file and serve Adequate Assurance Objections with respect to any Successful Bidder.

**D.      Disposition of Good Faith Deposit**

1.      Prospective Bidders.  Within five (5) business days after the Debtors make final determinations as to which Prospective Bidders qualify as Qualified Bidders, the Escrow Agent shall return to each Prospective Bidder that did not qualify as a Qualified Bidder, as confirmed by the Debtors, such Prospective Bidder's Good Faith Deposit.  Upon the authorized return of a Prospective Bidder's Good Faith Deposit, the bid of such Prospective Bidder shall be deemed terminated and no longer binding against the Prospective Bidder.

2.      Qualified Bidders.

a.      Forfeiture of Good Faith Deposit.  The Good Faith Deposit of a Qualified Bidder shall be forfeited if the Qualified Bidder attempts

14

to withdraw its Qualified Bid, except as may be permitted by these Bidding Procedures, during the time the Qualified Bid remains binding and irrevocable under these Bidding Procedures. The Debtors and their estates shall be entitled to retain the Qualified Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of the Qualified Bidder's failure to adhere to the terms of these Bidding Procedures and/or the relevant Qualified Bid.  If a Qualified Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after the Escrow Agent receives written notice by an authorized officer of the Debtors stating that the applicable Qualified Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Qualified Bid.

b.    <u>Return of Good Faith Deposit</u>.  With the exception of the Good Faith Deposits of the Successful Bidder and the Backup Bidder, the Escrow Agent shall return to any other Qualified Bidder the Qualified Bidder's Good Faith Deposit, within ten (10) business days after the conclusion of the Auction for the Assets.

c.    <u>Backup Bidder</u>.  Unless the Backup Bidder becomes the Successful Bidder, the Escrow Agent shall return the Backup Bidder's Good Faith deposit, within ten (10) business days after the occurrence of the applicable Backup Bid Expiration Date; *provided*, *however*, if the Backup Bidder becomes the Successful Bidder, its Good Faith Deposit shall be forfeited if it fails to consummate the sale transaction because of a breach that entitles the Debtors to terminate the applicable asset purchase agreement with such Backup Bidder, and the Debtors and their estates shall be entitled to retain the Backup Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach.  If a Backup Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after the Escrow Agent receives written notice by an authorized officer of the Debtors stating that the applicable Backup Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the applicable Backup Bidder.

d.    <u>Successful Bidder</u>.  At the closing of the sale transaction, the Successful Bidder shall be entitled to a credit against the purchase price in the amount of the Successful Bidder's Good Faith Deposit. The Good Faith Deposit of a Successful Bidder shall be forfeited if

the Successful Bidder fails to consummate the sale transaction because of a breach that entitles the Debtors to terminate the applicable asset purchase agreement with such Successful Bidder, and the Debtors and their estates shall be entitled to retain the Successful Bidder's Good Faith Deposit as partial compensation for the damages caused to the Debtors and their estates as a result of such breach.  If a Successful Bidder's Good Faith Deposit is deemed forfeited, the Escrow Agent shall release such Good Faith Deposit by wire transfer of immediately available funds to an account designated by the Debtors within two (2) business days after the Escrow Agent receives written notice by an authorized officer of the Debtors stating that the Successful Bidder has breached or otherwise failed to satisfy its obligations in accordance with these Bidding Procedures and the Successful Bid.

## VIII.   SALE HEARING

The Successful Bid (including any Backup Bid that is subsequently deemed a Successful Bid) will be subject to Court approval.  The hearing to approve the sale transaction consummated in accordance with these Bidding Procedures (except in the case of the sale transaction contemplated by a Backup Bid that subsequently is deemed a Successful Bid) shall take place on **[May 13], 2025 at [●:● a/p.m.] (ET)** (the "Sale Hearing") before the Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

At the Sale Hearing, the Debtors will seek entry of an order (a "Sale Order") approving, among other things, the sale of the Assets to the Successful Bidder or a Stalking Horse Bidder.

The Sale Hearing may be adjourned without further notice other than announcing such adjournment at the Sale Hearing or filing a notice on the Court's docket indicating such adjournment.

