**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Joint Administration Requested) |

**DECLARATION OF MARK E. CHESEN IN SUPPORT OF DEBTORS' MOTION FOR ENTRY OF AN ORDER (A) APPROVING BIDDING PROCEDURES FOR THE SALE OF SUBSTANTIALLY ALL OF THE DEBTORS' ASSETS, (B) AUTHORIZING THE DEBTORS TO DESIGNATE ONE OR MORE STALKING HORSE BIDDERS AND TO PROVIDE BID PROTECTIONS (C) SCHEDULING AN AUCTION AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF, (D) APPROVING ASSUMPTION AND ASSIGNMENT PROCEDURES, (E) SCHEDULING A SALE HEARING AND APPROVING THE FORM AND MANNER OF NOTICE THEREOF AND (F) GRANTING RELATED RELIEF**

I, Mark E. Chesen, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a founding partner and Managing Director of SSG Advisors, LLC ("SSG"), an investment banking firm that maintains offices at 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, and am duly authorized to make this declaration (the "Declaration") on behalf of SSG.

2. I submit this Declaration in support of the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof,*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

*(D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* (the "Motion") filed contemporaneously herewith.[2]

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of SSG's engagement, my discussions with the Debtors' senior management, other members of the SSG team, and the Debtors' other advisors, as well as my review of relevant documents or my opinion based on my experience and knowledge of the Debtors' operations and financial condition. If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, or opinion.

**Background and Qualifications**

1. I have thirty-five years of experience advising businesses facing operational and/or financial challenges, including companies in bankruptcy proceedings. I personally have completed over 150 investment banking transactions involving the sale, private placement, or financial restructuring of middle market companies in North America and Europe.

2. Prior to forming SSG in 2001, I held senior leadership positions at Berwind Financial, including co-head of the investment-banking group; head of the Special Situations Group; and as a member of the management committee.

---

[2] Capitalized terms used but not defined herein shall have the meanings set forth in the Motion.

3.      In 1982, I received a Bachelor of Arts in accounting from the University of Texas at Austin. I was previously licensed as a certified public accountant in the states of Texas and Iowa.

4.      SSG is an internationally recognized investment banking firm. Since its founding, SSG has completed over 450 investment banking assignments. SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, and financial advisory services. Moreover, SSG has substantial expertise advising troubled companies, including in connection with distressed sales.

5.      SSG's professionals have extensive experience in complex financial restructurings. SSG has served as an investment banker for debtors and other parties in many bankruptcy cases in the District of Delaware, including: *In re Ideanomics, Inc. et al.*, Case No. 24-12728 (CTG); *In re Biolase, Inc. et al.*, Case No. 24-12245 (KBO); *In re ICON Aircraft, Inc., et al.*, Case No. 24-10703 (CTG); *In re Burgess BioPower, LLC, et al.*, Case No. 24-10235 (LSS); *In re InVivo Therapeutics Corporation, et al.*, Case No. 24-10137 (MFW); *In re ContraFect Corporation*, Case No. 23-11943 (LSS); *In re Gelesis Holdings, Inc.*, et al., Case No. 23-11787 (BLS); *In re Infinity Pharmaceuticals, Inc., et al.*, Case No. 23-11640 (BLS); *In re Pegasus Home Fashions, Inc., et al.*, Case No. 23-11235 (MFW); *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (TMH); *In re EFS Parlin Holdings, LLC*, Case No. 23-10539 (JTD); *In re Nova Wildcat Shur-Line Holdings, Inc.*, Case No. 23-10114 (CTG); *In re Allena Pharmaceuticals, Inc.*, Case No. 22-10842 (KBO); *In re Electric Last Mile, Inc.*, Case No. 22-10538 (MFW); *In re Retrotope, Inc.*, Case No. 22-10228 (JTD); *In re Avadim Health, Inc.*, Case No. 21-10883 (CTG); *In re Connections Community Support Programs, P.C.*, Case No. 21-10723 (MRW); *In re PBS Brand Co., LLC*, Case No. 20-13157 (KSS); *In re PQ New York, Inc., et al.*, Case No. 20-11266 (JTD);

3

*In re Sustainable Restaurant Holdings, Inc.*, Case No. 20-11087 (JTD); *In re Cedar Haven Acquisition, LLC*, Case No. 19-11736 (JKS); *In re THG Holdings LLC, et al.*, Case No. 19-11689 (JTD); *In re St. Christopher's Healthcare, LLC*, Case No. 19-11468 (KG); *In re Center City Healthcare, LLC d/b/a Hahnemann Univ. Hosp.*, Case No. 19-11466 (KG); *In re 1515-GEEnergy Holding Co. LLC, et al.*, Case No. 19-10303 (LSS); *In re Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC); *In re Argos Therapeutics, Inc.*, Case No. 18-12714 (KJC); *In re ABT Molecular Imaging, Inc.*, Case No. 18-11398 (CSS); *In re Nighthawk Royalties LLC*, Case No. 18-10989 (BLS); *In re Vitamin World, Inc., et al.*, Case No. 17-11933 (KJC); *In re Peekay Acquisition, LLC*, Case No. 17-11722 (BLS); *In re Short Bark Indus., Inc.*, Case No. 17-11502 (KG); *In re Unilife Corp.*, Case No. 17-10805 (LSS).

