# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>BRIGHTMARK PLASTICS RENEWAL LLC, et al.,[1]<br><br>　　　　　　　　　　Debtors. | Chapter 11<br><br>Case No. 25-10472 (LSS)<br><br>(Jointly Administered)<br><br>RE: Docket No. 22 |

### INITIAL OBJECTION, REQUEST FOR ADJOURNMENT
### AND RESERVATION OF RIGHTS OF UMB BANK. N.A.,
### AS TRUSTEE, TO DEBTORS' BIDDING PROCEDURES MOTION

UMB Bank, N.A., not in its individual capacity but solely in its capacity as trustee and collateral agent (the "Trustee") for the tax exempt facility revenue bonds (the "Bonds") issued under that certain Trust Indenture, dated as of March 1, 2019 (as amended or supplemented, including by the First Supplemental and Amendatory Trust Indenture, dated as of February 1, 2024, the "Indenture"), by and between the Indiana Finance Authority (the "Authority") and the Trustee and made in connection with that certain Loan Agreement, dated as of March 1, 2019 (as the same may be amended or supplemented, the "Loan Agreement"), by and between the Authority and Brightmark Plastics Renewal Indiana LLC, formerly known as RES Polyflow Indiana, LLC (the "Borrower"), hereby files this Initial Objection, Request for Adjournment and Reservation of Rights to the *Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery1 St, Floor 3, San Francisco, CA 94111.

*Procedures, (E) Scheduling a Sale Hearing, and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 22] (the "<u>Bidding Procedures Motion</u>")[2] and in support thereof states as follows:

## INITIAL OBJECTION

1. These chapter 11 cases are fundamentally a dispute between the Prepetition Secured Parties,[3] on the one hand, and the Debtors' insider parent/DIP Lender, on the other hand. According to Debtors' counsel, equity had been funding the Debtors' unsuccessful attempts to commission its recycling plant (the "<u>Plant</u>") prior to the Petition Date and had contributed no less than $50 million during the last year alone. With more than $12 million coming due in debt service on the Bonds on March 1, 2025, the insider parent/DIP Lender decided that it no longer wished to finance on a basis junior to the Prepetition Secured Parties. This bankruptcy followed.

2. Once before this Court, the insider parent/DIP Lender and the Debtor together embarked on a thinly veiled strategy of delivering the Plant to equity free and clear of the Trustee's liens. The first iteration of the strategy was an attempt to prime the Trustee with a $21-26 million DIP loan and then credit bid that priming DIP to obtain the Plant, defeating the Trustee's credit bid rights, its ability to recover on its claim, and all of its other substantive rights.

---

[2] Capitalized terms used but not defined herein shall have the meanings ascribed to them in the Bidding Procedures Motion, or the First Day Declaration, as applicable.

[3] The Debtors' First Day Declaration defines the "Prepetition Secured Parties" as UMB in its capacities as secured party under the Pledge and Security Agreement and Indenture Trustee under the Indenture, and IFA.

3.      The Trustee refused to be primed or otherwise acquiesce in this scheme. Recognizing that no basis for priming existed, the insider parent/DIP Lender and Debtors abandoned the priming DIP approach.

**A.  The Bidding Procedures Seek to Deprive the Trustee of Its Credit Bid Rights**

4.      Having failed to prime the Prepetition Secured Parties, the Debtors and their equity insider pivoted to their present strategy, still designed to deliver the Plant to equity stripped of the Prepetition Secured Parties' liens.  By design, the sale process and the proposed Bid Procedures position the equity insider to be the winning, if not the sole, bidder.  First, the Debtors and the equity insider designed a sale process that all but minimizes the likelihood of viable third party bids.  Despite forgoing any prepetition marketing, the Debtors seek to impose an extremely and artificially expedited sale run by an advisor with no apparent experience in the field.  As noted below, Debtors freely admit that the truncated process is being pursued at the equity insider's request.

5.      Second, every effort is made to use that self-imposed timeframe to impede, undercut, or at least chill the Trustee's ability to credit bid by extending uncertainty over its liens.[4] If successful, this all but ensures the Auction will not be a competitive one as the Prepetition Secured Parties are likely to be the only other bidder.  The Debtors have so far refused to stipulate to the validity of the Trustee's liens – not because they claim that any defects exist but rather because they ostensibly need more time to fully investigate a challenge.  Nor will they agree to a timetable for a resolution to the extent an issue is raised.  As noted below, the Debtors wrongly insist that under the local rules, the determination of the validity of the Trustee's claim must await

---

[4] The Trustee believes its liens and claims are valid, binding, enforceable and not subject to challenge.  No party, including the Debtors, has suggested otherwise.

