**IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 22, 23, 44, 74** |

## DEBTORS' REPLY IN SUPPORT OF BID PROCEDURES MOTION

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel in these chapter 11 cases (these "Chapter 11 Cases"), hereby file this reply (this "Reply") in support of the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 22] (the "Bid Procedures Motion")[2] and in response to the *Initial Objection, Request for Adjournment and Reservation of Rights of UMB Bank, N.A., as*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the Bid Procedures Motion and the Bidding Procedures, as applicable.

*Trustee, to Debtors' Bidding Procedures Motion* [Docket No. 74] (the "<u>Objection</u>") filed by UMB

Bank, N.A., as trustee and collateral agent (the "<u>Indenture Trustee</u>").  In support of this Reply, the

Debtors respectfully represent as follows:

### **Preliminary Statement**

The Debtors are endeavoring to run a sale process for the sole purpose of valuing the

Indenture Trustee's collateral.  They must do so on a timeline dictated by the funding that is

available to them.  To be clear, despite the Indenture Trustee's statements about being rebuffed

from offering financing to the Debtors, the Indenture Trustee has not made the slightest effort to

do so.  Even the most basic informational requests to the Indenture Trustee—who would provide

financing and how would they do so—were ignored.  The Indenture Trustee refused to engage in

any discussions about allowing senior financing for these Chapter 11 Cases that would have

afforded a longer sales process.  To induce consent, the Debtors offered the Indenture Trustee

either a sum certain for their collateral as part of such a process or to engage in a rational, efficient,

and streamlined process to determine the value of the Indenture Trustee's collateral.  The Indenture

Trustee's response was a refusal to discuss any options and a firmly stated intent to embark on a

scorched earth litigation path and insist on a full-blown valuation trial prior to final approval of

any senior financing, going so far as to issue discovery demands before these Chapter 11 Cases

were even filed.  That is the predicate for the posture of these Chapter 11 Cases.

Far from a rushed process, the Revised Bidding Procedures Order proposes a Bid Deadline

fifty (50) days after the Petition Date and a Sale Hearing fifty-four (54) days after the Petition

Date.[3]  In the approximately two and a half weeks since the Petition Date, that process has already

---

[3]    A revised proposed Bidding Procedures Order attached hereto as **Exhibit A** (the "<u>Revised Bidding Procedures Order</u>").  A comparison of the proposed Bidding Procedures Order marked against the Revised Bidding Procedures Order is attached hereto as **Exhibit B**.  The Revised Bidding Procedures Order incorporates certain comments received from the Indenture Trustee, but does not, for the avoidance of doubt, resolve the Objection.

been robust by any measure, involving outreach to 332 parties, including strategic buyers, liquidators, private equity funds, and other financial institutions. Parties are interested and active. Twenty-four (24) parties signed non-disclosure agreements to conduct diligence with more currently being negotiated; seventeen (17) parties accessed the virtual data room; one party conducted a site visit; two more site visits are being scheduled; and thirty-three (33) days remain until the proposed Bid Deadline. The Bidding Procedures work and are generating significant interest in the Assets, just as intended.

But assuming *arguendo* that a longer process could yield higher recoveries to creditors, the Debtors would still need someone willing to fund a DIP loan that would provide a longer runway. No such party has come forward, and the Prepetition Secured Parties' hands are shoved firmly and deeply in their pockets. Putting aside the DIP Milestones, the Debtors lack the funding to extend the timeline as the Indenture Trustee suggests. The DIP Facility runs into a maturity wall of May 18, 2025, and the total DIP financing commits to a nine (9) week sale process. Chapter 11 provides a debtor with many powers, but not the power to force a lender to lend more money or for a longer period of time. And the Prepetition Secured Parties refused to consent to the Debtors' postpetition use of cash collateral or extend any postpetition financing; they did not even agree to the Prepetition Secured Parties' prepetition claims and liens (the "Prepetition Claims and Liens") being subordinated to the Carve Out.

Yet, the Prepetition Secured Parties demand the Debtors immediately stipulate to the Prepetition Claims and Liens or otherwise agree to an arbitrary litigation schedule to a proof of claim they have not filed. The Indenture Trustee cites to no authority requiring the Debtors to stipulate to the validity or extent of liens and claims. No such authority exists because debtors and lenders negotiate stipulations to liens and claims in exchange for the consensual use of cash

3

collateral or committed financing.  Here, the Prepetition Secured Parties have not offered the Debtors any economic incentives in exchange for stipulations.  Regardless, the Debtors are investigating the Prepetition Claims and Liens and, if the Prepetition Claims and Liens are subject to dispute, the Debtors will file appropriate pleadings by April 17.  That notwithstanding, the Debtors cannot prevent any other parties from challenging the Prepetition Claims and Liens without notice and a hearing, and this Court has been reluctant to shorten the 75-day challenge period under Local Rule 4001-2(a)(i)(Q).

