## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re: | Chapter 11 |
| Brightmark Plastics Renewal LLC, *et al.*,[1] | Case No. 25-10472 (LSS) |
| Debtors. | (Jointly Administered) |
| | **Re: Docket Nos. 26 & 52** |

### DEBTORS' REPLY IN SUPPORT OF THEIR MOTION FOR ENTRY OF FINAL ORDER (I) AUTHORIZING THE DEBTORS TO OBTAIN POSTPETITION FINANCING; (II) GRANTING LIENS AND SUPERPRIORITY ADMINISTRATIVE EXPENSE CLAIMS SUBJECT TO CERTAIN PERMITTED LIENS; (III) GRANTING ADEQUATE PROTECTION; (IV) MODIFYING THE AUTOMATIC STAY; AND (V) GRANTING RELATED RELIEF

The above-captioned debtors and debtors in possession (collectively, the "Debtors"), by and through their undersigned counsel in these chapter 11 cases (these "Chapter 11 Cases"), hereby submit this reply (this "Reply") in support of final approval of the *Debtors' Motion for Entry of Interim and Final Orders (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims Subject to Certain Permitted Liens; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 26] (the "DIP Motion")[2] and in response to the *Preliminary and Limited Objection and Reservation of Rights of UMB Bank, N.A., as Trustee, to Debtors' DIP Financing Motion* [Docket No. 90] (the "Objection") filed by UMB Bank, N.A., as trustee and collateral agent (the "Indenture Trustee").  In support of this Reply, the

---

[1]   The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789).  The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2]   Capitalized terms used but not otherwise defined herein shall have the respective meanings ascribed to them in the DIP Motion.

Debtors rely upon the *Declaration of Craig R. Jalbert in Support of Chapter 11 Petitions and First Day Motions* (the "First Day Declaration"), the *Declaration of Craig R. Jalbert in Further Support of Debtors' DIP Motion* (the "Jalbert Declaration") filed contemporaneously herewith, and the proposed *Final Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims Subject to Certain Permitted Liens; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* (the "Proposed Final Order"), filed contemporaneously herewith, and respectfully represent as follows:

## REPLY

1.      The DIP Motion seeks approval of necessary financing to allow the Debtors to continue working towards their goal of reducing plastic waste across the globe.  The DIP Facility will allow the Debtors to continue to build out and improve the Circularity Center, fund their day-to-day operations, and fund the costs of these Chapter 11 Cases – all while the Debtors and their advisors work towards completing a successful value-maximizing sale process.

2.      As further explained in the DIP Motion, the DIP Lender initially proposed to provide postpetition financing on a senior secured basis.  This proposal would have primed the Prepetition Secured Parties, on a non-consensual basis, and contemplated a roll-up of the Bridge Loan.  In an effort to avoid unnecessary, lengthy, and expensive litigation during the Chapter 11 Cases, the DIP Lender agreed to provide the debtor in possession financing on a ***junior*** secured basis to the over $170 million of Prepetition Obligations.  Despite the effort to avoid litigation and the DIP Lender's concession to provide junior financing, leaving the Prepetition Secured Parties virtually unharmed, the Indenture Trustee continues to complain about the terms of DIP Facility.

2

**A.    The Prepetition Secured Parties Are Adequately Protected.**

3.    The Indenture Trustee asserts that the adequate protection the Debtors are proposing to provide is "illusory."  This is simply not true.

4.    The purpose of adequate protection "is to protect a secured creditor from *diminution in the value of its interest* in the particular collateral during the period of use by the debtor."  *In re Satcon Tech. Corp.*, 2012 WL 6091160, at *6 (Bankr. D. Del. Dec. 7, 2012) (emphasis added); *see also In re Beker Indus. Corp.*, 58 B.R. 725, 736 (Bankr. S.D.N.Y. 1986) (noting that the application of adequate protection "is left to the vagaries of each case . . . but its focus is protection of the secured creditor from diminution in the value of its collateral during the reorganization process") (citation omitted), *rev'd on other grounds*, 89 B.R. 336 (S.D.N.Y. 1988). Accordingly, the Prepetition Secured Parties are only entitled to adequate protection to the extent their collateral (the "Prepetition Bond Collateral") is diminished in value.  The Debtors submit that the Prepetition Bond Collateral will not be diminished in value during the pendency of the Chapter 11 Cases and, thus, the Prepetition Secured Parties are not entitled to adequate protection.

5.    The Prepetition Bond Collateral can be categorized in two buckets – "Working Capital" and "Hard Assets" – each of which will not suffer diminution in value during the Chapter 11 Cases.

