## EXHIBIT B

1

```
 1                    UNITED STATES BANKRUPTCY COURT
                          DISTRICT OF DELAWARE
 2

 3    IN RE:                       .  Chapter 11
                                   .  Case No. 25-10472 (LSS)
 4    BRIGHTMARK PLASTICS          .
      RENEWAL LLC, et al.,         .
 5                                 .  3rd Floor, Room 3209
                                   .  844 King Street
 6                 Debtors.        .  Wilmington, Delaware 19801
                                   .
 7                                 .  Wednesday, April 23, 2025
      . . . . . . . . . . . . . . .  1:00 p.m.
 8

 9                       TRANSCRIPT OF TELEPHONIC
                 SECTION 341(a) MEETING OF CREDITORS
10

11    APPEARANCES:

12    For the U.S. Trustee:     Benjamin A. Hackman, Esquire
                                UNITED STATES DEPARTMENT OF JUSTICE
13                              OFFICE OF THE UNITED STATES TRUSTEE
                                J. Caleb Boggs Federal Building
14                              844 King Street
                                Suite 2207, Lockbox 35
15                              Wilmington, Delaware 19801

16    For the Debtors:          Katelin A. Morales, Esquire
                                Ethan H. Sulik, Esquire
17                              POTTER ANDERSON & CORROON, LLP
                                1313 North Market Street
18                              6th Floor
                                Wilmington, Delaware 19801
19

20    Audio Operator:           Electronic recording

21    Transcription Company:    Reliable
                                The Nemours Building
22                              1007 N. Orange Street, Suite 110
                                Wilmington, Delaware 19801
23                              Telephone: (302)654-8080
                                Email:  gmatthews@reliable-co.com
24
      Proceedings recorded by electronic sound recording,
25    transcript produced by transcription service.
```

1 | APPEARANCES (CONTINUED):

2 | For Consolidated
Mechanical:                    Lynne B. Xerras, Esquire
3 |                                HOLLAND & KNIGHT, LLP
                                10 St. James Avenue
4 |                                11th Floor
                                Boston, Massachusetts 02116
5 |

6 |

7 | ALSO APPEARING:

8 | For the Debtors:               Edward Scherr, Vice President of
                                Finance and Chief Accounting Officer
9 |                                BRIGHTMARK ENERGY
                                1725 Montgomery Street
10 |                               Floor 3
                                San Francisco, California  94111
11 |

12 |

13 |

14 |

15 |

16 |

17 |

18 |

19 |

20 |

21 |

22 |

23 |

24 |

25 |

1                                INDEX

2

MOTIONS:                                              PAGE

3
341(a) Creditors' Meeting                                4

4

5

6          EXAMINATION OF CRAIG R. JALBERT

7               Examination by Mr. Hackman               6

8

9

10

11  Transcriptionist's Certificate                       25

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1          (Proceedings commenced at 1:03 p.m.)

2                THE OPERATOR:  ...conference call.

3                At this time, all participants are in a listen-

4    only mode.  Later, we will conduct a question-and-answer

5    session.  Instructions will be given at that time.

6                If you should require assistance during the call,

7    please press star, then zero.

8                I would now like to turn the conference over to

9    your host, Benjamin Hackman.

10               Please go ahead.

11               MR. HACKMAN:  Thank you.

12               Good afternoon, everyone.  We are on the record on

13   April 23rd, 2025, a few minutes after 1:00 p.m. for the

14   Section 341 meeting of creditors for Brightmark Plastics

15   Renewal LLC and its affiliated debtors.  The lead case is

16   number 25-10472.  Those cases are pending before Judge

17   Silverstein.  The Chapter 11 petitions were filed on

18   March 16th, 2025.

19               My name is Ben Hackman; I'm a trial attorney with

20   the U.S. Trustee's Office in Wilmington, Delaware.

21               This is a meeting of creditors, so creditors will

22   have an opportunity to ask questions of the witness about the

23   debtors' assets, liabilities, and financial affairs after my

24   examination.

25               The purpose of this meeting is to give creditors

1  and parties in interest a chance to examine the debtors'

2  financial affairs.  The purpose is not to address the

3  specific circumstances of each creditor.  This meeting is not

4  a substitute for discovery in connection with an adversary

5  proceeding.

