**IN THE UNITED STATES BANKRUPTCY COURT**
**FOR THE DISTRICT OF DELAWARE**

| | |
|---|---|
| In re:<br><br>BRIGHTMARK PLASTICS RENEWAL LLC, et al.,[1]<br><br>                      Debtors. | Chapter 11<br><br>Case No. 25-10472 (LSS)<br><br>(Jointly Administered)<br><br>**Hearing Date: May 9, 2025 at 10:00 a.m. (ET)**<br><br>**Re: Docket No. 149** |

**REPLY OF UMB BANK. N.A., AS TRUSTEE AND
COLLATERAL AGENT, IN SUPPORT OF MOTION FOR
ENTRY OF AN ORDER (I) DISMISSING THE CHAPTER 11 CASES
FOR CAUSE PURSUANT TO 11 U.S.C. § 1112 OR (II) IN THE ALTERNATIVE,
GRANTING RELIEF FROM THE AUTOMATIC STAY PURSUANT TO 11 U.S.C. § 362**

UMB Bank, N.A., not in its individual capacity but solely in its capacity as trustee and collateral agent (the "Trustee"), hereby files this Reply in support of its *Motion for Entry of an Order, (I) Dismissing the Chapter 11 Cases for Cause Pursuant to 11 U.S.C. § 1112 or (II) In the Alternative, Granting Relief from the Automatic Stay Pursuant to 11 U.S.C. § 362* [Docket No. 149] (the "Motion to Dismiss")[2] and respectfully states as follows:

**REPLY**

1. The Debtors cannot have it both ways. If these cases are, as the Debtors claim in their objection to the Motion to Dismiss, being run for the benefit of numerous stakeholders, including for unsecured creditors holding allegedly millions of dollars of claims and who stand to benefit from a going concern sale, then every single expenditure in these cases has not been

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery1 St, Floor 3, San Francisco, CA 94111.

[2] Capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Motion to Dismiss.

AFSDOCS:302513310.1

incurred for the direct purpose of enhancing the Trustee's collateral, as previously set forth in their 506(c) Motion and as would be necessary for the Debtors to meet their "onerous burden" under that standard. *See, e.g., In re C.S. Associates,* 29 F.3d 903, 907 (3d Cir. 1994) ("Section 506(c) was not intended to encompass ordinary administrative expenses that are attributable to the general operation and dissolution of an estate in bankruptcy. Rather, it was designed to extract from a particular asset the cost of preserving or disposing of that asset."). If, on the other hand, the statements in the 506(c) Motion are true and accurate, then these cases must be dismissed because at bottom they concern only two parties (the Debtors and the Trustee), "directly" benefit only the Trustee, and obviously have no prospect of resulting in a reorganization.

        a.  **The Debtors' Objection to the Motion to Dismiss Is Inconsistent with the 506(c) Motion**

        2.      The Debtors' Objection to the Motion to Dismiss and the Debtors' 506(c) Motion tell two different, irreconcilably inconsistent stories. The Debtors' 506(c) Motion states that "virtually every dollar spent by the estates in these Chapter 11 Cases to maintain and stabilize the Debtors' operations, preserve going-concern value, and market the Debtors' assets, inures to the direct benefit of the Indenture Trustee." 506(c) Motion at ¶ 1. In their objection to the Motion to Dismiss, however, they claim that "the Debtors owe millions of dollars to more than 200 creditors other than the Indenture Trustee," and that "[n]ot only are there a significant number of other creditors in these Chapter 11 Cases . . . but many of them are exerting pressure on the Debtors for payment of their debts." Objection at ¶¶ 27, 34.

        3.      The 506(c) Motion claims that "any increase in the sale price as a result of the Surchargeable Expenses will create a direct benefit to the Indenture Trustee. While other parties may have received incidental benefits . . . the Indenture Trustee was the one who will receive a

2

AFSDOCS:302513310.1

greater payout from the sale proceeds . . . ." 506(c) Motion at ¶ 45. However, the Objection to the Motion to Dismiss states that "the goal of these Chapter 11 Cases is not reorganization, but rather a sale of the business so that distributions can be made to creditors and the remaining assets, if any, can be liquidated and the proceeds thereof, distributed." Objection at ¶ 35.

