# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Brightmark Plastics Renewal LLC, *et al.*,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10472 (LSS)<br><br>(Jointly Administered)<br><br>**Related Docket No. 22** |

## OBJECTION TO SALE

Brightmark Plastic Ashley Holdco LLC ("Brightmark Parent"), by and through its undersigned counsel, hereby submits this *Objection to Sale* (this "Objection") to the *Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof and (F) Granting Related Relief; and (II)(a) Approving Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and Encumbrances, (B) Approving the Assumption and Assignment of Certain Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 22] (the "Sale Motion")[2], and respectfully states as follows:

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

[2] Capitalized terms not otherwise defined shall have the same meaning as set forth in the Assumption Notice.

**BACKGROUND**

1.  On March 16, 2025 (the "Petition Date"), the Debtors filed voluntary petitions for relief pursuant to chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby initiating the cases (the "Chapter 11 Cases") jointly administered under Case No. 25-10472. The Debtors are managing their businesses and their properties as debtors in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.

2.  On March 17, 2025, the Debtors filed their Sale Motion.

3.  On April 4, 2025, the Court entered the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. 85] (the "Bid Procedures Order").

4.  On May 7, 2025, the Debtors conducted an Auction in connection with the Sale Motion. The Zoom online video platform was used to conduct the Auction.

5.  On May 8, 2025, the Debtors filed the *Notice of Auction Results* [Docket No. 176] (the "Auction Notice"). In the Auction Notice, the Indenture Trustee, by way of a credit bid, was identified as the "Successful Bid" for the assets of Brightmark Plastics Renewal Indiana LLC with a net credit bid of $14,500,000. Brightmark Parent was designated as the Backup Bidder with a bid for all of the Debtor's assets of (a) $14,250,000 in cash, (b) $7,000,000 in the form of a credit bid, and (c) the assumption of certain of the Debtors' liabilities, for substantially all of the Assets of the Debtors.

**DISCUSSION**

6. Brightmark Parent objects to the designation of the Indenture Trustee's bid as the Successful Bid. In sum, the Indenture Trustee did not act in good faith during and after the Auction. The Indenture Trustee's bid should be disqualified. Even if the Indenture Trustee's bid is not disqualified, the Brightmark Parent bid is the better bid.

A. **The Indenture Trustee Did Not Act in Good Faith**

7. The Indenture Trustee did not act in good faith. The Indenture Trustee attempted to collude, and took grossly unfair advantage of other bidders. *In re Abbotts Dairies*, 788 F.3d 143, 147-48 (3d Cir. 1986) (citations omitted). The determination of a good faith purchaser is a question of fact. *Id*.

8. The Auction started with 4 bidders. Unlike the other bidders, the Indenture Trustee submitted its revised APA after the auction started.

9. After 2 bidders dropped out, the remaining 2 bidders were the Indenture Trustee and Brightmark Parent. At that point, the Indenture Trustee and Brightmark Parent were at $12,750,000. Prior to any further bidding, a lengthy delay ensued. During that delay, the Indenture Trustee sent a message that was delivered to Brightmark Parent indicating along the lines that the Indenture Trustee wanted to discuss a resolution instead of further bidding. That outreach by the Indenture Trustee is collusion and improper interference in the bidding process of the Auction.

10. Brightmark Parent was then advised that the Debtor's Independent Director rejected any such overtures by the Indenture Trustee as that would interfere with the Auction.

11. The auction proceeded and ended when Brightmark Parent cash component was at $14,250,000 and the Indenture Trustee net bid was at $14,500,000.

12. At the conclusion of the Auction, the Indenture Trustee objected saying they were reserving all rights as to who should be designated as the Backup Bidder, a peculiar objection by the purported Successful Bidder. In hindsight, there is only one reason why the Indenture Trustee would raise such an objection. The Indenture Trustee's goal in this auction was not to be a good faith bidder or even to potentially close the transaction, but rather to engage in conduct and take steps to prevent Brightmark Parent from being the Successful Bidder. The Indenture Trustee's actions following the Auction establish this intent.

13. Following the Auction, that evening, the Indenture Trustee delivered a message indicating that Brightmark Parent could become the Successful Bidder by paying the Indenture Trustee $50 million. But the Indenture Trustee was willing to take "multitudes less" from anyone else.

14. The actions of the Indenture Trustee can be summed up as "outrageous" and their bid should be disqualified.

15. If the Indenture Trustee's bid is not disqualified, and the Indenture Trustee fails to close the transaction, the Indenture Trustee should not be allowed to self-designate the Backup Bidder. Brightmark Parent was designated as the Backup Bidder and should be given the opportunity to close the transaction if the Indenture Trustee fails to do so.

**B.    The Brightmark Parent Bid is the Best and
       Highest Value Bid and Should be the Successful Bid**

16. The bid by Brightmark Parent should be the Successful Bid.

17. When viewed holistically, the Brightmark Parent bid is significantly better than the Indenture Trustee Bid, and many millions of dollars better than the $250,000 difference reflected in the Auction Notice.

18. The Brightmark Parent bid preserves all of the Debtors' jobs, and the associated wages. There are 80 employees at the Debtors' plant located in Indiana, and 5-10 employees at other locations that will retain their jobs under the Brightmark Parent bid. The Indenture Trustee bid will result in all of these employees being immediately terminated without severance, resulting in potentially millions of dollars of unpaid wage claims against the Debtors' estates.

19. The Brightmark Parent bid assumes all administrative expenses, including millions of dollars of post-closing straddle liabilities. The Indenture Trustee bid does not assume these administrative liabilities, provides no cash component, and will leave these Debtors' estates administratively insolvent.

20. The Brightmark Parent bid assumes most of the Debtors' executory contracts, pays cure costs, and greatly reduces any rejection damages. The Indenture Trustee bid rejects almost every contract, does not pay cure costs, and will result in millions of dollars of unsecured rejection damages claims.

21. The Brightmark Parent bid provides for continued operations at the Debtors' plant, resulting in the recycling of millions of pounds of plastic, a beneficial result for the environment. The Indenture Trustee's bid will result in a shut down of the Debtor's plant and a liquidation of the Debtors' assets.

22. In sum, the Brightmark Parent bid is vastly superior to the Indenture Trustee bid, and the Brightmark Parent bid should be designated as the Successful Bid.

## **RESERVATION OF RIGHTS**

Brightmark Parent expressly reserves all rights to supplement or amend this Objection.

**CONCLUSION**

**WHEREFORE**, Brightmark Parent requests that the Court: (i) disqualify the Indenture Trustee bid; (ii) designate the Brightmark Parent bid as the Successful Bid, and (iii) grant such other relief as is just.

Dated:  May 8, 2025

CHIPMAN BROWN CICERO & COLE, LLP

*Mark L. Desgrosseilliers*
Mark L. Desgrosseilliers (ID No. 4083)
CHIPMAN BROWN CICERO & COLE, LLP
Hercules Plaza
1313 North Market Street, Suite 5400
Wilmington, Delaware 19801
Telephone: (302) 295-0191
Email:  desgross@chipmanbrown.com

-and-

Paul M. Rosenblatt (admitted *pro hac vice*)
KILPATRICK TOWNSEND & STOCKTON LLP
1100 Peachtree Street NE, Suite 2800
Atlanta, GA 30309-4528
Telephone: (404) 815-6321
Email:  PRosenblatt@ktslaw.com

*Counsel for Brightmark Plastic Ashley Holdco LLC and Brightmark Plastics Renewal Technologies LLC*