# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| In re:<br><br>Brightmark Plastics Renewal LLC, et al.,[1]<br><br>Debtors. | Chapter 11<br><br>Case No. 25-10472 (LSS)<br><br>(Jointly Administered)<br><br>**Re: Docket Nos. 22, 23, 44, 74, 85, 86** |

## DECLARATION OF NEIL GUPTA IN SUPPORT OF THE SALE OF THE DEBTORS' ASSETS

I, Neil Gupta, hereby declare that the following is true and correct to the best of my knowledge, information, and belief:

1. I am a Managing Director of SSG Advisors, LLC ("SSG"), an investment banking firm that maintains offices at 300 Barr Harbor Drive, Suite 420, West Conshohocken, PA 19428, and am duly authorized to make this declaration (the "Declaration") on behalf of SSG.

2. I submit this Declaration in support of the *Debtors' Motion for Entry of Orders (I)(A) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (B) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections (C) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (D) Approving Assumption and Assignment Procedures, (E) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (F) Granting Related Relief; and (II)(A) Approving the Sale of the Debtors' Assets Free and Clear of Liens, Claims, Interests, and*

---

[1] The Debtors in these chapter 11 cases, together with the last four digits of each Debtor's federal tax identification number, are: Brightmark Plastics Renewal LLC (7907); Brightmark Plastics Renewal Indiana LLC (7118); and Brightmark Plastics Renewal Services LLC (3789). The Debtors' headquarters are located at 1725 Montgomery St, Floor 3, San Francisco, CA 94111.

*Encumbrances, (B) Approving the Assumption and Assignment of Executory Contracts and Unexpired Leases, and (C) Granting Related Relief* [Docket No. 22] (the "Motion").

3. Except as otherwise indicated, all statements in this Declaration are based on my personal knowledge of the Debtors' operations and finances gleaned during the course of SSG's engagement, my discussions with the Debtors' senior management, other members of the SSG team, and the Debtors' other advisors, as well as my review of relevant documents or my opinion based on my experience and knowledge of the Debtors' operations and financial condition. If called to testify, I would testify to each of the facts set forth herein based on such personal knowledge, discussions, review of documents, or opinion.

## Qualifications

4. I have 15 years of experience advising businesses facing operational and/or financial challenges, including companies in bankruptcy proceedings.

5. Prior to joining SSG, I served as a research analyst for Piedmont Investment Advisors and a consulting actuary at Watson Wyatt Worldwide.

6. In 2003, I received a Bachelors of Science in Applied Mathematics and Statistics from The John Hopkins University. In 2009, I received a Masters of Business Administration from the University of North Carolina Kenan-Flagler Business School.

7. SSG is an internationally recognized investment banking firm. Since its founding, SSG has completed over 450 investment banking assignments. SSG's professionals have expertise in mergers and acquisitions, private placements, financial restructurings, valuations, and financial advisory services. Moreover, SSG has substantial expertise advising troubled companies, including in connection with distressed sales.