The Debtors' presentation to the Court for approval of a selected Qualified Bid as a Successful Bid does not constitute the Debtors' acceptance of such bid.  The Debtors will have accepted a Successful Bid only when such Successful Bid has been approved by the Court at the Sale Hearing.

## IX.    RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right to, in their reasonable business judgment, after consultation with the Consultation Parties and in a manner consistent with their fiduciary duties and applicable law, (i) modify these Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth herein, adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; or (ii) otherwise modify these Bidding Procedures to further promote competitive bidding for, and maximizing the of value of, the Assets,

in each case, to the extent not materially inconsistent with these Bidding Procedures or the Bidding Procedures Order.

## X.    NOTICING

### A.    Bid Notice Parties

Qualified Bids must be submitted in writing to the following parties (collectively, the "Bid Notice Parties"): (i) counsel for the Debtors:  Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)); (ii) the Debtors' investment banker: SSG Advisors, LLC (Attn: Mark Chesen (mchesen@ssgca.com) and Neil Gupta (ngupta@ssgca.com); and (iii) counsel for the Committee.

### B.    Sale Notice Parties

The "Sale Notice Parties" shall include the following persons and entities: (i) the Consultation Parties (as applicable); (ii) counsel to the DIP Lender and Bridge Lender; (iii) counsel to the Indenture Trustee ; (iv) all persons and entities known by the Debtors to have asserted any lien, claim, interest, or encumbrance in the Assets (for whom identifying information and addresses are available to the Debtors); (v) all relevant non-debtor parties (each, a "Counterparty") to any Contract that may be assumed or rejected in connection with the sale transaction; (vi) all of the Debtors' known creditors (for whom identifying information and addresses are available to the Debtor); (vii) any party that has filed a proof of claim in these chapter 11 cases; (viii) any governmental authority known to have a claim against the Debtors in these chapter 11 cases; (ix) the office of the U.S. Trustee; (x) all applicable federal, state, and local taxing authorities, including the Internal Revenue Service; (xi) the United States Securities and Exchange Commission; (xii) the United States Attorney's Office for the District of Delaware; (xiii) United States Attorney General's Office for the District of Delaware; (xiv) the Office of the Attorney General and the Secretary of State in each state in which the Debtors operate; (xv) the Antitrust Division of the United States Department of Justice; (xvi) the Federal Trade Commission; (vxii) all parties on the Debtors' creditor matrix; (xviii) all of the parties entitled to notice pursuant to Bankruptcy Rule 2002; (xix) counsel to any Stalking Horse Bidder; and (xx) all other parties as directed by the Court.

C.      **Sale Notice and Publication Notice**

**No later than three (3) business days after the entry of the Bidding Procedures Order**, the Debtors will file with the Court, serve on the Sale Notice Parties, and cause to be published on the Case Website a notice (the "Sale Notice") setting forth (A) a description of the Assets available for sale in accordance with these Bidding Procedures; (B) the date, time, and location of the Auction and Sale Hearing; (C) the Sale Objection Deadline and Supplemental Sale Objection Deadline and the procedures for filing such objections; and (D) if applicable, a summary of the material terms of any Stalking Horse Agreement, including the terms and conditions of any Bid Protections to be provided thereunder, as of the date of the Sale Notice.

As soon as practicable but no later than five (5) business days after the entry of the Bidding Procedures Order, the Debtors shall cause the information substantially in the form contained in the Sale Notice, with such modifications as may be appropriate for purposes of publication, to be published once in the national edition of *USA Today* or *The New York Times*.

D.      **Sale Objections and Supplemental Sale Objections**

Except objections to the conduct of the Auction, all objections to a sale of the Assets, including any objection to a sale of the Assets free and clear of all liens, claims, interests, and encumbrances pursuant to section 363(f) of the Bankruptcy Code (each such objection, a "Sale Objection"), shall, by no later than **April 28, 2025 at 4:00 p.m. (ET)** (the "Sale Objection Deadline"), be filed with Court and served on the following parties (collectively, the "Objection Notice Parties"): (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)); (iii) counsel to the DIP Lender, (a) Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Paul M. Rosenblatt (prosenblatt@ktslaw.com)), and (b) Chipman Brown Cicero & Cole LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (iv) counsel to the Indenture Trustee, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019 (Attn: Mark A. Angelov (mark.angelov@afslaw.com)); (v) if any statutory committee has been appointed in these cases, counsel to such committee; (vi) if applicable, counsel for the Successful Bidder; and (vii) if applicable, counsel for the Backup Bidder.