### SSG's Retention

6. On February 26, 2025, the Debtors retained SSG as investment banker to, among other things: (i) identify and evaluate potential counterparties for a potential sale process, (ii) prepare a marketing plan and information materials to distribute to potential buyers on a confidential basis, (iii) solicit third-party interest in an acquisition of the Debtors' assets, (iv) review the DIP Facility for reasonableness, and investigate alternative sources of funding, and (v) assist the Debtors in contacting potential buyers, arranging meetings with potential buyers, and coordinating due diligence. During its engagement, SSG has worked closely with the Debtors' management and other restructuring professionals and has become knowledgeable and familiar with the Debtors' capital structure, liquidity needs, and business operations.

### Marketing and Sale Process

4. Prior to the Petition Date, Brightmark Parent had originally contemplated making a stalking horse offer to support the sales process and give comfort to all constituents that there would be a continuity of operations postpetition. However, given the reaction of the Prepetition

4

Secured Lenders to the originally proposed sale and funding strategy for these chapter 11 cases, the Debtors deemed it advisable to request that Brightmark Parent not serve as a stalking horse purchaser. The rationale is simple. The Debtors, under the oversight of the Independent Manager and CRO, want there to be no misapprehension that the Debtors are conducting an open and unimpeded sale process. The Debtors are proposing a process whose principal purpose is to be a market driven valuation of the Prepetition Secured Lenders' collateral.

5. The Debtors did not have sufficient time to adequately market their Assets prior to filing these chapter 11 cases given their liquidity constraints. Subject to the oversight of the Independent Manager and Chief Restructuring Officer, and with the assistance of SSG and the Debtors' other advisors, the Debtors intend to commence a robust postpetition marketing process aimed at soliciting bids for a Sale transaction. Since its engagement, SSG has worked with the Debtors and their other advisors to prepare for the sale process. This includes, among other things, drafting a teaser and other marketing materials, establishing a virtual data room, and preparing a form non-disclosure agreement to be ready to immediately commence the postpetition marketing of the Assets, while the Debtors seek approval of the Bidding Procedures in parallel. SSG is poised to immediately commence its postpetition marketing efforts. In addition, SSG has begun an initial outreach to potential strategic and financial buyers and intends to contact 287 parties, including strategic buyers, private equity funds, and other financial institutions, that are reasonably likely to be interested in consummating a proposed Sale.

6. Based on my experience, the time periods set forth in the Bidding Procedures Order and Bidding Procedures are reasonable and will provide all potential bidders with sufficient time and information to submit a bid for the Assets and do not prejudice parties in interest. In formulating the procedures and time periods set forth therein, the Debtors balanced the need to

provide adequate and appropriate notice to parties in interest and potential bidders with the need to quickly and efficiently run a sale process.

7. Under the proposed timeline, there will be fifty (50) days between the Petition Date and the Bid Deadline. I believe this period will provide parties with sufficient time to formulate bids to purchase the Assets. Further, extensive information regarding the Assets will be made available to Prospective Bidders in a virtual data room upon the execution of confidentiality agreements. Accordingly, parties that may have an interest in bidding will have adequate time before the Bid Deadline to conduct diligence and evaluate the Debtors' Assets so that they will not be bidding in a vacuum and can formulate a Bid on an informed basis.

8. I believe the marketing and sale process contemplated by the Debtors is in the best interests of the Debtors' estates, will establish whether and to what extent a market exists for the Assets, and provides interested parties with sufficient opportunity to participate. Accordingly, I believe that the Debtors' estates would be best served by approval of the Bidding Procedures Order.

## Need For a Timely Process

9. Based on my thirty-five years of experience in the investment banking industry, including representing Debtors or other parties in interest in connection with postpetition marketing and sale processes in chapter 11 cases, I believe that potential bidders are more likely to seriously pursue a sale transaction knowing that a bankruptcy court has approved a sale and marketing process and related bidding procedures.

10. Accordingly, I believe that approval of the Bidding Procedures sooner, rather than later, will increase the amount of time the Debtors can meaningfully engage potential bidders. I believe that longer engagement will result in greater due diligence and a higher likelihood that the Debtors will receive one or more Qualified Bids. As a result, I believe approval of the Bidding

Procedures on the timeline requested by the Debtors is more likely to lead to a sale transaction that maximizes the value of the Assets for the benefit of the Debtors' estates by generating earlier interest in the Assets.

11. Moreover, the facts and circumstances of these chapter 11 cases require that the Debtors run an expedited, but robust, sale process. In my experience, speed and certainty are critical in a sale process in which the Debtors' ability to access the DIP Facility on a limited budget is conditioned upon adherence to strict sale milestones. It is my understanding that the Debtors do not have liquidity to support a protracted sale process and without access to the DIP Facility, the Debtors will be unable to support the ongoing sale process. Having made the decision to fund these chapter 11 cases on a junior basis, and at tremendous financial exposure, the DIP Lender reasonably has requested an expedited timeline to limit that exposure.

12. Thus, pursuing the Sale in the manner and within the time periods prescribed in the Bidding Procedures is in the best interest of the Debtors' estates and will provide interested parties with sufficient opportunity to participate.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing statements are true and correct to the best of my knowledge, information, and belief.

Dated: March 17, 2025

        By:
        */s/ Mark E. Chesen*
        Name: Mark E. Chesen
        Title:   Managing Director, SSG Advisors, LLC

*Proposed Investment Banker to the Debtors*