75 days post-petition and therefore cannot take place until after the Auction takes place. Meanwhile, the Debtors have clearly indicated that they intend to refuse Qualified Bidder status to the Trustee and intend to require that the Trustee put up a cash deposit as a condition to being able to credit bid while the validity of its lien is in Debtor-created limbo. The clear goal is to chill the Trustee's ability to credit bid so the equity insider will emerge as the winning (if not sole) bidder for the Trustee's collateral.

6. The Trustee objects to this misuse of the chapter 11 process. It appears at this point that the Trustee and the insider parent/DIP Lender are likely to be the only two bidders. Having clarity on the Trustee's right to credit bid is therefore crucial to any sale process.

**B. The Sale Timeline Is Unnecessarily Accelerated by the Insider Parent/DIP Lender**

7. Insider-controlled cases favor a normal sale timeline, particularly in this case where (i) the Debtors had not been marketing any of their assets prepetition,[5] (ii) the Debtors elected to retain an investment banker who does not profess to have any relevant experience[6] in marketing recycling assets like the Debtors' Plant and (iii) the assets being sold involve state-of-the-art and highly sophisticated technology that must be diligenced.[7]

8. The sale process being urged by the Debtors is not appropriate under this standard. It is far from normal. If the Bidding Procedures Motion is granted at the hearing on Thursday April 3, the Debtors will be seeking a sale hearing a mere 36 days after entry of the Bidding

---

[5] See First Day Declaration at ¶ 60–61 (stating that the Debtors only retained SSG on February 26, 2025 in preparation for the in-court sale process).

[6] See *Declaration of Mark E. Chesen in Support of Debtors' Application for an Order Authorizing the Debtors to Retain and Employ SSG Advisors, LLC as Investment Banker to the Debtors Effective As of the Petition Date and Waiving Certain Time-Keeping Requirements* [Docket No. 58-4].

[7] See First Day Declaration at ¶¶ 6–13.

4

Procedures Order (and only 53 days from the Petition Date), with a Bid Deadline only 32 days from the date of the order.  No rational reason whatsoever is provided for this exigency.  The only reason offered is that "[h]aving made the decision to fund these chapter 11 cases on a junior basis, and at a tremendous financial exposure, the DIP Lender reasonably has requested an expedited timeline to limit that exposure."[8]  But the insider parent's risk assessment and direction to the Debtors have no place in dictating how to maximize the value of the estates.  Indeed, this is exactly why the Court should give no deference to the Debtors' judgment which is being made at the direction of an insider who stands to directly benefit from precluding a robust sale process with multiple bids so it can secure its position as the winning bidder.

### C. The Debtors Should Either Stipulate or Allow the Trustee's Liens to be Adjudicated By the Bid Deadline

9. A timely adjudication or at least objection to the Trustee's lien should be a prerequisite to permitting the Debtors to pursue the sale on their proposed accelerated track.

10. The Debtors and the insider parent/DIP Lender are using the truncated timeline as a pretense to create uncertainty over the validity of the Trustee's liens.  As noted above, the Debtors refuse to commit to a reasonable timeline to object to, let alone conclusively determine, the validity of the Trustee's liens.  Incredibly, the Debtors act as if they had no access to the security documents until they were provided as a courtesy by the Trustee's professionals last week, and now require

---

[8] See *Declaration of Mark E. Chesen in Support of Debtors' Motion for Entry of Orders (I) (A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing, and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 23] at ¶ 11.

an indefinite amount of time to investigate fully the Trustee's liens. The Debtors baldly claim they cannot commit to addressing any lien dispute under the accelerated sale timeline – the very timeline that they created.[9]

11.     Lingering uncertainty over the validity of the Trustee's liens benefits no one and is completely unnecessary in these cases.[10] There is no legitimate basis for the Debtors' refusal to stipulate or challenge the Trustee's liens with the goal of having it resolved prior to the bid deadline. The Debtors and insider parent/DIP Lender are parties to the prepetition loan documents and have had them for years. The Debtors and their counsel had the responsibility to diligence the Trustee's liens prior to commencing their cases and undoubtedly did so as they contemplated a priming DIP loan, designed the junior Bridge Loan, and then designed the junior DIP loan. Even if the Debtors could credibly claim that they have not had access to the applicable security documents when they engaged bankruptcy counsel in February – they cannot – the municipal bond financing is a matter of public record and documents underlying it are publicly available. It strains credulity that the Debtors have not yet formed a view regarding the validity of the Trustee's lien.