In the meantime, the Bidding Procedures preserve all parties' (including the Prepetition Secured Parties') credit bid rights.  Indeed, any party holding a perfected security interest in any Assets may seek to credit bid its claims for its collateral pursuant to section 363(k) of the Bankruptcy Code, although none of the Prepetition Secured Parties has confirmed whether it actually intends to submit a credit bid.[4]  To the extent the Debtors uncover any viable challenges and the Court invalidates any Prepetition Claims and Liens, the Prepetition Secured Parties' ability to credit bid may need to be reassessed if they are unwilling to escrow cash to serve as alternative consideration pending adjudication of a challenge.

The Indenture Trustee has come forth with many complaints, but fails to provide a better, or any other, path forward.  The Bidding Procedures were formulated to maximize the value of the Debtors' Assets for the benefit of their creditors and should be approved.

---

[4]  The Debtors have not been informed which of the Prepetition Secured Parties (*i.e.*, the Indenture Trustee, the holders of the Bonds themselves, or an acquisition vehicle created by the Prepetition Secured Parties) would be the potential Bidder.

## Reply

**A.      Approving the Bidding Procedures Now Is in the Best Interests of the Estates**

1.      Approval of the Bid Procedures is in the Debtors' best interests and supported by their business judgment.  *See* Chesen Declaration, ¶¶ 8, 12.  The Debtors' market outreach formally began on March 17, 2025—one day after the Petition Date.  By the time Bids are due, the marketing process will have been ongoing for nearly seven (7) weeks.  Interested bidders have been actively engaging with the Debtors since the commencement of the process.  As of the date hereof, the Debtors and SSG have reached out to 332 potential bidders, of which twenty-four (24) have signed confidentiality agreements and three (3) have scheduled, or are in the process of scheduling, site visits.  Under the Revised Bidding Procedures Order, potential Bidders will have fifty (50) days from the Petition Date to submit a Bid, and the Debtors propose the Court hold a Sale Hearing on May 9, 2025, which is fifty-four (54) days from the Petition Date.

2.      The Indenture Trustee alleges that "the sale process and the proposed Bid Procedures position the equity insider to be the winning, if not the sole, bidder" and that the marketing and sale process "will not be a competitive one."  *See* Objection, ¶¶ 4-5.  This conclusory statement, based on no evidence, is inconsistent with the level of interest SSG has received in the Debtors' Assets since the Petition Date.  The Indenture Trustee also complains of the "truncated" marketing and sale timeline.  *See* Objection, ¶¶ 4, 10, 15, 18.  Yet, the Indenture Trustee has provided no alternative whatsoever to maximize value for the Debtors' estates and stakeholders. In addition, the Indenture Trustee has provided no evidence to support its assertion that something other than the Debtors' marketing and sale process, which has already commenced and has resulted in numerous interested parties, will lead to a better source of recovery for the Debtors' stakeholders.

3.      Courts routinely approve sale timelines of this length, and have often approved significantly shorter timelines in a company's business judgment—even where there are not specific exigencies requiring a rapid sale. *See, e.g., In re Azzur Group Holdings, LLC*, No. 25-10342 (KBO) (Bankr. D. Del. Mar. 28, 2025) (approving bidding procedures that provided a bid deadline 36 days after the petition date and a sale hearing 45 days after the petition date); *In re Liberated Brands, LLC*, No. 25-10168 (JKS) (Bankr. D. Del. Mar. 5, 2025) (approving bidding procedures that provided a bid deadline 36 days after the petition date and a sale hearing 50 days after the petition date); *In re Lumio Holdings, Inc.*, No. 24-11916 (JKS) (Bankr. D. Del. Sept. 25, 2024) (approving bid procedures that provided for a bid deadline days 34 days after the petition date and a sale hearing 42 days after the petition date); *In re iSun, Inc.*, Case No. 24-11144 (TMH) (Bankr. D. Del. July 10, 2024) (approving bid procedures that provided for a bid deadline 49 days after the Petition Date and a sale hearing 57 days after the petition date); *BHCosmetics Holdings, LLC*, No. 22-10050 (CSS) (Bankr. D. Del. Jan. 28, 2022) (approving bidding procedures that provided a bid deadline 28 days after the petition date and a sale hearing 35 days after the petition date).[5]

4.      The Indenture Trustee cannot, however, seriously dispute that a public marketing and sale process is the best way to ensure the highest or otherwise best price is obtained for the Debtors' assets. *See, e.g., VFB LLC v. Campbell Soup Co.*, 482 F.3d 624, 633 (3rd Cir. 2007) ("Absent some reason to distrust it, the market price is 'a more reliable measure of the stock's