6.    The Debtors' Working Capital includes cash on hand, accounts receivable, finished goods, and raw materials.  First, the value (or estimated value) of cash on hand as of the Petition Date was $140,000; as of March 31, 2025 was $140,000; and as of May 9, 2025 (the date of the Sale Hearing) is projected to be $380,000.  Jalbert Declaration, ¶ 6.  Second, the value (or estimated value) of accounts receivable: as of the Petition Date was $140,000; as of March 31, 2025 was $140,000; and as of May 9, 2025 is projected to be $330,000.  *Id.*  Third, the value (or estimated value) of finished goods: as of the Petition Date was $470,000; as of March 31, 2025 was $560,000;

3

and as of May 9, 2025 is projected to be $560,000. *Id.* Finally, the value (or estimated value) of raw materials: as of the Petition Date was $80,000; as of March 31, 2025 was $80,000; and as of May 9 is projected to be $100,000. *Id.* Comparing the values of each subcategory of the Debtors' Working Capital, not only has the Prepetition Bond Collateral not diminished in value, but actually increased in value by $90,000 and is expected to increase in value by another $450,000 by the time of the Sale Hearing. *See* Jalbert Declaration, ¶ 6.

7.    Moving on to the next bucket of the Prepetition Bond Collateral, the Debtors' Hard Assets consist of the Debtors' real property (the Circularity Center), fixtures, and related equipment. The Debtors submit that any depreciation in value of the Debtors' Hard Assets is merely theoretical. First, the Debtors' sale timeline only extends approximately seven (7) weeks – from the Petition Date (March 16, 2025) through the date of the Sale Hearing (May 9, 2025). These seven (7) weeks is not a significant amount of time to lapse that would cause any real depreciation in value of the Debtors' Hard Assets. Second, despite the fact that there would likely be little depreciation of the Hard Assets, just by virtue of the Debtors' expedited sale timeline, the Debtors are proposing to invest, and have been investing, in the upkeep, maintenance, and improvement of the Hard Assets. In fact, the Approved Budget contemplates spending $2,472,938 in "HSE & Maintenance," which includes capital expenditures, over the 9-week budget period. *See* Interim DIP Order,[3] Exhibit 2. As noted in the Jalbert Declaration, since the Petition Date the Debtors have spent approximately $787,825 in preserving, maintaining, and improving upon the Prepetition Secured Parties' collateral. Jalbert Declaration, ¶ 7. Specifically, the Debtors have used the proceeds of the DIP Facility to pay the costs of repair and maintenance of the Debtors'

---

[3]    "Interim DIP Order" shall mean the *Interim Order (I) Authorizing the Debtors to Obtain Postpetition Financing; (II) Granting Liens and Superpriority Administrative Expense Claims Subject to Certain Permitted Liens; (III) Granting Adequate Protection; (IV) Modifying the Automatic Stay; (V) Scheduling a Final Hearing; and (VI) Granting Related Relief* [Docket No. 52].

equipment, industrial cleaning of the Circularity Center and the equipment therein, contractors to assist in the operation of the Debtors' equipment, and improvements on certain of the Debtors' equipment central to the production of pyrolysis oil and clean hydrocarbon. *Id.* Accordingly, not only will the Prepetition Bond Collateral suffer no diminution in value during the pendency of the Chapter 11 Cases, the bankruptcy process will have likely increased the value of the Prepetition Secured Parties collateral, evidenced by the Debtors spending over $2 million in repair, upkeep, and improvement of the Hard Assets.

8.    Nonetheless, the Debtors propose to provide the Prepetition Secured Parties with various forms of other adequate protection to further protect against diminution in value of the Prepetition Bond Collateral, if any.[4] Specifically, the DIP Motion contemplates providing the Prepetition Secured Parties with Bond Adequate Protection Liens and Bond Adequate Protection Superpriority Claims (collectively, the "Adequate Protection Liens and Claims"). Thus, by virtue of the Debtors continuing to operate during the Chapter 11 Cases, made possible by the proposed DIP Facility, and the proposed Adequate Protection Liens and Claims, the Prepetition Secured Parties are adequately protected.