6           The audio of this meeting is being recorded, so I

7  ask that you please verbalize all responses to the questions

8  posed.

9           At this time, I would ask debtors' counsel to

10  introduce themselves and the witness, please.

11           MS. MORALES:  Thank you.

12           My name is Katelin Morales; I'm from Potter

13  Anderson & Corroon.  We are the debtors' bankruptcy counsel.

14           On the line, I have my colleague Ethan Sulik.

15  From the debtors, we have Craig Jalbert, who is the chief

16  restructuring officer and Ed Scherr, who's the vice president

17  of finance.

18           MR. HACKMAN:  Thank you, and good afternoon.

19           Ms. Morales, I believe Mr. Jalbert is going to be

20  the primary witness this afternoon; is that right?

21           MS. MORALES:  Yes, that's correct.

22           MR. HACKMAN:  Okay.  Mr. Jalbert, can you hear me

23  okay?

24           MR. JALBERT:  I sure can, thank you.

25           MR. HACKMAN:  Okay.  I guess I'd like to start by

1  administering the oath.

2        If you could please raise your right hand.

3       CRAIG R. JALBERT, DEBTORS' WITNESS, SWORN.

4       THE WITNESS:  I do.

5                           EXAMINATION

6  BY MR. HACKMAN:

7  Q    You're the debtors' chief restructuring officer; is

8  that right?

9  A    Each of the debtors, yes.

10 Q    How long have you held that position?

11 A    Since the beginning of March; exactly what date, I

12 don't recall off the top of my head, by I'm sure I can check

13 it out in my declaration.  It's near the beginning of March.

14 Q    Okay.  Could you please verify the debtors' corporate

15 address?

16 A    Okay.  I've got to find that.

17       THE WITNESS:  Katelin, is that easiest to find on

18 the schedules?  Where would be easiest to find that?

19       MS. MORALES:  Yes, the schedules or in the

20 footnote to your first day declaration, as well.

21       I can also jump in.

22       THE WITNESS:  All right.  I found it.

23       The headquarters is at 1725 Montgomery Street,

24 third floor, San Francisco, California, 94111.

25 //

1  BY MR. HACKMAN:

2  Q      Thank you.

3         Is that where the debtors' books and records are

4  maintained?

5  A      Yes.

6  Q      What do the debtors' business operations consist of?

7  A      Well, it's an environmental company.  It works on

8  recycling plastics through very sophisticated processes to

9  create pyrolysis oil.  They've been -- since -- they've been

10  in business since, roughly, 2019.  They've been producing for

11  a couple of years now.  But it is environmental recycling,

12  very sophisticated recycling.  They refer to themselves,

13  they're just building a Circularity Center.  And they are --

14  they have been producing, like I said, for a couple of years

15  now.

16  Q      Where do the debtors operate?

17  A      Well, the actual facility is in Ashley, Indiana.

18  Q      Have the debtors been operating their business post-

19  petition?

20  A      They have.

21  Q      What percent of the maximum capacity is the debtors'

22  plant currently operating at?

23  A      Approximately 5 percent.

24  Q      Do you expect that number to change significantly

25  during the case?

1  A      No.

2  Q      Do you know approximately how many employees the

3  debtors has?

4  A      Approximately 98 employees and I believe there are an

5  additional 15, give and take, subcontractors that work at the

6  facility as well.

7  Q      Do you except those numbers to change significantly

8  post-petition?

9  A      No, sir.

10 Q      I know the debtors' Schedules of Assets and Liabilities

11 and the Statements of Financial Affairs have been filed.

12        Could you describe for me, please, just in general

13 terms, what the debtors' main assets consist of?

14 A      Well, the main assets are -- is the facility in Ashley,

15 Indiana, and all the requisite equipment and parts that are

16 going into it.  If you'd like to speak about that, we could

17 probably go into some of the filings and I can go into my

18 declaration.

19        But it is a declaration that was built over a number of

20 years; it was funded by bonds.  It's -- roughly, $172 million

21 came in from the bonds to build this facility.  It's very

22 large, very sophisticated, with lots of -- not only do you

23 have a building, but you have significant equipment on the

24 inside and outside of the building.