4. The Debtors simultaneously are arguing through the 506(c) Motion that every charge in these cases should be assessed against the Trustee since every action is allegedly taken for its direct benefit through the sale, while also arguing in the Objection that the Debtors have many stakeholders who will benefit from these cases remaining in chapter 11 because it allows them to conduct the sale. These positions are facially irreconcilable such that one of them cannot be sustained.

5. The real reason for this incompatibility is because these Chapter 11 Cases are actually only being run for the benefit of the insider parent/DIP Lender. The Debtors claim that without the bankruptcy, the Debtors would not have been able to "obtain adequate postpetition financing, so that the Debtors could maintain their ordinary course business operations, while pursuing a sale process." Objection at ¶ 49. This is untrue, as demonstrated by the fact that the Debtors received the Bridge Loan from the DIP Lender outside of bankruptcy on substantially the same terms as the DIP Facility and the DIP loan here is on a junior basis. The Trustee never exercised any rights other than noticing an event of default. The Debtors simply would not have been able to attempt (albeit improperly) to have the Trustee pay the DIP Lender's loan outside of bankruptcy, as they now attempt to do through the 506(c) Motion. Therefore, the filing of the 506(c) Motion itself was confirmation of the Debtors' lack of good faith in filing these cases. Now confronted with that fact through the Motion to Dismiss, the Debtors are attempting to backpedal but run into their own arguments in the 506(c) Motion. Either the assertions made in the 506(c)

3

Motion are untrue, or these cases were not filed in good faith. The Debtors cannot have it both ways.

### b. The Facts Clearly Warrant Dismissal of the Chapter 11 Cases

6. Yet, even if the Court is not inclined to estop the Debtors from walking back the arguments they made in the 506(c) Motion, the cases should be dismissed because there is still an adequate basis to do so. The Debtors erroneously claim that because certain of the factors enumerated in *In re Primestone Investment Partners, L.P.*, 272 B.R. 554, 557 (D. Del. 2002) may not be present here, their absence militates against dismissal. This is incorrect. "The focus of the inquiry is whether the petition sought to achieve objectives outside the legitimate scope of the bankruptcy laws . . . [and] no single factor is determinative of a lack of good faith in filing a petition." *Id.* at 557–58. Rather, because the focus is on the totality of the circumstances, in certain cases even the presence of only ***a single factor*** and the absence of all others could still be cause to dismiss a case under Section 1112. *See, e.g. In re Traxcell Technologies, LLC*, 657 B.R. 453, 461 (Bankr. W.D. Tex. 2024) ("[T]he characterization of a case as a two-party dispute is given greater weight relative to the other factors. The existence of a two-party dispute can be independent grounds for dismissing a case.") (citations and quotations omitted).

7. Here, several of the factors are present. The Debtors concede that they have no possibility of reorganizing through these Chapter 11 Cases. Furthermore, if their sole purpose is, as the Debtors allege in their 506(c) Motion and statements in connection with the bidding procedures, to sell the Trustee's collateral, then no benefits are derived from running the cases. The Trustee could and would be capable of running that process itself on account of its valid and uncontested $170,000,000+ secured claim outside of bankruptcy with significantly less administrative overhead and delay.

4

8. The Debtors also claim that they owe millions of dollars to other parties, but a review of the schedules reveals that the only other significant creditor is the insider DIP Lender – most of the unsecured claims are either listed as "unknown," or, if they do have a number ascribed to them, are still listed as "Unliquidated." According to the Debtors' schedules, approximately $1,118,020, or roughly one-third of the entire scheduled unsecured claims pool, consists of unsecured *intercompany debts*. The presence of significant intercompany debt does not undermine, and in fact independently supports, the conclusion that this is a two-party dispute. Furthermore, the Debtors were authorized to pay up to $850,000 of unsecured trade claims as alleged adequate protection to the Trustee through the Critical Vendor Order using the DIP loan. That leaves approximately $1,000,000 in alleged general unsecured claims, representing one half of one percent (0.5%) of the Trustee's undisputed secured claim. It is beyond dispute that the Trustee and the Debtors are the only two parties with a meaningful stake in these Chapter 11 Cases.