8. SSG's professionals have extensive experience in complex financial restructurings. SSG has served as an investment banker for debtors and other parties in many bankruptcy cases in the District of Delaware, including: *In re F21 OPCO, LLC, et al.*, Case No. 25-10469 (MFW); *In re Ideanomics, Inc. et al.*, Case No. 24-12728 (CTG); *In re Biolase, Inc. et al.*, Case No. 24-12245 (KBO); *In re ICON Aircraft, Inc., et al.*, Case No. 24-10703 (CTG); *In re Burgess BioPower, LLC, et al.*, Case No. 24-10235 (LSS); *In re InVivo Therapeutics Corporation, et al.*, Case No. 24-10137 (MFW); *In re ContraFect Corporation*, Case No. 23-11943 (LSS); *In re Gelesis Holdings, Inc.*, et al., Case No. 23-11787 (BLS); *In re Infinity Pharmaceuticals, Inc., et al.*, Case No. 23-11640 (BLS); *In re Pegasus Home Fashions, Inc., et al.*, Case No. 23-11235 (MFW); *In re Christmas Tree Shops, LLC, et al.*, Case No. 23-10576 (TMH); *In re EFS Parlin Holdings, LLC*, Case No. 23-10539 (JTD); *In re Nova Wildcat Shur-Line Holdings, Inc.*, Case No. 23-10114 (CTG); *In re Allena Pharmaceuticals, Inc.*, Case No. 22-10842 (KBO); *In re Electric Last Mile, Inc.*, Case No. 22-10538 (MFW); *In re Retrotope, Inc.*, Case No. 22-10228 (JTD); *In re Avadim Health, Inc.*, Case No. 21-10883 (CTG); *In re Connections Community Support Programs, P.C.*, Case No. 21-10723 (MRW); *In re PBS Brand Co., LLC*, Case No. 20-13157 (KSS); *In re PQ New York, Inc., et al.*, Case No. 20-11266 (JTD); *In re Sustainable Restaurant Holdings, Inc.*, Case No. 20-11087 (JTD); *In re Cedar Haven Acquisition, LLC*, Case No. 19-11736 (JKS); *In re THG Holdings LLC, et al.*, Case No. 19-11689 (JTD); *In re St. Christopher's Healthcare, LLC*, Case No. 19-11468 (KG); *In re Center City Healthcare, LLC d/b/a Hahnemann Univ. Hosp.*, Case No. 19-11466 (KG); *In re 1515-GEEnergy Holding Co. LLC, et al.*, Case No. 19-10303 (LSS); *In re Samuels Jewelers, Inc.*, Case No. 18-11818 (KJC); *In re Argos Therapeutics, Inc.*, Case No. 18-12714 (KJC); *In re ABT Molecular Imaging, Inc.*, Case No. 18-11398 (CSS); *In re Nighthawk Royalties LLC*, Case No. 18-10989 (BLS); *In re Vitamin World, Inc., et al.*, Case No. 17-11933 (KJC); *In re Peekay*

3

*Acquisition, LLC*, Case No. 17-11722 (BLS); *In re Short Bark Indus., Inc.*, Case No. 17-11502 (KG); *In re Unilife Corp.*, Case No. 17-10805 (LSS).

9. All facts set forth herein are based on my personal knowledge, information learned from my review of relevant documents, or based upon information provided to me by professionals working at my direction, or by the Debtors and their other advisors. If I were called to testify, I would testify competently to the facts set forth herein.

### The Debtors' Marketing Process

10. The Debtors retained SSG as investment banker on February 26, 2025 to, among other things, (i) identify and evaluate potential counterparties for a potential sale process, (ii) prepare a marketing plan and information materials to distribute to potential purchasers on a confidential basis, (iii) solicit third-party interest in an acquisition of the Debtors' Assets, and (iv) assist the Debtors in contacting potential purchasers, arranging meetings with potential purchasers, and coordinating due diligence. SSG performed these services under the oversight of Craig R. Jalbert, as Chief Restructuring Officer ("CRO"), and Timothy J. Bernlohr, as independent manager (the "Independent Manager"). SSG has worked with the Debtors' management and other restructuring professionals and has become knowledgeable and familiar with the Debtors' capital structure, liquidity needs, and business operations.

11. On March 17, 2025, Mark Chesen of SSG submitted an initial declaration [Docket No. 23] (the "Chesen Declaration") in support of the Bidding Procedures component of the relief sought in the Motion. This Declaration incorporates, and adopts the statements in, the Chesen Declaration as if set forth fully herein.

12. Since its engagement, SSG worked with the Debtors and their other advisors to develop a sale and marketing plan to maximize the value of the Debtors' Assets for the benefit of their estates and their creditors. That included, among other things, preparing a teaser and other

4

marketing materials and establishing a virtual data room with extensive information regarding the Debtors, the Debtors' operations, and the Assets. In addition, SSG worked with the Debtors to develop a list of potential purchasers, including strategics, liquidators, private equity funds, and other financial institutions.

13. Beginning on March 17, 2025, and continuing thereafter, SSG began outreach to a broad universe of relevant strategic and financial parties to assess interest in an acquisition of all or substantially all of the Debtors' Assets. In total, SSG reached out to 334 parties regarding the sale of the Debtors' Assets. Of these 335 parties, one party was recommended by the Debtors' Independent Manager, and two parties were recommended by the Indenture Trustee's financial advisor. In addition, 35 parties signed non-disclosure agreements to conduct diligence, 32 parties accessed the Debtors' virtual data room, and 4 parties conducted site visits.