Following service of the Notice of Auction Results, parties in interest may object solely with respect to the conduct of the Auction (each a "Supplemental Sale Objection") by **May 9, 2025 at 4:00 p.m. (ET)** (the "Supplemental Sale Objection Deadline").

E.  **Notices Regarding Assumption and Assignment of Contracts**

The Debtors will provide all notices regarding the proposed assumption and assignment of Contracts in accordance with the Assumption and Assignment Procedures set forth in the Bidding Procedures Order.

## XI.  CONSULTATION BY THE DEBTOR

A.  Throughout the sale process, the Debtors and their advisors will consult with the Consultation Parties as provided in these Bidding Procedures, or as is otherwise necessary or appropriate, as determined in the Debtors' business judgment.

B.  The Debtors shall consult with the Consultation Parties in good faith regarding the sale process, any diligence and other information requested by the Consultation Parties, and the Debtors will provide to the Consultation Parties reports concerning the sale process, including parties contacted, buyer feedback, copies of all letters of intent, drafts of definitive agreements and updates on proposals. For the avoidance of doubt, and without limitation, the Debtors shall consult with the Consultation Parties on the selection of the Baseline Bid, how the Auction is conducted, any additional Auction procedures, adjourning the Auction, and selecting the Successful Bidder and the Backup Bidder.

C.  **Notwithstanding the foregoing, the Debtors will not consult with or provide copies of any bids or other confidential information to any Consultation Party or any insider or affiliate of the Debtors if such party is an active bidder for the Assets at the applicable time.** If a member of the Committee submits a Qualified Bid for the Assets, the Committee will maintain its consultation rights as a Consultation Party; *provided* that the Committee shall exclude the bidding Committee member from any discussions or deliberations regarding a transaction involving the relevant Assets, and shall not provide any confidential information regarding the Assets or otherwise involving the sale process to such bidding committee member; *provided further* that, upon written notice by such Committee member (which may be via email) to the Debtors, or express confirmation on the record during the Auction, of its withdrawal as a bidder for the Debtors' assets, such Committee member's rights as a Consultation Party (as a Committee member) shall be restored.

For the avoidance of doubt, any consultation rights afforded to the Consultation Parties by these Bidding Procedures or the Bidding Procedures Order shall not in any way limit the Debtors' discretion and shall not include the right to veto any decision made by the Debtors in the exercise of their reasonable business judgment.

19

## Exhibit 2

**Sale Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |

## NOTICE OF SALE, BIDDING PROCEDURES, AUCTION, SALE HEARING AND OTHER DEADLINES RELATED THERETO

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [●], 2025, the above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. ●] (the "Motion") seeking entry of (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with the sale (each, a "Sale") of all, substantially all, or a portion of the Debtors' assets (the "Assets"); (ii) authorizing the Debtors to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures; (iii) scheduling (A) an auction of the Assets (the "Auction") on, and (B) a final hearing to consider approval of, the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with the Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract and certain other information regarding the potential assumption and assignment of Contracts in connection with a Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtors and any Successful Bidder, with liens to attach to the proceeds of the Sale; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2] Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order. Any summary of the Bidding Procedures or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms thereof. To the extent that there is any inconsistency between any summary in this notice and either of the Bidding Procedures or the Bidding Procedures Order, the actual terms in those documents shall control.

On [●], 2025, the Court entered the Bidding Procedures Order [Docket No. ●].

## ASSETS FOR SALE

The Debtors intend to sell all, substantially all, or a portion of their Assets, including their owned real property, intellectual property, and all claims, causes of action, lawsuits, judgments, and demands of any nature, in each case, available to or being pursued by the Debtors.

A Prospective Bidder may bid on the Assets, subject to the conditions set forth in the Bidding Procedures and the Bidding Procedures Order.

The ability to undertake and consummate a sale of the Assets shall be subject to competitive bidding, as set forth herein, and approval by the Court. In addition to any Stalking Horse Bid, and as set forth herein, the Debtors will consider bids for the Assets from other parties.