12.     In sum, it is simply inconceivable that the Debtors and the insider parent/DIP Lender would enforce a stay on a secured creditor, impose an extraordinarily accelerated case

---

[9] In a typical chapter 11 case, a committee, coming in for the first time, may need an extended time to review the claims and liens of a secured creditor. No committee was appointed here, due to lack of creditor response. See *Statement that Unsecured Creditors' Committee Has Not Been Appointed* [Docket No. 67]. Nor is this a case where the secured lender itself has imposed the tight timeline it must abide by in dealing with potential challenges to its credit bid.

[10] The Debtors seek refuge in the Local Rules (presumably Local Rule 4001-2, though no specific citation was provided to the Trustee) to assert that this Court may not conclusively determine the validity of the Trustee's lien until the date that is 75 days from the date the Interim DIP Order was entered. The Local Rule does not dictate this outcome, particularly in a case intentionally put on an accelerated path by the Debtors and their insiders (and not the prepetition lender). The Local Rule requires, at most, that the basis for a shorter time period be explained to the Court. For the reasons detailed herein, ample reason exists here, including most critically the aggressive timeline imposed by the Debtors and their equity insiders.

timeline, seek to sell all of the Trustee's collateral, and simultaneously take the position that they cannot resolve potential lien issues within their own expedited timeline.[11]

13. If the Debtors and their insiders cannot undertake the basic function of understanding the liens and claims regarding the $185 million they borrowed to build the very Plant they seek to sell, it is difficult to see how they can comfortably claim that a third party bidder, with no background information and a dataroom that only became functional one week ago, has adequate time to diligence these assets, formulate a view, meet with management, visit the site in Indiana, inspect the equipment and vessels and draft an asset purchase agreement within the same timeframe.

14. If the Debtors wish to continue on the expedited timeline, then they must commit to an expedited timeline for resolving the Trustee's claim. The Trustee intends to file a proof of claim this week, and proposes that this Court set a deadline for the Debtors to file an objection, if any, by April 11, 2025. The Trustee will be prepared to file its response and complete briefing by April 18, 2025, at which point the matter will be fully briefed for the Court's consideration well before the proposed Bid Deadline. Any resistance by the Debtors to this or another schedule that results in consent to or adjudication of the Trustee's lien prior to the bid deadline should be seen for what it is: an effort to undercut the Trustee's right to credit bid on its own collateral.

**D. The Sale Process and These Chapter 11 Cases Are Only Benefitting the Insider Parent**

15. The Debtors' latest posture is troubling and does not serve the estates. It obviously serves only one party – the insider parent/DIP Lender in control. Indeed, given the Debtors' lack of prepetition marketing efforts and truncated proposed timeline, it appears increasingly

---

[11] The Trustee also raised the issue of value allocation, and requested language in the Bidding Procedures that if all parties could not reach global consensus on an allocation among the Trustee's collateral versus the DIP Lender's collateral (to the extent all assets are sold together), that the Court ultimately make the determination. The Trustee understands this concept was agreeable to the Debtors.

7

questionable whether these chapter 11 cases serve any valid reorganizational purpose at all or instead are only a vehicle to separate the Trustee from its collateral without paying its indebtedness and deliver that collateral to the insider parent/DIP Lender. The Prepetition Secured Parties hold over 95% of all of the Debtors' debt according to the First Day Declaration. No committee of unsecured creditors has been appointed, and the Debtors have already sought and been granted authority to pay their unsecured creditors as critical vendors, leaving the Trustee as the sole constituency that the Debtors seek to impair.