---

[5]     Even in cases involving sales to insiders, which is not a foregone conclusion in these Chapter 11 Cases despite the Indenture Trustee's specious assertions otherwise, the Debtors' proposed timeline is reasonable. *See, e.g., In re Vestis Retail Grp., LLC*, Case No. 16-10971 (LSS) (Bankr. D. Del. June 20, 2016) [Docket No. 590] (approving sale to an insider within 63 days of the petition date); *In re Karmaloop, Inc.*, Case No. 15-10635 (MFW) (Bankr. D. Del. May 21, 2015) [Docket No. 234] (approving sale to insider within 52 days of petition date); *In re Coda Holdings, Inc.*, Case No. 13-11153 (CSS) (Bankr. D. Del. June 11, 2013) [Docket No. 252] (approving sale to insider within 42 days of petition date); *In re Questex Media Grp., Inc.*, Case No. 09-13423 (MFW) (Bankr. D. Del. Nov. 24, 2009) [Docket No. 240] (approving sale to insider within 51 days of petition date).

value than the subjective estimates of one or two expert witnesses.'" (*quoting In re Prince*, 85 F.3d 314, 320 (7th Cir. 1996)); *Metlyn Realty Corp. v. Esmark, Inc.*, 763 F.2d 826, 835 (7th Cir. 1985) ("The price at which people actually buy and sell, putting their money where their mouths are, is apt to be more accurate than the conclusions of any one analyst."); *In re Ainsworth*, Case No. 17-20418, 2018 WL 5304719, at *9 (Bankr. S.D. Tex. Oct. 23, 2018) ("The best indicator of value for the marketplace is what a willing buyer would actually pay to a willing seller."); *Bank of Am. Nat. Tr. & Sav. Ass'n v. 203 N. LaSalleSt. P'ship*, 526 U.S. 434, 457 (1999) ("[T]he best way to determine value is exposure to a market.") (citation omitted).

5.     A sound business justification to sell assets outside of the ordinary course of business pursuant to section 363 of the Bankruptcy Code exists where estate assets are depleting or it is otherwise necessary to avoid a massive loss of value to the debtor's estate. *See In re Delaware & Hudson Ry. Co*., 124 B.R. 169, 179 (D. Del. 1991) (holding 363 sale was appropriate exercise of business judgment to mitigate losses); *In re Dura Auto. Sys., Inc*., Case No. 06-11202 KJC, 2007 WL 7728109, at *90 (Bankr. D. Del. Aug. 15, 2007) ("The paramount goal in any proposed sale of property of the estate is to maximize the proceeds received by the estate."); *see also In re Express, Inc*., Case No. 24-10831 (KBO) (Bankr. D. Del. June 14, 2024) [Docket No. 471] (approving 363 sale to effectuate orderly wind down); *In re Ambri Inc*., Case No. 23-10952 (LSS) (Bankr. D. Del. July 11, 2024) [Docket No. 214] (same); *In re Unconditional Love Inc*., Case No. 23-11759 (MFW) (Bankr. D. Del. Dec. 11 2023) [Docket No. 226] (same).

6.     As noted, the Indenture Trustee offers no real alternative to the Debtors' marketing and sale process.  This is not a situation where there is a separate financing proposal that would allow the Debtors to pursue a different path or where a chapter 11 plan of reorganization is feasible. Absent the Debtors stipulating to the Prepetition Claims and Liens, the Indenture Trustee's only

proposal is delay, *see* Objection ¶ 18, or the threat to seek appointment of a chapter 11 trustee or dismissal of these Chapter 11 Cases.  *See* Objection, ¶ 16.

7.      The Court should approve the Bidding Procedures now and overrule the Objection to avoid the risk of damaging a substantial ongoing marketing and sale process.

**B.      The Bidding Procedures Adequately Preserve Credit Bid Rights, and the Debtors Need Not Stipulate to the Prepetition Claims and Liens**

8.      The Objection focuses on other issues not presently before the Court, arguing that (a) the Debtors should deem the Indenture Trustee a Qualified Bidder and any credit bid submitted by the Indenture Trustee a Qualified Bid, *see* Objection, ¶ 5, or (b) that the Court should impose an arbitrary litigation schedule with respect to the validity and extent of the Prepetition Claims and Liens, *see* Objection, ¶ 14.  To be clear, the Debtors are only seeking Court approval of the Bidding Procedures, which are designed to implement a robust and competitive marketing and sale process to maximize value for the estates, *see* Chesen Declaration, ¶¶ 8, 10, 12, and not any substantive relief.  The Bid Procedures Motion does not seek to restrict any party's—including the Prepetition Secured Parties'—credit bid rights.  To the contrary, the Revised Bidding Procedures Order provides that any party with a perfected security interest in any of the Assets may seek to credit bid some or all of their claims for any of their collateral to the extent set forth in section 363(k) of the Bankruptcy Code.  *See* Proposed Bidding Procedures Order, ¶ 7.