**B.    The Indenture Trustee's Objections Are Meritless.**

9.    Despite the fact that the proposed DIP Facility allows for the enhancement of the of the Prepetition Bond Collateral, the Indenture Trustee demands that it be provided (i) payment

---

[4]    In the DIP Motion, the Debtors assert that because a portion of the proceeds of the DIP Facility will be used to pay certain prepetition creditors that hold Statutory Liens (which would likely be senior to the Bond Liens), the position of the Bond Liens will be increased. *See* DIP Motion, ¶¶ 51, 83. The Indenture Trustee correctly argues that under Indiana law, it is unlikely that these Statutory Liens would prime the Bond Liens. Objection, ¶¶ 15-17. But, the Indenture Trustee fails to acknowledge that, under Indiana law, if a senior lien holder forecloses upon its collateral, the foreclosure does not extinguish the junior lien on such collateral. *See* Ind. Code § 32-28-3-2. Additionally, if the proceeds of the sale of a property subject to a lien are insufficient to pay all claimants, the court will order the claimants to be paid in proportion to the amount due each claimant. Ind. Code § 32-28-3-8. Accordingly, the payment to holders of Statutory Liens, even if junior to the Bond Liens, results in a dollar-for dollar benefit to the Prepetition Secured Parties.

of its professional fees through the Approved Budget; (ii) "reasonable information rights" with respect to the Prepetition Bond Collateral; (iii) waiver of 506(c) rights; and (iv) information on the Debtors' winddown plans. *See* Objection, ¶ 6. The Debtors will address each of the Indenture Trustee's demands in turn.

### i. *Payment of the Indenture Trustee's Professional Fees*

10. As noted above and based on the evidence provided, the Prepetition Bond Collateral will likely not suffer any diminution of value as a result of the Chapter 11 Cases. Further, the Debtors propose to provide the Prepetition Secured Parties with the Adequate Protection Liens and Claims. Additional adequate protection is not warranted here.

### ii. *Information Rights with Respect to the Prepetition Bond Collateral*

11. The Debtors plan on continuing to provide the information and reporting the Indenture Trustee is entitled to under the Prepetition Credit Documents. Additionally, the Debtors will provide the Prepetition Secured Parties with the same information and reporting as the DIP Lender.

12. Further, the Debtors continue to work to respond to the information requests sent by FTI, the Indenture Trustee's financial advisor, on April 2, 2025. To date, the Debtors have responded to substantially all of the Indenture Trustee's requests and will continue to respond as other information requests are made.

### iii. *Waiver of 506(c) Rights*

13. The Indenture Trustee is correct that the Debtors are not proposing to waive their rights under section 506(c) of the Bankruptcy Code. First, the U.S. Trustee has insisted that the Debtors not waive their rights under section 506(c) of the Bankruptcy Code. Second, the Debtors

intend to have the Court fully adjudicate whether surcharge of the Prepetition Bond Collateral is appropriate in this case.

*iv.  Information on the Debtors' Winddown Plans*

14.     The Indenture Trustee asserts that it is entitled to a precise articulation from the Debtors concerning their plan for these Chapter 11 Cases post-sale.  This demand, the Indenture Trustee claims, stems from its concern that, in the event the sale is unsuccessful, the Indenture Trustee will be left with, among other contingencies, the pyrolysis oil currently stored at the Circularity Center.  *See* Objection, ¶ 6.

15.     First, the Debtors do not foresee an unsuccessful sale process and are working diligently to ensure a fair, value-maximizing process.  Out of the 331 parties SSG Advisors, LLC, the Debtors' proposed investment banker, contacted, 25 have signed non-disclosure agreements, 19 have accessed the data room, 1 has conducted a site visit, and 2 have scheduled site visits. Jalbert Declaration, ¶ 9.

16.     Second, the Debtors intend to have a responsible end to the Chapter 11 Cases, whether the sale process is successful or not.  It is currently too early for the Debtors to determine what that responsible end looks like, nor are the Debtors required to, at this point, precisely articulate that.

17.     Third, if the sale process is unsuccessful, the Debtors may indeed tender their collateral back to secured creditors, including the Prepetition Secured Parties.  Nothing in the Bankruptcy Code prevents the Debtors from doing so.

12153043v.1

## <u>CONCLUSION</u>

WHEREFORE, for the reasons set forth above and in the DIP Motion, the Debtors respectfully request that the Court overrule the Objection and enter the Proposed Final Order.

Dated: April 9, 2025
      Wilmington, Delaware

Respectfully submitted,

*/s/ Katelin A. Morales*
Jeremy W. Ryan (No. 4057)
R. Stephen McNeill (No. 5210)
Brett M. Haywood (No. 6166)
Katelin A. Morales (No. 6683)
James R. Risener III (No. 7334)
Andrew C. Ehrmann (No. 7395)
**POTTER ANDERSON & CORROON LLP**
1313 N. Market Street, 6th Floor
Wilmington, Delaware 19801
Telephone: (302) 984-6000
Facsimile:  (302) 658-1192
Email: jryan@potteranderson.com
      rmcneill@potteranderson.com
      bhaywood@potteranderson.com
      kmorales@potteranderson.com
      jrisener@potteranderson.com
      aehrmann@potteranderson.com

*Proposed Counsel to the Debtors and Debtors in Possession*

12153043v.1