25 Q      And the debtors' own that facility, as opposed to lease

1  it?

2  A    Correct.

3  Q    Okay.  Do the debtors own the real estate where the

4  facility is located?

5  A    I believe they do, but we can check the schedules when

6  we get there.  If you want to jump ahead, we can.

7  Q    Okay.  Can you describe for me, please, in general

8  terms, what the debtors' liabilities consist of?

9  A    Of course, the bondholders, roughly, a hundred and

10  seventy to $180 million are due to the bondholders.  There

11  was a prepetition lender that did some financing up until the

12  time of the filings and then that same lender has done some

13  post-petition DIP financing, as approved by the Court.  Those

14  are the biggest creditors.  The rest of the creditors are

15  general unsecured creditors, for the most part and they are

16  listed in all of the schedules and I believe there was

17  about 20,000 when the petitions were filed.

18  Q    Okay.

19  A    Or about 30, rather.

20  Q    Why did the debtors file for bankruptcy?

21  A    They no longer had the resources to continue to

22  operate.

23  Q    Okay.  Had the debtors filed for bankruptcy previously

24  before these cases?

25  A    No.

1  Q     My understanding is the debtors are generally pursuing

2  a Section 363 sale process for their assets.

3        Is that accurate?  Do I have that right?

4  A     I'm not going to opine on the 363, but they are

5  definitely working on a very vigorous sale process during the

6  pendency of this bankruptcy.

7  Q     Okay.  As we sit here now, have the debtors designated

8  a stalking horse bidder for their assets?

9  A     No.

10 Q     Have the debtors completed any analysis about the

11 validity or extent of the prepetition bonds?

12 A     I believe that's under review.

13 Q     Have the debtors filed a claim objection to the

14 prepetition bonds?

15 A     No.

16 Q     Okay.  I would like to authenticate the Chapter 11

17 petitions next.

18       Do you have a copy of the lead debtor's Chapter 11

19 petition with you?

20 A     I do.

21 Q     If you turn to page 4 of that document, there is a

22 signature block --

23 A     Yes.

24 Q     -- one for the company and one counsel.

25       Do you see where that is?

1    A      Hold on.  I'm getting there.

2           Page 4, you said?

3    Q      Yes, page 4.

4    A      Okay, yes.

5    Q      Is that your eSignature?

6    A      It is.

7    Q      Okay.  Did you help to prepare the Chapter 11 petition?

8    A      Well, I was involved, but there -- this was primarily

9    prepared by the counsel, Potter Anderson, with the assistance

10   of many people from the debtor and myself.

11   Q      Okay.  Did you review the petition before you e-signed

12   it?

13   A      I did.

14   Q      Is the information in the petition true and correct to

15   the best of your knowledge?

16   A      Yes.

17   Q      Are there any amendments that would need to be made to

18   the petition that you're aware of?

19   A      I'm not aware of any yet.

20   Q      Okay.  If I were to ask you these same questions about

21   the Chapter 11 petitions for the other jointly-administered

22   debtors, would your answers be the same?

23   A      They would.

24   Q      Okay.  And can you describe for me, please, what types

25   of insurance the debtors have in place.

1  A      There is a motion filed regarding insurance, but it's

2  effectively every insurance that was in place prepetition and

3  would be customarily, in business, is, in fact, in place:

4  general liability, workers' compensation -- I'm trying to

5  think of -- but, literally, every insurance that was in place

6  prepetition is still in place after, since the petitions were

7  filed.

8  Q      Okay.  To your knowledge, is the facility insured?

9  A      Yes.

10 Q      Okay.

11 A      Yes, it is insured.  It is, to my knowledge, and yes,

12 it is insured.

13 Q      Okay.  Are the debtors current on their tax

14 liabilities?

15 A      They are.

16 Q      Have the debtors received a copy of the U.S. Trustee

17 Guidelines?

18 A      Yes.

19 Q      Do you understand the debtors' obligation to file

20 operating reports and to pay quarterly fees during the case?

21 A      I do.

22 Q      Okay.  Are you aware of any fraud or mismanagement that

23 has occurred at the debtors?

24 A      Absolutely none.

25 Q      Okay.  I had just a few questions about the schedules

1   of assets and liabilities and statements of financial

2   affairs.