9. Ultimately, as set forth in the Motion to Dismiss, the factors that are present show the picture plainly: the Debtors filed these Chapter 11 Cases without the consent or support of their prepetition secured lender, with the stated intention and subjective intent of running a sale to provide the insider a chance to bid on the assets free and clear of the Trustee's lien. The Debtors are generating significant administrative fees for the Debtors' professionals execute that gameplan and have sought to pass every one of these costs over to the Trustee's collateral through a 506(c) Motion – thereby returning to equity themselves the excess $12 million in funds (after taking into account potentially $1 million in unsecured claims) that equity elected to provide through the DIP loan.

10. The Debtors' actions to date simply do not make sense when viewed through the prism of good faith. That is because these Chapter 11 Cases were not filed in good faith. They

were filed by the Debtors for the sole purpose of attempting to improperly use the Bankruptcy Code as a means to leverage the Trustee's collateral from the claim it secures. That alone is grounds for dismissal of these cases under Section 1114(b). In the alternative, to the extent that the Court will not dismiss these cases outright, then it is independently grounds for granting the Trustee relief from the automatic stay in order to foreclose upon its collateral rather than continue to be coerced down the Debtors' path. The very imposition of the automatic stay in these circumstances is preventing the Trustee from exercising its contractual and state law rights while the Debtors apparently allow vendor and trade claims to continue to accrue. The burden is on the Debtors to show that the Trustee is adequately protected, not on the Trustee to show a diminution in value.

11. The Trustee should not be forced to wait on the sidelines while the Debtors attempt to prejudice it. These Chapter 11 Cases must be dismissed, or the Trustee must be granted relief from the automatic stay.

## CONCLUSION

WHEREFORE, the Trustee respectfully requests that the Court enter an order, substantially in the form attached to the Motion to Dismiss as Exhibit A, (i) dismissing the Chapter 11 Cases for "cause" under Section 1112(b), or (ii) in the alternative, granting the Trustee relief from the automatic stay under Section 362(d) with respect to the Bond Collateral, and (iii) granting such other and further relief as the Court deems proper.

| | |
|---|---|
| May 6, 2025<br>Wilmington, Delaware | **WOMBLE BOND DICKINSON (US) LLP**<br><br>*/s/ Matthew P. Ward*<br>Matthew P. Ward, Esq. (Del. Bar No. 4471)<br>1313 North Market Street, Suite 1200<br>Wilmington, Delaware 19801<br>Telephone: (302) 252-4320<br>Facsimile: (302) 252-4330<br>Email: matthew.ward@wbd-us.com<br><br>Andrew I. Silfen, Esq.<br>Beth M. Brownstein, Esq.<br>Mark Angelov, Esq.<br>**ARENTFOX SCHIFF LLP**<br>1301 Avenue of the Americas, Floor 42<br>New York, New York 10019<br>Telephone: (212) 484-3900<br>Facsimile:   (212) 484-3990<br>Email:  andrew.silfen@afslaw.com<br>            beth.brownstein@afslaw.com<br>            mark.angelov@afslaw.com<br><br>-and-<br><br>James E. Britton, Esq.<br>**ARENTFOX SCHIFF LLP**<br>800 Boylston Street, 32nd Floor<br>Boston, Massachusetts 02199<br>Telephone: (617) 973-6100<br>Facsimile: (617) 367-2315<br>Email: james.britton@afslaw.com<br><br>*Counsel for UMB Bank, as Trustee* |

AFSDOCS:302513310.1

WBD (US) 4917-5080-8895v1