14. Pursuant to the *Order (I) Approving Bidding Procedures for the Sale of Substantially All of the Debtors' Assets, (II) Authorizing the Debtors to Designate One or More Stalking Horse Bidders and to Provide Bid Protections, (III) Scheduling an Auction and Approving the Form and Manner of Notice Thereof, (IV) Approving Assumption and Assignment Procedures, (V) Scheduling a Sale Hearing and Approving the Form and Manner of Notice Thereof, and (VI) Granting Related Relief* [Docket No. 85] (the "Bidding Procedures Order") and the Bidding Procedures attached thereto,[2] the Bid Deadline was May 5, 2025 at 5:00 p.m. (ET). The Debtors received 4 Qualified Bids from Qualified Bidders, each for substantially all of the Debtors' Assets, prior to the Bid Deadline. SSG, along with the Debtors and their other professionals, evaluated all bids that were received. After discussions and negotiations with the Qualified Bidders and a

---

[2] All capitalized terms used but not otherwise defined herein shall have the meanings ascribed to them in the Bidding Procedures Order or the Bidding Procedures, as applicable.

vetting process and diligence by SSG, the Debtors, and the Debtors' other advisors, the Debtors determined that an Auction would be held to ensure the highest or otherwise best outcome.

15. I believe the marketing process was thorough and complete, and yielded the highest or otherwise best offers for the Debtors' Assets under the circumstances. I cannot identify any potential purchaser that has not already been contacted that may have an interest in the Purchased Assets subject to the Asset Purchase Agreement, let alone one that would be able to close within the required timeframe. I believe it is likely that all potentially interested and capable purchasers have been contacted and given an adequate opportunity to conduct diligence and bid on the Debtors' Assets.

16. Based on my involvement in the sale process, my review of the bids received, and my experience, I believe the sale and marketing process and the Bidding Procedures provided the Debtors with reasonable opportunity to solicit, negotiate, and evaluate bids for their Assets and afforded interested parties a reasonable opportunity to conduct due diligence prior to submitting their bids. Moreover, I believe that the sale and marketing process was comprehensive, transparent, and conducted in good faith by the Debtors and their professionals in accordance with the Bidding Procedures.

## The Auction

17. On May 7, 2025, the Debtors, with the assistance of SSG, conducted the Auction in accordance with the Bidding Procedures via Zoom virtual meeting technology. All 4 Qualified Bidders appeared at the Auction, along with representatives for the Debtors. The Auction lasted approximately 7 hours.

18. Ultimately, at the conclusion of the Auction, after 25 rounds of bidding, the Debtors, in their reasonable business judgment, selected UMB Bank, N.A., as trustee and collateral agent (the "Purchaser"), as the Successful Bidder for substantially all of the assets of Debtor

Brightmark Plastics Renewal Indiana LLC (the "Sale," and the Assets subject thereto, the "Purchased Assets").  The Debtors, in their reasonable business judgment, selected Brightmark Ashley Holdco LLC as the Backup Bidder.

19. The Successful Bid is a liquidation bid consisting of a $17,300,000 credit bid (to which the Debtors ascribed a net value of $14,500,000).  The Backup Bid was a going concern bid consisting of (a) $14,250,000 in cash, (b) a credit bid on assets of the Debtors not included in the Purchased Assets, and (c) the assumption of certain liabilities.

20. The terms of the Sale are memorialized in that certain Asset Purchase Agreement (the "Asset Purchase Agreement") by and between the Debtors and the Purchaser.

21. Accordingly, for all the foregoing reasons, I believe that the Debtors engaged in a robust and thorough sale and marketing process.

I declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that the foregoing is true and correct to the best of my knowledge, information, and belief.

Dated: May 8, 2025  
　　　　　　　　　　　　　　　　　　　　　　/s/ Neil Gupta  
　　　　　　　　　　　　　　　　　　　　　　Neil Gupta  
　　　　　　　　　　　　　　　　　　　　　　Managing Director  
　　　　　　　　　　　　　　　　　　　　　　SSG Advisors, LLC