Parties may submit bids for all or some of the Debtors' business and assets, including for parts of the Debtors' business or assets (each, a "Partial Bid"), which bids may be combined with other Partial Bids or be considered independently and/or together with the liquidation value (as reasonably determined by the Debtors in good faith) of the Debtors' business or assets that are not the subject of other Partial Bids to be deemed a Qualified Bid.

Any party interested in submitting a bid for any of the Debtors' Assets should contact the Debtors' investment banker:

**SSG Advisors, LLC**
Attn: Mark Chesen and Neil Gupta
mchesen@ssgca.com | (610) 940-5801
ngupta@ssgca.com | (610) 940-2663

## KEY DATES AND DEADLINES

### A.    Bid Deadline

Any Prospective Bidder that intends to participate in the Auction must submit in writing to the Bid Notice Parties a Qualified Bid **on or before [●], 2025 at 5:00 p.m. (ET)** (the "Bid Deadline").

The Qualified Bid requirements are set forth in the Bidding Procedures.

### B.    Stalking Horse Bidder Designation

The Debtors may designate a Stalking Horse Bidder and enter into a Stalking Horse Agreement **no later than [●], 2025**, which deadline may be extended by the Debtors (after consultation with the Consultation Parties).

C.    **Auction**

If the Debtors receive more than one Qualified Bid (including a combination of bids that, when considered together, constitute a Qualified Bid) for the Assets, the Debtors will conduct an Auction for the Assets.  If any Stalking Horse Bid is the only Qualified Bid received in respect of the Assets subject to such Stalking Horse Bid, the Debtors will not conduct an Auction for such applicable Assets and will seek approval of such Stalking Horse Bid at the Sale Hearing.

The Auction, if required, will be conducted either at the offices of Potter Anderson & Corroon LLP, 1313 N. Market Street, Wilmington, Delaware 19801 or virtually, on **[●], 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties.  If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail.  The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time or location of the Auction to Qualified Bidders, and will cause publication of such change to occur on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases, located at https://www.omniagentsolutions.com/BrightmarkPlastics (the "Case Website").

Within one day after the conclusion of the Auction, the Debtors will file with the Court and cause to be served and published on the Case Website, a notice of the results of the Auction, which will, among other things, (A) identify the Successful Bidder and Backup Bidder(s); (B) either include a copy of the Successful Bid and the Backup Bid or a summary of the material terms of such bids, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid and the Backup Bid free of charge from the Case Website; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

If the Debtors determine not to hold an Auction for some or all of the Assets, the Debtors shall file with the Court, and cause to be served and published on the Case Website, a notice containing the following information (as applicable): (a) a statement that the Auction for the relevant Assets has been canceled; (b) the identity of the Successful Bidder; (c) either include a copy of the Successful Bid or a summary of the material terms of such bid, including any assumption and assignment of Contracts contemplated thereby, or provide instructions for accessing the Successful Bid free of charge from the Case Website; and (d) the date, time, and location of the Sale Hearing.

D.    **Objection Deadlines**

1.  <u>Sale Objection Deadline</u>.  Except objections to the conduct of the Auction, all objections to a sale of the Assets, including any objection to a sale of the Assets free and clear of all liens, claims, interests and encumbrances pursuant to section 363(f) of the Bankruptcy Code, must be (i) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (ii) filed with the Court by **no later than [●], 2025 at 4:00 p.m. (ET)** and served on the following parties (collectively,

3

the "Objection Notice Parties"): (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)); (iii) counsel to the DIP Lender, (a) Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Paul M. Rosenblatt (prosenblatt@ktslaw.com)), and (b) Chipman Brown Cicero & Cole LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (iv) counsel to the Indenture Trustee, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd Floor, New York, New York 10019 (Attn: Mark A. Angelov (mark.angelov@afslaw.com)); (v) if any statutory committee has been appointed in these cases, counsel to such committee; (vi) if applicable, counsel for the Successful Bidder; and (vii) if applicable, counsel for the Backup Bidder.