16. It appears then that this is a simple two-party dispute between the Trustee (as the Debtors' sole meaningful creditor) and the Debtors. There is no plan that is proposed and there does not appear to be any path following a sale of the Plant. Unless the Court sees serious good faith progress in the near term with respect to an actual attempt to reorganize or otherwise generate some meaningful return to the estates, the Court should consider whether the appointment of a chapter 11 trustee, dismissal of these chapter 11 cases, or other remedies to ensure that the insider parent/DIP Lender does not use these cases only as a crowbar to separate the Prepetition Secured Parties from their collateral are appropriate.[12]

### REQUEST FOR ADJOUNRMENT

17. The Debtors sought this Bidding Procedures hearing on an emergency basis in order to get the sale process underway. At the time, the Trustee did not resist given the limited information it had, the Debtors' statements it would undertake a fair process, and the importance of at least starting a sale process and getting bidders involved. However, the accelerated,

---

[12] The Trustee reserves all of its rights, including but not limited to the right to seek appointment of a chapter 11 trustee, dismissal of these chapter 11 cases, termination of the Debtors' exclusivity periods, and/or the right to seek relief from the automatic stay if the Debtors continue to run these chapter 11 cases for the sole apparent benefit of their insider parent and the pointed detriment of the Prepetition Secured Parties.

inadequate timeline imposed by the insider parent/DIP Lender and the Debtors' recent positions, are all intertwined with the proposed DIP financing the Debtors expect to fund this proposed sale process.[13] The final hearing on the DIP financing is not scheduled to be held until April 14th.

18. The evidence related to the Debtors' liquidity needs, the DIP financing and the related truncated deadline are not before the Court as part of this Motion. It is possible that the timeline can in fact be extended once the Court considers the evidence underlying the Debtors' budget at the final hearing on the DIP.

19. Accordingly, the Trustee requests the Court adjourn a hearing on the Bidding Procedures Motion until the April 14th, 2025 hearing, when it considers the DIP financing request and the other second day motions, or such later date as the DIP Motion and other second day motions may be heard.[14]

## RESERVATION OF RIGHTS

20. The Trustee objects to the Bidding Procedures Motion insofar as it seeks an expedited sale of the Trustee's collateral and provides no corresponding protections for the Trustee's right to credit bid, including a proposed timeframe for asserting challenges to the Trustee's liens. The Trustee also reserves and preserves all of its rights, including but not limited to the right to file such further or supplemental objections or responses to the Bidding Procedures Motion and/or any of the Debtors' other requests for relief, including but not limited to the right to conduct discovery and depositions in connection therewith, and request adequate notice and a

---

[13] The Trustee has significant concerns with the lack of adequate protection being provided for the imposition of the stay and the Debtors failure to demonstrate any tangible adequate protection.

[14] Notwithstanding the request for adjournment, the Trustee continues to believe any challenge or objection to the Trustee's liens and claims should be briefed and heard expeditiously, and at a minimum before the deadline for the submission of bids, including a credit bid by the Trustee.

hearing with respect to the Bidding Procedures Motion, and to appear at and be heard at any hearings thereon.

## **CONCLUSION**

WHEREFORE, the Trustee respectfully requests that the Court (i) deny the Bidding Procedures Motion unless it is modified to address the Trustee's concerns identified above, (ii) adjourn any hearing on the Bidding Procedures Motion to April 14th, 2025 or such later date as the DIP Motion and other second day motions may be heard, and (iii) grant such other and further relief as the Court deems proper.

| | |
|---|---|
| Dated: April 1, 2025<br>Wilmington, Delaware | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Matthew P. Ward*<br>Matthew P. Ward, Esq. (Del. Bar No. 4471)<br>1313 North Market Street, Suite 1200<br>Wilmington, DE 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br><br>-and-<br><br>**ARENTFOX SCHIFF LLP**<br>Andrew I. Silfen (pending *pro hac vice*)<br>Beth M. Brownstein (pending *pro hac vice*)<br>Mark A. Angelov (pending *pro hac vice*)<br>1301 Avenue of the Americas, 42nd Floor<br>New York, NY 10019<br>Telephone: (212) 484-3900<br>Facsimile: (212) 484-3990<br>Email: andrew.silfen@afslaw.com<br>           beth.brownstein@afslaw.com<br>           mark.angelov@afslaw.com<br><br>-and-<br><br>James E. Britton (pending *pro hac vice*)<br>**ARENTFOX SCHIFF LLP**<br>800 Boylston Street, 32nd Floor<br>Boston, MA 02199<br>Telephone: (617) 973-6100<br>Facsimile: (617) 367-2315<br>Email: james.britton@afslaw.com<br><br>*Counsel to UMB Bank, N.A., as Trustee* |