9.      Nor does the Bid Procedures Motion prevent the Indenture Trustee from filing a proof of claim, which would be "deemed allowed, unless a party in interest . . . objects," 11 U.S.C. § 502(a), or availing itself of any other procedural mechanisms that would allow an earlier adjudication of the Prepetition Claims and Liens.  But, as of the filing of this Reply, the Indenture Trustee has not taken any of these steps to address the ostensible "[l]ingering uncertainty over the validity of the [Indenture] Trustee's liens . . . ."  *See* Objection, ¶ 11.

10.     Rather than follow the Bankruptcy Code, the Indenture Trustee complains that the Debtors have not agreed to stipulate to the Prepetition Claims and Liens.  *See* Objection, ¶¶ 5, 11. But stipulating to liens and claims is a bargained-for-exchange with a lender that has consented to use of its cash collateral, extended postpetition financing, or otherwise provided a debtor with economic concessions that fund a chapter 11 case.  Here, the Prepetition Secured Parties refused to (a) consent to the Debtors' use of their cash collateral, (b) commit postpetition financing, (c) consent to the Carve Out, or (d) provide the Debtors with any other economic benefit.  The Indenture Trustee cites to no authority—because none exists—that the Debtors must stipulate to the validity of the Prepetition Claims and Liens under any circumstances, much less those present in these Chapter 11 Cases.

11.     Yet, the Prepetition Secured Parties demand not only that the Debtors agree to such stipulations, but that they also shorten any corresponding challenge period that would bind the estates and other parties in interest.  *See* Objection, ¶ 11 n. 10 (in arguing "cause" to shorten any challenge period, "ample reason exists here, including most critically the aggressive timeline imposed by the Debtors and their equity insiders.").[6]  Consistent with their fiduciary duties, and under the oversight of the Independent Manager and CRO, the Debtors are earnestly reviewing the Prepetition Claims and Liens for any possible challenges thereto.  Put plainly, it will take the time it takes for the Debtors to responsibly investigate those liens and claims.  That said, the Debtors

---

[6]    This Court has been hesitant to find "cause" to shorten the challenge period premised upon sale timelines and credit bidding rights.  *See In re Never Slip Holdings, Inc.*, Case No. 24-10663 (LSS), Apr. 3, 2024 Hr'g Tr. 91:18-25; 92:1 ("And what's the special circumstance here?  Quite frankly, there's no special circumstance here.  We get quick sale cases all the time.  We get quick credit bid cases all the time.  We just get quick cases all the time. And I don't see anything special here.  And parties do know how to work around a credit bid.  They may not like the alternatives, but we did it for years. . . .  What are the special exceptional circumstances here where we should permit this?").  In any event, other parties cannot be bound to stipulations without the Indenture Trustee first seeking relief upon proper notice.

9

intend to complete this review and, if the Prepetition Claims and Liens are subject to dispute, the Debtors will file appropriate pleadings by April 17.

12.    To the extent the Debtors uncover any viable challenges and the Court invalidates any Prepetition Claims and Liens, the Prepetition Secured Parties' ability to credit bid may need to be reassessed.  However, that is an issue for another day because one thing is certain—the Indenture Trustee should not be permitted to holdup Bidding Procedures to coerce the Debtors to prematurely investigating the Prepetition Claims and Liens.

13.    Accordingly, the Debtors submit the Bid Procedures should be approved now to facilitate a process that has a real opportunity to maximize value for the Debtors' estates.

### Conclusion

WHEREFORE, for the reasons set forth above, the Debtors respectfully request that the Court overrule the Objection and grant the relief requested in the Bidding Procedures Motion and awarding such other and further relief as the Court deems just and proper.

Dated: April 2, 2025
     Wilmington, Delaware

Respectfully submitted,

*/s/ Brett M. Haywood*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Brett M. Haywood (No. 6166)
Katelin A. Morales (No. 6683)
James R. Risener III (No. 7334)
Andrew C. Ehrmann (No. 7395)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
      rmcneill@potteranderson.com
      bhaywood@potteranderson.com
      kmorales@potteranderson.com
      jrisener@potteranderson.com
      aehrmann@potteranderson.com

*Proposed Counsel to the Debtors and Debtors
in Possession*

11

12153043v.1