3        Do you have a copy of the lead debtor's schedules; I

4   believe they're filed at Docket Item 143?

5   A    The schedules or the SOFAs -- I have both -- which one

6   are you asking about?

7   Q    I have questions about a couple of them.

8        I guess, let's -- if you could turn, please, to the

9   lead debtor's schedules.

10  A    Okay.

11  Q    I believe it's Docket Item 143.

12  A    Yes, got it.

13  Q    If you -- starting on page 19 of 35 --

14  A    Okay.

15  Q    -- this is Schedule E/F:  Creditors Who Have Unsecured

16  Claims.  Part 1 lists --

17            MS. MORALES:  (Indiscernible) --

18            MR. HACKMAN:  Sorry.

19            MS. MORALES:  Sorry.

20            This is Katelin Morales from Potter Anderson.  I

21  just want to make sure we're all looking at the right

22  document.

23            MR. HACKMAN:  Okay.

24            MS. MORALES:  The lead debtor's schedules is a

25  Docket 147.  I just wanted to make sure we're all looking at

1  the same thing.

2          MR. HACKMAN:  Sorry.  Thank you for that.  I

3  apologize.  You're right.

4  BY MR. HACKMAN:

5  Q    I'm looking at Docket Item 143 and, yes, it's

6  Brightmark Plastics Renewal Services LLC.  Sorry about that.

7  A    So, which one do you want; if you need to do 143 or

8  need to do 147?

9  Q    143.

10 A    Okay.

11 Q    If you turn to page 19 of 35, it's Schedule E/F:

12 Creditors Who Have Unsecured Claims, part 1 lists creditors

13 with priority claims and then Part 2 is creditors with non-

14 priority claims.

15          As I look at Part E/F, it looks like all of the

16 priority claims are listed in unknown and unliquidated

17 amounts.

18 A    Yes.

19 Q    And in Part 3 or Part 2, where it talks about non-

20 priority unsecured claims, there's still a number of claims

21 that are listed in unknown, unliquidated amounts.

22          Do you know why there's so many claims that are listed

23 in unknown amounts?

24 A    I do.

25          The debtor, prepetition, tried to pay, substantially,

1  all of their general unsecured creditors in full, prior to

2  the filing.  What was -- what they did not know,

3  notwithstanding very intelligent people and sophisticated

4  systems, was there were numerous centers that had been

5  supplying goods and services to the debtor prepetition, but

6  for which no invoicing or billing had been received by the

7  debtors.

8       So the creditors that are listed here as unknown,

9  substantially, all of them have been what the debtor thinks

10 are existing liabilities.  They just didn't know how much

11 because of the fact that there were no billings and no

12 statements from the various vendors as to what goods and

13 services had been delivered prepetition.

14 Q    Okay.  So it was a function of the vendors not issuing

15 invoices, as opposed to there being an internal issue with

16 the debtor's billing records or accounting system.

17      Would that be a fair statement?

18 A    Well, I would say that there's nothing wrong with their

19 systems --

20 Q    Okay.

21 A    -- there's nothing wrong with the people.

22      This is entirely -- they could not know what the value

23 of the goods and services were billed prepetition until they

24 get documentation from the various vendors.  So it was a

25 timing item --

1  Q      Got it.  Okay.  Thank you?

2  A      -- and (indiscernible) problems.

3  Q      Okay.  I had a question about Docket Item 145.

4  A      Yes, sir.

5  Q      This is the schedules of assets and liabilities for

6  Brightmark Plastics Renewal Indiana LLC.

7  A      You said 145?

8  Q      Yes, sir.  And I see the metadata at the top of the

9  page, it says that there are 71 pages in the document.

10        I had a question about page 22 of 71.

11 A      I'll be there in a minute.

12 Okay.

13 Q      Item -- at the top of the page, Item 55.1 shows

14 acreage --

15 A      Yes.

16 Q      -- in, Ashley, Indiana.

17        Do you know if this Item 55.1 is the land where the

18 facility was built?

19 A      That is my understanding.

20 Q      Okay.  If you could turn, please, further down in this

21 document to page 64 of 71.

22 A      Yes, sir.

23 Q      I'm sorry, give me one moment.  I had the page number

24 wrong.