2.  **Cure Objection Deadline**.  Any objection to the Debtors' proposed Cure Costs (each such objection, a "Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than [●], 2025, at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

3.  **Supplemental Sale Objection Deadline**.  Following service of the Notice of Auction Results, parties may object solely with respect to the particular terms of a proposed Sale or the Successful Bid or Backup Bid.  Any Supplemental Sale Objection must be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; and (b) filed with the Court by **no later [●], 2025, at 4:00 p.m. (ET)** (the "Supplemental Sale Objection Deadline") and served on the Objection Notice Parties.

4.  **Adequate Assurance Objection**.  Any Adequate Assurance Objection to the proposed assumption and assignment of a Contract, the subject of which objection is the Successful Bidder's proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than [●], 2025 at 4:00 p.m. (ET)**; and (c) served on the Objection Notice Parties.

      **E.**     **Sale Hearing**

The Sale Hearing shall take place on **[●], 2025 at** [●:● a/p.m.] **(ET)** before The Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## RESERVATION OF RIGHTS TO MODIFY BIDDING PROCEDURES

The Debtors reserve the right to, in their reasonable business judgment and after consultation with the Consultation Parties in a manner consistent with their fiduciary duties and applicable law, modify the Bidding Procedures, including to, among other things, extend or waive deadlines or other terms and conditions set forth therein; adopt new rules and procedures for conducting the bidding and Auction process so long as any such modifications are disclosed to all Prospective Bidders and Qualified Bidders, as applicable; or otherwise modify these Bidding Procedures to further promote competitive bidding for and maximizing the of value of the Assets, in each case, to the extent not materially inconsistent with the Bidding Procedures or the Bidding Procedures Order.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Case Website located at https://www.omniagentsolutions.com/BrightmarkPlastics.

**FAILURE TO ABIDE BY THE BIDDING PROCEDURES, THE BIDDING PROCEDURES ORDER OR ANY OTHER APPLICABLE ORDER OF THE COURT ENTERED IN THE CHAPTER 11 CASES MAY RESULT IN THE REJECTION OF YOUR BID AND YOUR DISQUALIFICATION FROM PARTICIPATING IN THE BIDDING FOR, AND AUCTION OF, ANY OF THE DEBTORS' ASSETS.**

**THE FAILURE OF ANY PERSON OR ENTITY TO FILE AND SERVE AN OBJECTION IN ACCORDANCE WITH THE BIDDING PROCEDURES ORDER, INCLUDING THE FAILURE TO FILE ANY SUCH OBJECTION BY THE APPLICABLE OBJECTION DEADLINE, SHALL FOREVER BAR SUCH PERSON OR ENTITY FROM ASSERTING, AT THE SALE HEARING OR THEREAFTER, ANY SUCH OBJECTION TO THE RELIEF REQUESTED IN THE MOTION, THE CONSUMMATION OF ANY APPLICABLE SALE, INCLUDING THE SALE OF ANY ASSETS TO A SUCCESSFUL BIDDER FREE AND CLEAR OF LIENS, CLAIMS, INTERESTS AND ENCUMBRANCES PURSUANT TO SECTION 363(f) OF THE BANKRUPTCY CODE OR THE TERMS OF THE STALKING HORSE AGREEMENT OR OTHER ASSET PURCHASE AGREEMENT EXECUTED BY THE DEBTORS.**

Dated: [●], 2025
Wilmington, Delaware

POTTER ANDERSON & CORROON LLP

_____

Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Brett M. Haywood (No. 6166)
Katelin A. Morales (No. 6683)
James R. Risener III (No. 7334)
Andrew C. Ehrmann (No. 7395)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
        rmcneill@potteranderson.com
        bhaywood@potteranderson.com
        kmorales@potteranderson.com
        jrisener@potteranderson.com
        aehrmann@potteranderson.com

*Proposed Counsel for Debtors and Debtors in Possession*

**<u>Exhibit 3</u>**

**Assumption and Assignment Notice**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |

## NOTICE OF CURE COSTS AND POTENTIAL ASSUMPTION AND ASSIGNMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES IN CONNECTION WITH SALE OF SUBSTANTIALLY ALL ASSETS