25        (Pause)

1  BY MR. HACKMAN:

2  Q    Sorry, I apologize.

3        If you could -- could you turn back, please, to page 27

4  of 71.

5  A    Sure.

6        Yes.

7  Q    Item 2.4 lists debt as being yesterday to UMB Bank as

8  trustee and collateral agent, senior secured bond debt in an

9  amount of $172.6 million.

10 A    (Inaudible.)

11 Q    Are any of the debtors' nondebtor affiliates guarantors

12 on any of the prepetition bond debt?

13 A    That would -- I believe there is some amount of cross-

14 collateralization.  So, we could probably check on co-debtors

15 on Schedule H.

16        MS. MORALES:  I can chime in.

17        This is Katelin Morales from Potter Anderson.

18        THE WITNESS:  Go ahead.

19        MS. MORALES:  Yes.  So, no nondebtor affiliates

20 are co-debtors on the bond debt --

21        MR. HACKMAN:  Okay.

22        MS. MORALES:  -- but there are some co-debtors

23 that are liable under the bond debt and that's, specifically,

24 the lead debtor, Brightmark Plastics Renewal.

25        MR. HACKMAN:  Got it.  Okay.

1          THE WITNESS:  Thank you.

2          MS. MORALES:  Thanks.

3    BY MR. HACKMAN:

4    Q    On -- I had another question about page 67 of 71.

5    A    Yes.

6    Q    And at the bottom of that page, Item 2.79 refers to a

7    special warranty deed and then it identifies the Town of

8    Ashley, Indiana.

9          Do you know what this is referring to, and if you do,

10   could you provide any more information about what this

11   special warranty deed is for?

12   A    I do not recall.

13          THE WITNESS:  Katelin, do you recall?

14          MS. MORALES:  I do not.

15          But, Ed, if you have any insight into this; if

16   not, we can follow up with you at a later time, if that's

17   okay, Ben?

18          MR. HACKMAN:  Sure.

19          MR. SCHERR:  I think we need to follow up, we

20   should follow up.

21          MR. HACKMAN:  No problem.  Thank you.

22   BY MR. HACKMAN:

23   Q    I had a couple questions about the Brightmark Plastics

24   Renewal Indiana LLC statement of financial affairs, which I

25   believe is Docket Item 146.

1  A      I've got too many things open; I'm getting confused

2  where I am.  Just give me one second just to clean up my --

3         Okay.  You said 146?

4  Q      Yes, sir.

5  A      Okay.  So, this lead debtor SOFA?

6  Q      I believe it's the Brightmark Plastics Renewal

7  Indiana LLC SOFA.

8  A      My 146 is Brightmark Plastics Renewal LLC, Case Number

9  10472, the lead debtor, 42 pages.

10         Is mine marked wrong?

11         MS. MORALES:  No, that's right, Craig; that's the

12  caption.  If you look a little bit lower, it says, "Indiana,

13  Case Number 10473."  So you're looking at the right document,

14  I believe.

15         THE WITNESS:  Okay.  So, it might be I'm looking

16  at the actual, the notes go on the wrong side and not the

17  actual.  So, yes, (indiscernible) I understand I'm in the

18  right place now.

19  BY MR. HACKMAN:

20  Q      Okay.

21  A      What was the question?

22  Q      I had a question about Item 23.  It starts on page 37

23  of 42.

24  A      Okay.

25  Q      Item 23 asks about governmental units otherwise

1 notifying the debtor that the debtor may be liable or

2 potentially liable under environmental law and there are

3 several items listed here.

4       Do you know, generally, what circumstances gave rise to

5 the items that are listed here?

6 A     I really don't.

7            THE WITNESS:  Katelin, do you?

8            MS. MORALES:  We can follow up with more

9 specifics, but it's my understanding that the debtors are not

10 liable under any environmental law, but the Government does

11 check in from time to time about certain things, but again,

12 we can follow up.  But it's my understanding that they're not

13 currently liable.

14            MR. HACKMAN:  Okay.

15            THE WITNESS:  Yeah, and I believe there are

16 certificates in place and licenses and the like --

17 BY MR. HACKMAN:

18 Q     Okay.

19 A     -- but I'm not aware of any particular governmental

20 notice of some sort of, of any kind of violation or anything

21 like that.