**PLEASE TAKE NOTICE OF THE FOLLOWING:**

On [●], 2025, the above-captioned debtors and debtors in possession (the "Debtors") in the above-captioned chapter 11 cases filed with the United States Bankruptcy Court for the District of Delaware (the "Court") a motion [Docket No. ●] (the "Motion") seeking entry of (a) an order (the "Bidding Procedures Order") (i) approving bidding procedures (the "Bidding Procedures")[2] to be used in connection with a sale (the "Sale") of all, substantially all, or a portion of the Debtors' assets (the "Assets"); (ii) authorizing the Debtors to designate a Stalking Horse Bidder and provide Bid Protections in accordance with the Stalking Horse Designation Procedures; (iii) scheduling (A) an auction of the Assets (the "Auction"), and (B) a final hearing to consider approval of the proposed Sale (the "Sale Hearing"); (iv) approving the form and manner of notice of the Bidding Procedures, the Auction and the Sale Hearing; (v) approving procedures for the assumption and assignment of executory contracts and unexpired leases (collectively, the "Contracts") in connection with any Sale; (vi) approving the form and manner of notice to each relevant non-debtor counterparty to a Contract of the Debtors' calculation of the amount necessary to cure any defaults under an applicable Contract (the "Cure Cost") and certain other information regarding the potential assumption and assignment of Contracts in connection with the Sale; and (vii) granting related relief; and (b) an order (the "Sale Order") (i) authorizing the sale of the Assets free and clear of all liens, claims, interests and encumbrances, except certain permitted encumbrances as determined by the Debtors and any Successful Bidder (as defined in the Bidding

---

[1]     The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789).  The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2]     Capitalized terms used but not defined herein shall have the respective meanings ascribed to such terms in the Bidding Procedures Order.  Any summary of the Bidding Procedures or the Bidding Procedures Order contained herein is qualified in its entirety by the actual terms thereof.  To the extent that there is any inconsistency between any summary in this notice and either of the Bidding Procedures or the Bidding Procedures Order, the actual terms in those documents shall control.

Procedures), with liens to attach to the proceeds of the Sale; (ii) authorizing the assumption and assignment of certain Contracts in connection with approved Sale; and (iii) granting related relief.

On [●], 2025, the Court entered the Bidding Procedures Order [Docket No. ●].

**You are receiving this Notice because you may be a Counterparty to a Contract of the Debtors that may be assumed and assigned to the Successful Bidder for the Debtors' Assets.**

## CURE COSTS

In accordance with the Assumption and Assignment Procedures and the Bidding Procedures Order, the Debtors may, in connection with the Sale with the Successful Bidder at the Auction, seek to assume and assign to the Successful Bidder certain of their Contracts. Each of the Contracts that potentially could be assumed and assigned in connection with the Sale, together with the Debtors' calculation of Cure Costs with respect to such Contracts, is set forth on Schedule 1 hereto. The inclusion of any Contract on Schedule 1 does not constitute an admission by the Debtors, a Stalking Horse Bidder, any Successful Bidder, or any other party that such Contract is an executory contract or an unexpired lease within the meaning of the Bankruptcy Code or require or guarantee that such Contract ultimately will be assumed or assigned. All rights of the Debtors with respect thereto are reserved.

In addition, to the extent that any of the Cure Costs set forth on Schedule 1 do not reflect (i) postpetition payments that have been made by the Debtors in respect of applicable Cure Costs or (ii) any payments that are made by the Debtors in respect of such Cure Costs after the filing of this Notice, the respective amounts required to be paid to cure any existing defaults under the applicable Contracts shall be reduced by any such corresponding postpetition payments, and the Debtors reserve their rights to update the Cure Costs set forth on Schedule 1 accordingly, either by filing a supplemental notice with the Court or by written notice to the applicable Counterparty.