22 Q     Okay.

23            MR. HACKMAN:  Katelin, do you know, you offhand,

24 if the -- I guess if we could follow up after the meeting

25 about whether the governmental units that are listed here

1  have received notice of the bankruptcy cases; I would want to

2  follow up on that.

3          MS. MORALES:  Yes, I believe they have, but I will

4  just make sure with our claims and noticing agent.

5          MR. HACKMAN:  Okay.

6          THE WITNESS:  Yeah, I was pretty sure that all,

7  every single address and every single entity on this is in

8  our matrix.

9          MR. HACKMAN:  Okay.  Thank you.

10          Those were all the questions that I had.

11          Mr. Operator, I think we're ready to open the line

12  up to all callers to see if others have questions.

13          THE OPERATOR:  Okay.  Ladies and gentlemen, if

14  you'd like to ask a question, please press one, then zero on

15  your telephone keypad.  You may withdraw your question at any

16  time by repeating the one-zero command.

17          If you are using a speakerphone, please pick up

18  the handset before pressing the numbers.

19          Once again, if you have a question, please press

20  one, then, zero at this time.

21          Ben, one moment, please.

22      (Pause)

23          THE OPERATOR:  And at this time there are no

24  questions.

25          (Pause)

1    THE OPERATOR:  Once again, please press one, then

2  zero if you have a question.

3        (Pause)

4    THE OPERATOR:  And one moment for your first

5  question.

6        (Pause)

7    THE OPERATOR:  You have a question from Line 22.

8        Please go ahead.

9    MS. XERRAS:  Yes, hi, this is Lynne Xerras; I work

10 at Holland & Knight and I represent Consolidated Mechanical.

11 We are one of the critical suppliers.

12    I just -- you know, I don't want to bring up the

13 elephant in the room, which is the motion to dismiss that's

14 pending, but one of the allegations in that motion is that

15 there are no other creditors besides, you know, the lenders

16 and the insider, the DIP lender.

17    So I just want to make sure that there is some

18 discussion going on and clarification that we're all going to

19 need for some of us to come out of the woodwork.

20    MS. MORALES:  Hi, this is Katelin Morales from

21 Potter Anderson.

22    We're aware of the motion to dismiss and we just

23 filed our schedules and statements that obviously show other

24 creditors and, you know, it's no surprise that we're

25 preparing a response, so thank you for that comment, though.

1          MS. XERRAS:  Okay.  All right.

2          And I know we don't have a bar date, but if it's

3    helpful for us to file our proofs of claim early, we're happy

4    to do so.

5          UNIDENTIFIED SPEAKER:  Thank you.  Thanks, Lynne.

6          THE OPERATOR:  Once again, if you'd like to ask a

7    question, please press one, then zero.

8        (Pause)

9          THE OPERATOR:  And at this time, there are no

10   further questions.

11       (Pause)

12         MS. MORALES:  Hi -- sorry -- Ben, did we lose you?

13         MR. HACKMAN:  No, I'm here; I was just waiting to

14   see if anyone else had a question.  I was going to give it 5

15   more seconds.

16         MS. MORALES:  Sorry about that.

17         MR. HACKMAN:  No, that's fine.

18         Mr. Operator, has anyone else --

19         THE OPERATOR:  There are no questions at this

20   time.

21         MR. HACKMAN:  Okay.  With that -- the schedules

22   and statements have been filed -- we will conclude the 341

23   meeting now.

24         Thank you, everyone, for your time and

25   participation this afternoon.  We are done.

1          THE OPERATOR:  Ladies and gentlemen, that does

2 conclude your conference for today.

3          Thank you for your participation and for using

4 AT&T TeleConference.

5       (Proceedings concluded at 1:35 p.m.)

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                            CERTIFICATION

2              I certify that the foregoing is a correct

3    transcript from the electronic sound recording of the

4    proceedings in the above-entitled matter to the best of my

5    knowledge and ability.

6

7

8    /s/ William J. Garling                    April 29, 2025

9    William J. Garling, CET-543

10   Certified Court Transcriptionist

11   For Reliable

12

13

14

15

16

17

18

19

20

21

22

23

24

25