## CURE OBJECTIONS

### A.    Cure Objection Deadline

Any objection to the Debtors' proposed Cure Costs (each such objection, a "Cure Objection") shall be (a) in writing and state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof; (b) filed with the Court by **no later than [●], 2025, at 4:00 p.m. (ET)**; and (c) served on the following parties (collectively, the "Objection Notice Parties"): (i) proposed counsel to the Debtors, Potter Anderson & Corroon LLP, 1313 North Market Street, 6th Floor, Wilmington, Delaware 19801 (Attn: Jeremy W. Ryan (jryan@potteranderson.com), R. Stephen McNeill (rmcneill@potteranderson.com), and Brett M. Haywood (bhaywood@potteranderson.com)); (ii) Office of the United States Trustee for the District of Delaware, J. Caleb Boggs Federal Building, 844 King Street, Suite 2207, Lockbox 35, Wilmington, DE 19801 (Attn: Benjamin A. Hackman (benjamin.a.hackman@usdoj.gov)); (iii) counsel to the DIP Lender, (a) Kilpatrick Townsend & Stockton LLP, 1100 Peachtree Street NE, Suite 2800, Atlanta, Georgia 30309 (Attn: Paul M. Rosenblatt (prosenblatt@ktslaw.com)), and (b) Chipman Brown Cicero & Cole LLP, Hercules Plaza, 1313 N. Market Street, Suite 5400, Wilmington, DE 19801 (Attn: Mark L. Desgrosseilliers (desgross@chipmanbrown.com)); (iv) counsel to the Indenture Trustee, ArentFox Schiff LLP, 1301 Avenue of the Americas, 42nd

2

Floor, New York, New York 10019 (Attn: Mark A. Angelov (mark.angelov@afslaw.com)); (v) if any statutory committee has been appointed in these cases, counsel to such committee; (vi) if applicable, counsel for the Successful Bidder; and (vii) if applicable, counsel for the Backup Bidder.

**B.      Resolution of Cure Objections**

Pursuant to the Bidding Procedures Order, the Debtors or Successful Bidder (if applicable) and the objecting Counterparty must first confer in good faith to attempt to resolve the Cure Objection without Court intervention.  If a Cure Objection is resolved in a manner that is not in the best interests of the Debtors and their estates, whether or not such resolution occurs prior to or after the closing of the Sale, the Debtors and the Successful Bidder may determine that any Contract subject to such resolved Cure Objection no longer will be assumed and assigned.

If a timely filed Cure Objection cannot otherwise be resolved by the parties, the Cure Objection may be heard at the Sale Hearing, or, with the agreement of the Debtors and the Successful Bidder, be adjourned to a subsequent hearing (each an "<u>Adjourned Cure Objection</u>"). Upon resolution of an Adjourned Cure Objection and the payment of the applicable cure amount, if any, the applicable Contract that was the subject of such Adjourned Cure Objection shall, at the election of the Successful Bidder, and subject to the Debtors' rights set forth in the Bidding Procedures Order, be deemed assumed and assigned to the Successful Bidder as of the closing of the Sale.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY CURE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION WITH REGARD TO THE COST TO CURE ANY DEFAULTS UNDER THE APPLICABLE CONTRACT, AND THE CURE COSTS SET FORTH ON <u>SCHEDULE 1</u> HERETO SHALL BE CONTROLLING AND WILL BE THE ONLY AMOUNT NECESSARY TO CURE OUTSTANDING DEFAULTS UNDER THE CONTRACT AND SATISFY THE REQUIREMENTS OF SECTION 365(b) OF THE BANKRUPTCY CODE, AND THE COUNTERPARTY TO THE CONTRACT SHALL BE DEEMED BOUND BY AND TO HAVE CONSENTED TO THE CURE COSTS.**

<u>**NOTICE OF AUCTION RESULTS**</u>

The Auction, if required, will be conducted either at the offices of Potter Anderson & Corroon LLP, 1313 N. Market Street, Wilmington, Delaware 19801 or virtually, on **[●], 2025, at 10:00 a.m. (ET)** or at such other date, time or location as designated by the Debtors, after consulting with the Consultation Parties.  If the Debtors conduct the Auction virtually, the Debtors will provide instructions setting forth how to attend the Auction to the participants and other attendees via electronic mail.  The Debtors will provide notice (via electronic mail or otherwise) of any change in the date, time, or location of the Auction to Qualified Bidders and the Consultation Parties and will cause publication of such change to occur on the Case Website (as defined below).

Within one day after the conclusion of the Auction, the Debtors shall file with the Court and cause to be served and published on the website maintained by the Debtors' claims and noticing agent in these chapter 11 cases located at https://www.omniagentsolutions.com/BrightmarkPlastics (the "Case Website") a notice of the results of the Auction, which will, among other things, (A) identify the Successful Bidder(s) and Backup Bidder(s); (B) either include a copy of each Successful Bid and each Backup Bid or a summary of the material terms of such bids, or provide instructions for accessing each Successful Bid and each Backup Bid free of charge from the Case Website; and (C) set forth the date, time, and location of the Sale Hearing and any other relevant dates or other information necessary to reasonably apprise parties in interest of the outcome of the Auction.

## ADEQUATE ASSURANCE OBJECTIONS

### A.    Adequate Assurance Objection Deadline

Any Counterparty to a Contract that wishes to object to the proposed assumption and assignment of a Contract, the subject of which objection is the Successful Bidder's proposed form of adequate assurance of future performance with respect to the Contract (each such objection, an "Adequate Assurance Objection"), must file with the Court and serve on the Objection Notice Parties an Adequate Assurance Objection, which must state, with specificity, the legal and factual bases thereof and include any appropriate documentation in support thereof, by **[●], 2025 at 4:00 p.m. (ET)**.

### B.    Resolution of Adequate Assurance Objections

Pursuant to the Bidding Procedures Order, the Debtors, the Successful Bidder and the objecting Counterparty must first confer in good faith to attempt to resolve the Adequate Assurance Objection without Court intervention. If the parties are unable to consensually resolve the Adequate Assurance Objection prior to the commencement of the Sale Hearing, the Adequate Assurance Objection and all issues of adequate assurance of future performance of the Successful Bidder (or any other relevant assignee) shall be determined by the Court at the Sale Hearing or, at the option of the Debtors and the Successful Bidder, be adjourned to a subsequent hearing, with notice to the party having filed the Adequate Assurance Objection.

**IF A COUNTERPARTY FAILS TO FILE WITH THE COURT AND SERVE ON THE OBJECTION NOTICE PARTIES A TIMELY ADEQUATE ASSURANCE OBJECTION, THE COUNTERPARTY FOREVER SHALL BE BARRED FROM ASSERTING ANY OBJECTION TO THE ASSUMPTION AND/OR ASSIGNMENT OF THE APPLICABLE CONTRACT WITH REGARD TO ADEQUATE ASSURANCE OF FUTURE PERFORMANCE. THE APPLICABLE SUCCESSFUL BIDDER SHALL BE DEEMED TO HAVE PROVIDED ADEQUATE ASSURANCE OF FUTURE PERFORMANCE WITH RESPECT TO THE CONTRACT IN ACCORDANCE WITH BANKRUPTCY CODE SECTIONS 365(b)(1)(C), 365(f)(2)(B) AND, IF APPLICABLE, 365(b)(3), NOTWITHSTANDING ANYTHING TO THE CONTRARY IN THE CONTRACT OR ANY OTHER DOCUMENT.**

## SALE HEARING

The Sale Hearing shall take place on **[], 2025 at [●:● a/p.m.] (ET)** before The Honorable Laurie Selber Silverstein, United States Bankruptcy Judge, in the United States Bankruptcy Court for the District of Delaware, located at 824 N. Market Street, Wilmington, Delaware 19801.

## ADDITIONAL INFORMATION

Copies of the Motion, the Bidding Procedures Order and the Bidding Procedures may be obtained free of charge by visiting the Case Website.

Dated: [●], 2025                    POTTER ANDERSON & CORROON LLP
Wilmington, Delaware

Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Brett M. Haywood (No. 6166)
Katelin A. Morales (No. 6683)
James R. Risener III (No. 7334)
Andrew C. Ehrmann (No. 7395)
1313 North Market Street, 6th Floor
Wilmington, Delaware 19801
Tel: (302) 984-6000
Facsimile: (302) 658-1192
Email: jryan@potteranderson.com
        rmcneill@potteranderson.com
        bhaywood@potteranderson.com
        kmorales@potteranderson.com
        jrisener@potteranderson.com
        aehrmann@potteranderson.com

*Proposed Counsel for Debtors and Debtors in Possession*

**<u>Schedule 1</u>**