# EXHIBIT A

1

1          ***UNCERTIFIED ROUGH DRAFT***

2        This unedited rough transcript draft is uncertified

3    and may contain incorrect punctuation, misspelled proper

4    names and/or terminology, an occasional reporter's note,

5    and/or inaccurate/nonsensical word combinations. There

6    WILL BE discrepancies between this form and the final

7    form.

8

9        Please keep in mind that the final certified

10   transcript's page and line numbers WILL NOT match the

11   rough draft due to the addition and/or editing of title

12   pages, indices, appearances of counsel, paragraphing,

13   formatting, and other changes.

14

15       Due to the need to correct entries prior to

16   certification, parties agree to use this transcript

17   draft only for the purpose of augmenting counsel's notes

18   and may not be cited or used in any way or at any time

19   to rebut or contradict the certified transcription of

20   the proceedings and should not be distributed in any

21   form to anyone who has no connection to this case.

22

23

24

25

2

1

2

3                     Docket No.

4

5

6

7              Wednesday, May 7, 2025

8                  10:00 a.m.

9

10

11          SSG Capital Advisors, LLC

12      300 Barr Harbor Drive, Suite 420

13       West Conshohocken , PA 19428

14

15

16

17

18

19  Reported by:    Chanyri Moh

20  JOB NO:         7342659

21

22

23

24

25

                                                        3

1                    A P P E A R A N C E S

2  List of Attendees:

3  Neil Gupta , Moderator and Debtor Investment Banker

4  Alex Lamm , Debtor Investment Banker SSG Advisors, LLC

5  Nick Vernacchio, Debtor Investment Banker SSG

6  Advisors, LLC

7  Brett Haywood, Debtor Counsel from Potter Anderson &

8  Corroon LLP

  9  Jeremy Ryan , Debtor Counsel from Potter Anderson &

 10  Corroon LLP

 11  Ciara Sprance , Debtor Counsel Potter Anderson &

 12  Corroon LLP

 13  Dylan Rush , Debtor Investment Banker SSG Advisors,

 14  LLC

 15  Mark Chesen , Debtor Investment Banker SSG Advisors,

 16  LLC

 17  Andrew Ehermann , Debtor Counsel from Potter Anderson

 18  & Corroon LLP

 19  Michael Whittaker , Debtor Counsel from Potter

 20  Anderson & Corroon LLP

 21  Bob Powell , Bidder Brightmark Ashley Parent

 22  Justin Goldstein , Bidder Brightmark Ashley Parent

 23  Paul Rosenblatt , Counsel from Kilpatrick Townsend &

 24  Stockton LLP

 25

                                                    4

  1  Catherine Zhu , Counsel from Kilpatrick Townsend &

2  Stockton LLP

3  Mark Desgrosseilliers, Counsel from Chipman Brown

4  Richard Jackson , Investor Jackson Investment Group

5  James Simon , Bidder Braven Enviromental LLC

6  Jeffrey Neumann , Bidder Braven Enviromental LLC

7  Jason Russell , Counsel from Morris, Nichols, Arsht &

8  Tunnell LLP

9  Robert Dehney , Counsel from Morris, Nichols, Arsht &

10  Tunnell LLP

11  Nadeem Nisar , Investor Fortistar

12  Duncan Bourgoin , Investor Fortistar

13  Matt Kimble , Investor Avenue Capital

14  Jeff McMahon , Bidder Freepoint Eco-Systems

15  Mark Worden , Bidder Freepoint Eco-Systems

16  Kathy Yang , Bidder Freepoint Eco-Systems

17  Jason Boland , Counsel from Norton Rose

18  Jennifer Zhang , Counsel from Norton Rose

19  Beth Brownstein , Counsel from ArentFox

20  Mark Angelov, Counsel from ArentFox

21  Tal Unrad , Counsel from ArentFox

22  James Britton , Counsel from ArentFox

23  Adam Saltzman , Financial Advisor FTI Consulting, Inc.

24  Andrew Scruton , Financial Advisor FTI Consulting,

25  Inc.

5

1  Liz Volk , Financial Advisor FTI Consulting, Inc.

2  Michael Slade , Bidder UMB Bank, NA

3  Craig Jalbert , Chief Restructuring Officer Vedolino &

4  Lowey, P.C.

5  Timothy Bernlohr , TIndependent Director JB Management

6  Consulting, LLC

7  Jake Reisner , Debtor Counsel Potter Anderson &

8  Corroon LLP

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

6

1                    P R O C E E D I N G S

2                    MR. GUPTA:  Going on the record now,

3     this is the auction for the sale of the assets of

4     Brightmark Plastics Renewal, LLC; Brightmark Plastics

5     Renewal Services LLC; and Brightmark Plastics Renewal,

6     Indiana LLC, in connection with the jointly

7     administered Chapter 11 bankruptcy cases in the United

8     States Bankruptcy Court for the District of Delaware,

9     under lead case 25-10472 and the bidding procedures

10    order entered by the court on April 4, 2025.

11                    We'll take appearances for the record

12    in a moment.  But as a reminder, if you are not

13    speaking, please keep your microphone on mute unless

14    and until you have anything to say for the record.

15              Today's auction is being recorded and

16    transcribed by a court reporter.  We ask that any

17    statements or comments by any party be limited to one

18    designated representative -- possible so that the

19    court reporter can properly document the auction.

20              We also ask that each individual who is

21    going to speak on behalf of a bidder identify yourself

22    for the record each time you speak for the benefit of

23    the court reporter.  Breakout rooms will be available

24    for consultation if required.

25              All statements and comments or comments

7

1    by any party are restricted to the submission of

2    qualified bids and over bids; clarification and

3    confirmation of qualified bids and over bids; request

4    for time to break for consultation; bidding

5    procedures; and active auction proceedings only.

6                In accordance with the auction protocol

7    previously circulated to the parties, SSU reserves the

8    right to mute and/or remove a party deemed to be in

9    violation of the auction protocol.

10               With that, we'll now take appearances.

11   So for the debtors, we have our chief restructuring

12   officer on the line.

13               MR. JALBERT:  Yes, correct.  Craig

14   Jalbert's on.

15               MR. GUPTA:  We have our independent

16   director.

17               MR. BERNLOHR :  Timothy Bernlohr is on.

18               MR. GUPTA:  And then in the room here

19   we have counsel for the debtors, Potter Anderson.

20               MR. HAYWOOD:  Brett Haywood of Potter

21   Anderson on behalf of the debtors.

22               MR. GUPTA:  You just want to announce

23   everybody --

24               MR. HAYWOOD:  We've got Jeremy Ryan of

25   Potter Anderson on behalf of the debtors.  Jake

1  Reisner, Andrew Ehermann, Ciara Sprance, and Mike

2  Whittaker, all of Potter Anderson on behalf of the

3  debtors.

4            MR. GUPTA:  Okay, great.  And for

5  investment banker -- for the debtors, SSG Capital

6  Advisors, we have Neil Gupta, Alex Lamm, and Nick

7  Vernacchio here in person, and Mark Chesen and Dylan

8  Rush via Zoom.

9            Now, for the bidders.  And I'll ask

10  each qualified bidder to identify and confirm the

11  individual representative who's authorized to speak on

12  behalf of and bond such bidder, and maybe use that

13  individual representative to appear on behalf of the

14  group.

15            So first we have Brightmark Plastics,

16  Ashley HoldCo, LLC, who we'll refer to as Brightmark

17  Parent going forward.

18            MR. ROSENBLATT:  Paul Rosenblatt on

19  behalf of Brightmark Parent.  I'll be the person

20  speaking on behalf of Brightmark Parent.

21            MR. GUPTA:  Okay.  Thank you, Paul.

22  Then we have Freepoint Eco-Systems Bartow Supply LLC,

23  we will refer to as Freepoint going forward.

24          MR. MCMAHON :  Yeah, this is Jeff

25  McMahon for Freepoint, and I'll be the person speaking

9

1  on behalf of Freepoint.

2          MR. GUPTA:  Okay, great.  Then Braven

3  Environmental LLC, who we will refer to as Braven.

4          MR. SIMON:  And this is Jim Simon with

5  Braven Environmental.  I'll be speaking on behalf of

6  Braven.

7          MR. GUPTA:  Allright.  Thanks, Jim.

8  And then UMB Bank, NA who we will refer to as UMB

9          MS. BROWNSTEIN :  Beth Brownstein from

10  ArentFox Schiff on behalf of UMB, and I will be

11  speaking for UMB.  But I do have my partners on the

12  line, Mark Angelov, Tal Unrad, and James Britton.  And

13  we also have our financial advisors on the line from

14  FTI Consulting, and Michael Slade from UMB is also on

15  the line.

16          MR. GUPTA:  Okay, great.  Thanks, Beth.

17                    All right.  The bidding procedures

18    order provides that consultation parties may attend

19    and observe this auction, but only qualified bidders

20    may participate.  As of now, we do not have any, but

21    consultation parties would be asked to mute themselves

22    for the duration of the auction unless a statement is

23    required for the record.  All other observers will be

24    placed on meet at this time.

25                    Now, I'll be asking each qualified

10

1    bidder to confirm a few matters under the bidding

2    procedures order.  First, we're asking each of the

3    designated representatives to confirm their bids as

4    previously submitted are currently in force, in effect

5    for all purposes of this auction, that the bids are

6    binding, in good faith, and bona fide offers to

7    purchase the assets in accordance with the bidding

8    procedures order.  Braven, can you please confirm?

9                    MR. SIMON:  I confirm for Braven.

10                    MR. GUPTA:  Brightmark Parent?

11                    MR. ROSENBLATT:  Confirmed for

12  Brightmark Parent.

13                    MR. GUPTA:  Freepoint

14                    MR. MCMAHON :  Confirmed for Freepoint.

15                    MR. GUPTA:  And UMB?

16                    MS. BROWNSTEIN :  Confirmed for UMB.

17                    MR. GUPTA:  Thanks.  Lastly, I'll ask

18  each of the designated representatives to confirm that

19  any verbal bids made today at this auction shall bind

20  the bidder and remain legally enforceable under the

21  terms of the respective asset purchase agreement

22  extended by each party with the sole exception being

23  the change in price as may be bid during this auction,

24  and that each of the bidders agree that, after the

25  auction, they will execute and deliver to the debtor's

                                                    11

1  an amendment to the previously submitted asset

2  purchase agreement so that it conform with bids that

3    are made during the auction.

4              Braven, can you please confirm?

5              MR. SIMON:  Raven is confirmed.

6              MR. GUPTA:  Brightmark Parent?

7              MR. ROSENBLATT:  Brightmark Parent

8    confirms.

9              MR. GUPTA:  Freepoint?

10             MR. MCMAHON :  Freepoint confirms.

11             MR. GUPTA:  UMB?

12             MS. BROWNSTEIN :  UMB confirms.

13             MR. GUPTA:  Thank you.  All right.

14   Pursuant to the bidding procedures order, the debtors

15   confirmed that a form asset purchase agreement was

16   publicly filed and noticed to all parties in interest

17   at Docket Number 131 in the lead case.  A copy of the

18   asset purchase agreements between the debtors and each

19   of the qualified bidders was provided to the bidders

20   through their respective counsel prior to this

21   auction.

22             In accordance with the bidding

23   procedures order, the debtors informed all qualified

24   bidders of the qualified bids submitted by the bid

25   deadline and the baseline bid that will set the price

12

1    at which bidding will commence.

2              For the record, the debtors have

3    received four bids for their assets.  The debtors have

4    deemed all bids to be qualified bids under the bidding

5    procedures order.  The first bid is from Brightmark

6    Parent, who has offered a base price of $7.5 million

7    in cash, and we received a cash deposit currently

8    being held in escrow on the amount of $750,000.

9              I'll ask the Potter Anderson team if

10   there's any other points --

11             MR. HAYWOOD:  So other consideration

12   for the Brightmark Parent bid include they are credit

13   bidding $7.0 million of their credit facility.  That

14   credit bid is being applied to assets on which the

15   Brightmark Parent lender has a first lien.

16             They have also agreed to assume what

17   are referred to in the form asset purchase agreement

18   and their asset purchase agreement as the straddle

19   liabilities.  And the debtors have placed a value of

20   the straddle liabilities for those -- assuming of $2.8

21  million is what the debtors have valued the assumption

22  of those liabilities to be in terms of value to the

23  estate.

24          So if I'm missing anything else from

25  the consideration being paid, that is, we do recognize

13

1   their purchase price states 27 million, but from the

2   purpose of the debtor's valuation, it is $7.5 million

3   cash, a $7 million credit bid, assumed liabilities of

4   the straddle liabilities of which the debtors are

5   placing a value at $2.8 million.

6          And then they will be assuming what is

7   referred to as the bridge loan, which is a

8   pre-petition secured loan that they are assuming in

9   terms of value to the estate.  The debtors understand

10  that's being assumed, but the debtors are not adding a

11  value to that in terms of the value of the debt.  But

12  we do understand that that is today going to be an

13  assumed liability.

14          MR. GUPTA:  Yeah, I think for purposes

15  of the auction, we're considering their bid $7.5

16  million as the net bid for comparison purposes.

17          MR. HAYWOOD:  For normalization.  Now,

18  Mr. Haywood has a couple of points to clarify with

19  Brightmark Parent on their bid.  Or Ms. Sprance, I'm

20  sorry.

21          MS. SPRANCE :  Yes.  Hi.  Thank you

22  very much.  So for Brightmark Parent, could you

23  confirm the -- one of the closing conditions was the

24  written commitment from UMB to remit accounts

25  receivable.  Are you able to state on the record that

                                                    14

1  you'll be willing to take that out subject to this

2  being addressed by the sale order?

3          MR. ROSENBLATT:  Yeah, that provision

4  deals with post-closing collections that would

5  erroneously be sent to UMB and not the buyer entity.

6  But we are willing to accept either an agreement with

 7   UMB to turn those collections over or a provision of a

 8   sale order that would direct UMB to do so.

 9              MS. SPRANCE :  Okay.  Thank you, Paul.

10   And then one other point.  Section 212 governing the

11   effect of termination sets forth that the seller's

12   exclusive and sole remedy in the event of termination

13   by sellers for purchaser's breach is the deposit and

14   interest thereon.  We've requested that that section

15   be stricken.

16              MR. ROSENBLATT:  I'll get back to you

17   on that after the break.

18              MS. SPRANCE :  Thank you.  I think

19   that's all that we had for Brightmark Parent, unless

20   anybody else from the Potter team has anything to add.

21   Thank you.

22              MR. GUPTA:  The second bid is from

23   Braven who offered a base purchase price of $5 million

24   of cash.  We did receive a cash deposit currently

25   being held in escrow on the amount of $500,000.  They

1    are also assuming the straddle liability that we are

2    valuing at $2.8 million.  They are -- the other thing,

3    we are adjusting their bid down by $100,000 dollars to

4    account for the cost of cleaning tanks, which will be

5    the responsibility of the debtors according to their

6    APA.

7              So as such, you know, similar to

8    Brightmark Parent, we're kind of keeping the $5

9    million as their bid, but adjusting that down by a

10   $100,000.  So for purposes of comparison in the

11   auction, the Braven bid will be $4.9 million.  And

12   I'll turn it over to Potter Anderson.

13             MR. RYAN:  Yes.  So we just need

14   confirmation from Braven, given that the 30-year feed

15   stock agreement -- Schedule 1 of Braven's asset

16   purchase agreement is held by a non-debtor affiliate.

17   We just need confirmation that that contract is not

18   material.

19             MR. SIMON:  This is Jim Simon for

20   Braven.  We accept that that's not material.

21             MR. RYAN:  -- unless anyone says

22   anything -- okay.  That should be it for Braven.

23             MR. SIMON:  Neil, I've got a comment to

24   add if now is a good time, on the Braven bid.  In

25   addition to our $5 million cash offer, we made an

16

1    alternative bid of a $25 million note, senior secured

2    note with interest prepaid and payable over a

3    five-year term.  We're wondering how that's being

4    valued in this process of that auction.

5              MR. GUPTA:  Sure.  Yeah, yeah, and

6    thanks for bringing that up.  Yeah, that was -- we

7    looked at the two options, either $5 million of cash

8    or the $25 million note and determined that it was too

9    difficult to value what the note would be -- the value

10   of that to the estate.  Ultimately, just with that

11   being -- I know Braven did provide some additional

12   information about their business plan, but given the

13   uncertainty around that, we felt that the $5 million

14   cash offer was something that we could value and was

15   potentially higher than the $25 million note.

16             MR. RYAN:  And to be clear, you know,

17   we understand that's an alternate form of

18    consideration that was being offered to the seller

19    because those proceeds would go to the secured lender

20    who is not a consultation party because they are a

21    bidder.  We have not been able to discuss with the

22    secured lender, UMB, what their view of that value

23    would be.

24                    The debtors are amenable should Braven

25    prevail at the auction, if -- which will be on a cash

17

1    basis.  If Braven -- and after the auction is over,

2    they want to enter a discussion with the secured

3    lender as to whether the secured lender would rather

4    receive cash or a note for their proceeds, the debtors

5    will not object to such a discussion after the auction

6    so that that optionality is preserved for Braven

7    post-auction.

8                    MR. SIMON:  Okay, thank you.

9                    MR. RYAN:  And that was Jeremy Ryan,

10    Madam Court Reporter.

11              MR. GUPTA:  All right.  The third bid

12      is from Freepoint, who has offered a base purchase

13      price of $5 million of cash.  We did receive a cash

14      deposit being held in escrow for $500,000.  We are

15      also adjusting their bid down by $100,000 to capture

16      the cost of cleaning tanks as stated in their APA.

17      Freepoint is, is not assuming the straddle

18      liabilities, so we are also adjusting their bid down

19      for that $2.8 million estimate for straddle

20      liabilities.

21              So between the $100,000 for cleaning

22      tanks and the 2.8, their net bid for purposes of the

23      auction is 2.1 million.  Freepoint also offered a net

24      profit interest, which would be payable starting in

25      2027.  Could be upwards of $25 million based off of a

18

1   a formula for sharing profits.

2              Similarly to how we viewed the Braven

3   alternative consideration, it was too difficult for us

4   to underwrite knowing that it was a couple years out,

5   and not having information about the business plan and

6   the probability of achieving any of that net profit

7   interest.  So we are not assigning any value to that

8   in their bid.

9              MR. HAYWOOD:  And one clarification for

10  Freepoint -- for the record, this is Brett Haywood of

11  Potter Anderson and Corroon on behalf of the debtors.

12  We had asked Freepoint, in line with other bidders,

13  that the reps and warranties in the draft asset

14  purchase -- or proposed asset purchase agreement

15  expire at closing.

16             Can the representative from Freepoint

17  confirm that, if they are the winning bidder, the APA

18  will be revised such that those reps and warranties

19  expire at closing, in line with other bidders?

20             MR. MCMAHON :  Yeah.  Can I let Jason

21  Boland respond to that for Freepoint?

22             MR. HAYWOOD:  Of course.  Thank you.

23             MR. BOLAND :  Sure.  Jason Boland for

24  Norton Rose on behalf of Freepoint.  We can confirm

25  that with respect to the reps and warranties.  And

19

1  given the deducts, Neil, you just went through, what

2  we would appreciate as we go through this auction

3  process just to make sure there's no confusion on what

4  our bid and amount is, if we can just come up with a

5  specific number each time we go around the table.

6  That would be helpful.

7          MR. GUPTA:  Sure.  Yeah.  We'll -- once

8  we start the auction process, we'll put up our tracker

9  of the spread -- of what the bids are, and we can give

10  you any clarification you need, Jason.

11          MR. BOLAND :  Appreciate that.

12          MR. GUPTA:  All right.  The fourth bid

13  is from UMB Bank who has offered a base price of $5

14  million in the form of a credit bid.  They are also

15  not assuming the straddle liabilities, so we are

16  adjusting their bid down by $2.8 million to account

17  for it.  As such, their net bid for purposes of the

18  auction is $2.2 million.  I'll turn to Potter

19  Anderson.  Any clarifications?

20          MR. REISNER :  Yeah, this is Jake

21  Reisner for Potter Anderson on behalf of the debtors.

22    We would just ask for a few confirmations on the

23    record.  First, could UMB please confirm that the

24    interim covenant set forth in your Article 6 can come

25    out of the the APA?

                                                        20

1                    MS. BROWNSTEIN :  This is Beth

2    Brownstein for ArentFox Schiff on behalf of UMB.  The

3    discussion was that we would walk it back for

4    maintaining the business basic.  So we will work on

5    language to address those covenants.

6                    MR. REISNER :  Understood.  And that's

7    my understanding.  Apologies for the confusion.

8                    MS. BROWNSTEIN :  No problem.

9                    MR. REISNER :  Second, could you please

10   confirm that former Section 6.06 E regarding

11   irreparable damage and specific performance as a

12   remedy can come back into the APA form?

13                   MS. BROWNSTEIN :  We did speak to the

14   debtors about this request, and we are going to speak

15    to our client during the break.

16                    MR. REISNER :   Thank you.  And finally,

17    could you please confirm that the representations and

18    warranties will expire as of the closing date?  And

19    those are specifically with reference to 8.06 E is

20    where this is found.

21                    MS. BROWNSTEIN :   Again, we did speak

22    to the debtors about this prior to starting the

23    auction, and we will revert with our client during the

24    break on that point.

25                    MR. REISNER :   Great, thank you very

                                                            21

1    much.

2                    MR. GUPTA:  All right, and one other

3    point I'll make.  I know we did circulate the initial

4    versions of each one of the APAs to all the parties

5    last night, that there are further revised red lines

6    that we received.  Those are prior to all the on the

7    record clarifications we made.  But we we will be

 8   circulating those to everybody as well.

 9                    Yeah.  Yep.  So the debtors in

10   consultation with the -- sorry, the, the debtors have

11   determined that the bid of Brightmark Parent for 7 and

12   a half million dollars will be the starting bid for

13   the auction.  The initial bidding will be done with

14   minimum over bids of $250,000 each round, as long as

15   there are -- well, first off, we're going to ask

16   parties to -- first round will be to normalize

17   everybody up to the 7 and a half million dollars

18   baseline bid.  And then subsequent to that, each round

19   will be a $250,000 minimum overbid.

20                    As long as there are more than two

21   bidders still active, each round, all parties must

22   match the highest bid of that round in order to

23   continue.  So round two, when we're at 7.75 million of

24   the minimum, everybody would have to match that.  If

25   somebody would decide to go higher, then that round,

1   everybody would have to match that to go to the next

2   round.

3            Once we get to a point where there's

4   only two bidders left, then we'll just have minimum

5   overbids for each party, each round.  Anything that I

6   missed there?

7            MR. HAYWOOD:  Yeah, are there any

8   questions on that?  We want to make sure we're very

9   clear on -- it'll be a two-stage auction on that.  So

10  if parties have questions initially, we'd like to

11  answer them now so that everyone can hear the

12  questions.

13           But you know, the idea is that all four

14  parties would hit a number, and then it's the next

15  increment for all four parties to meet.  Only when

16  we're down to two bidders will it revert to the

17  traditional auction format of, you know, bid to one,

18  and then the next one has to top.

19           So as Neil said, assuming the other

20  three bidders normalize their bids up to the baseline

21  bid of the Parent, the next round will be $7.75

22  million, and every party will have to only meet that.

23  A party does have the option of exceeding that in that

24  round and then -- you know, so it's 775, but if

25  someone in round two wants to go to 7.9, everyone else

23

1  would have to go to 7.9.

2           When we are down to two bidders, in the

3  auction, we will revert to the normal auction format.

4  In the event that the baseline bidder is one of the

5  final two bids -- and for hypothetical purposes, if

6  two parties drop out after 10.5 million, the next bid

7  would be at a lower bid increment.  We will discuss

8  that with consultation parties, if any, and the

9  baseline bidder we'll get the benefit of the bid going

10  to the other party.

11           So hypothetically, if it was 10.5

12  million with two parties remaining, the next bid could

13  be 10.6 million.  If it's Brightmark Parent and any of

14  the other three, the bid will go to that other

15  non-baseline bidder.

16           If it is only two parties remaining,

17  neither of which are the baseline bidder, we know we

18  will have at least one consultation party, and we will

19    consult with the consultation party or parties as to

20    who the bid should go to in a fair manner.

21            MR. GUPTA:  And maybe -- Nick, are you

22    able to just pull up the spreadsheet just so we can

23    show you guys exactly how we're going to be comparing

24    the bids before we -- and Jeremy, are we breaking now,

25    or are we just going to start the auction now?

                                                        24

1             MR. RYAN:  I think we should -- I think

2     we can put the bid to the other three people, the

3     other three bidders, Neil.  We have the baseline bid

4     and I do know that people have expressed a desire for

5     a break to talk about some of the clarifications on

6     the APA.

7             And so when we come back, we'll ask for

8     those clarifications to be confirmed, and then for

9     people -- but I think, to be efficient, we should also

10    let people know what the incremental increase to their

11    bid value is in the perspective of the debtors to

12    reach the baseline bid value.

13              MR. GUPTA:  Okay.  Yeah.  So if you

14    guys can see the screen that my colleague has shared

15    here, basically we're valuing that the Braven bid at

16    4.9, the Freepoint bid at 2.1, UMB at 2.2 and the

17    baseline bid from be Brightmark Parent at 7 and a half

18    million dollars.

19              So essentially, each party, to proceed,

20    would have to match the 7 and half million dollars.

21    So Freepoint's offer would have to increase by $5.4

22    million.  We would just call that a 7 and a half

23    million dollar bid, but technically, that would be a

24    $10.4 million cash bid.

25              Similar for Braven, you'd have to

                                                    25

1    increase your bid by $2.6 million in order to get to

2    the 7 and a half.  And UMB would have to increase

3    their bid by $5.3 million to get to the 7 and a half

4    million.  Any questions on that?  No.  Okay.

5                    MR. RYAN:  How long do parties think

6      they need for a break?  We would suggest coming back -

7      - is 11:28.  We would suggest coming back on at noon.

8      So do parties feel that is a sufficient amount of

9      time?  Does anyone object to coming back at noon?

10                    MR. SIMON:  No objection here.

11                    MR. RYAN:  Hearing no objection and one

12     affirmative, no objection, we will break until noon.

13     And we are off the record, Madam Court Reporter.

14          (Off the record.)

15                    MR. GUPTA:  All right.  Nick, can you

16     put up the auction spreadsheet now?  So I know we have

17     this in a different order up here right now, but I

18     think first we'll go to Brightmark Parent.  I know

19     there was at least one term from the APA that we were

20     hoping that Brightmark Parent would confirm before we

21     move ahead.

22                    Paul, have you been able to confirm

23     that with your client?

24                    MR. ROSENBLATT:  I'm sorry, confirm

25     which point?

1                    MS. SPRANCE :  Yeah, I can say this.

2     This is Ciara Sprance from Potter Anderson on behalf

3     of the debtors.  Paul, we're just wanting to follow up

4     on Section 212, effective termination.  The request

5     was to delete that provision.

6                    MR. ROSENBLATT:  Yeah, we'll agree to

7     do that.  We've made some changes to the provision to

8     delete that the deposit is the sole remedy.  Was that

9     the issue you had?

10                   MS. SPRANCE :  I think that was perhaps

11    the key issue there for us was that it was limiting

12    seller's remedy.  So yes, I think subject to, you

13    know, our review of that revised section, I think that

14    addresses the point.  So thank you, Paul.

15                   MR. ROSENBLATT:  Thank you.

16                   MR. GUPTA:  Okay.  So with with that

17    we'll confirm Brightmark Parent's baseline bid of 7

18    and a half million.

19                   Now, going to Braven, I think we've

20    confirmed everything we talked about in terms of the

21    APA.  Would you like to increase your bid to match the

22    7 and a half million?  Your net bid, essentially, to

23   be 7 and a half million dollars?

24            MR. SIMON:  Neil, it's Jim Simon for

25   Braven.  What we'd like to do is update our bid to $5

27

1    million in cash at closing and a $25 million five-year

2    note with interest pre-funded semi-annually, that note

3    being senior secured.  We see the software as far

4    exceeding the 7 and a half million dollar value placed

5    on the leading bid currently.

6            MR. GUPTA:  So just so I have the terms

7    again, Jim, so a $25 million note with a five-year

8    term, what was the interest rate again?

9            MR. SIMON:  We have it at 8 percent and

10   pre-funded that interest on a semi-annual basis,

11   starting at the note closing.  Note signing, I should

12   say.

13            MR. GUPTA:  Okay --

14            MS. BROWNSTEIN :  Sorry, can you repeat

15   that one more time?  I apologize.  Can you repeat that

16   one more time?  The note --

17                    MR. SIMON:  Absolutely.  $25 million

18   senior secured note.  This is in addition to -- I'll

19   start over.  $5 million in cash at closing.  In

20   addition to that, a $25 million senior secured note,

21   five-year term, 8 percent interest, with the interest

22   pre-funded semi-annually.

23                    MR. GUPTA:  I think we'll have to

24   probably discuss in terms of how to value that first

25   before -- move.  But maybe before we do that, we can

28

1    go on to Freepoint first.

2                     Freepoint.  Would you -- I think we've

3    cleared all the points from the APA we discussed

4    earlier as well.  Would you like to increase your net

5    bid of 2.1 million to a net bid of 7 and a half

6    million dollars, which would be a cash bid of 10.4

7    million?  Or assuming the straddle; right?  Assuming

8    the straddle liabilities to make up for some of that.

 9              MR. MCMAHON :  Sorry, having audio

10  problems here.  Can you hear me now?

11              MR. GUPTA:  Yep, we can hear you, Jeff.

12              MR. MCMAHON :  Yeah.  Okay.  So just to

13  be clear, an all-cash bid of $10.4 million from

14  Freepoint would be on par with the 7.5 opening bid;

15  right?

16              MR. GUPTA:  Yep, that's correct.

17              MR. RYAN:  Or assume the --

18              MR. GUPTA:  Yeah.  Or -- right.  Or if

19  you would do a 7 and a half million dollar bid plus

20  assuming the straddle liabilities and --

21              MR. RYAN:  7.6.

22              MR. MCMAHON :  Yeah.  So --

23              MR. RYAN:  A 7.6 cash plus assuming

24  straddle liability, or with those two deductions,

25  would need to be a 10.4 million cash.

                                                      29

 1              MR. GUPTA:  Right.

2              MR. MCMAHON :  Yeah.  So just to keep

3    it simple from my perspective, we'll go with -- we

4    will increase our bid to 10.4 million cash.  And just

5    to be clear, cash only.  Their original APA, our

6    original bid, had a net profits interest concept.  So

7    we'll remove that and go for a $10.4 million cash bid.

8              MR. GUPTA:  Okay.  Now, moving moving

9    to UMB, I know there, there was still at least one

10   point in the APA, if not multiple points, to confirm.

11   UMB, are you able to confirm those points?

12             MS. BROWNSTEIN :  This is Beth

13   Brownstein from ArentFox Schiff on behalf of UMB.  I'm

14   going to let my partner Tal Unrad respond on the

15   specific APA points.

16             MR. UNRAD :  I'll preface my comment by

17   saying that we are still waiting for the two

18   respective bond holders to have their legal teams

19   approve any final changes.  So we're hoping to get

20   that done in short order.

21             The environmental matters, we have

22   modified those, and we'll be able to send those back

23   to you shortly.  The same is true of the interim

24   covenants.  We've significantly slimmed those down.  I

25   don't expect much question on that.

30

1             The two changes to the closing matters,

2    specific performance and the rep issues, those do

3    require an answer from the holders.  So I can't give

4    you a definitive answer on those right now.

5             MR. GUPTA:  Okay.  Would -- so I guess

6    we can perhaps give -- since we have to break anyway,

7    give you 20 minutes to --

8             MR. RYAN:  Yeah.  And so -- this is

9    Jeremy Ryan on behalf of the debtors.  Those are, you

10   know, from the debtor's perspective, two material

11   provisions that are out of sync with the other three

12   APAs.

13            So assuming that UMB otherwise would

14   move their consideration to be equivalent to

15   Brightmark Parent, as Neil said, we'll give UMB

16   another 20 minutes to confer with their principles.

17            And if they cannot get approval to move

18   their APA to be in line with the other three APAs, the

19   debtors will then make an assessment as to whether UMB

20    should be proceeding with bidding, in fairness, or

21    whether there's a cash value to ascribe to that bid.

22              So the debtors have not made that

23    decision, but reserve all rights, should those two

24    provisions remain out of sync with the other three

25    bidders.


                                                        31

1               MR. UNRAD :  That's fair.  And I guess

2    one thing I would suggest is if the other parties are

3    prepared now to move ahead with the bidding, you know,

4    until an actual change in circumstances of the parties

5    of the bidders exists, I would suggest that maybe we

6    proceed with the bidding.

7               And if for whatever reason we're not

8    able to address those issues internally, we could

9    either adjust the bid at that point appropriately or

10    pause once there is a change in the circumstances to

11    address this specific issue.

12              MR. RYAN:  The debtors aren't

13    comfortable with that right now.  We are trying to run

14    a fair and transParent process, Tal, and these are two

15    points which the debtors view as having materiality

16    and also fundamental impacts on the fairness with

17    respect to the other bidders.

18              And we do need to know, you know, with

19    decision-making authority, where UMB lands on these

20    two points so that we can run a fair process with

21    respect to all four bidders.  So we are not going to

22    proceed with the second round.  Obviously, also, we

23    need to -- debtors need to confer and value the $25

24    million note.  So we --

25              MR. UNRAD :  That's fair.  Yeah, we

32

1    are -- the ask is out there, and hopefully, 20

2    minutes.  I expect it will be, but we will work on it

3    as quickly as possible.

4              MR. RYAN:  Thank you very much.

5              All right.  We're going to adjourn, and

 6    we'll be back on at -- let's just do 12:40.

 7              (Off the record.)

 8              MR. RYAN:  And we are back on the

 9    record.  Chanyri, can you confirm?

10              THE REPORTER:  Yes.  Yes.

11              MR. GUPTA:  Nick, can you put up the

12    spreadsheet again?

13              All right.  So after discussing

14    internally and with Braven as well, the debtors have

15    decided the $25 million note -- we still just don't

16    have enough evidence to assign value to the principal

17    payments.  Part of the note is funding six months

18    worth of -- pre-funding six months worth of interest

19    from the beginning, so that's the only tangible piece

20    to it that we can assign value.

21              So that the debtors have decided to

22    sign a value of $1 million, which would be that six

23    months of interest funded on the $25 million note

24    immediately.  So with that, Braven's bid would be a

25    net bid of $5.9 million, and we would need another

33

1   $1.6 million to meet the $7.5 million baseline bid.

2          MR. SIMON:  Neil, if you're looking for

3   a response, , I'll give you one now.  This Jim Simon.

4   We're not in a position to up our cash bid that much

5   at the moment.  We do disagree with the lack of value

6   being ascribed to the $25 million note.  In any

7   business transaction, that would be given significant

8   value far and exceeding the 7 and a half million

9   dollars.

10          To that end, if this is the decision of

11   of this body, we'd like to have the opportunity to

12   talk with the bond holders about opportunities to

13   utilize our assets and technology in response to their

14   successful future bid.

15          MR. GUPTA:  Okay.  So I guess you're

16   saying you're not able to increase your bid.  But if

17   UMB were to be the winning bidder, you'd want to have

18   discussions with them; is that right?

19          MR. SIMON:  That's correct.  And even

20   as soon as during the auction, if we're not going to

21   be considered a bidder anymore, then we'd like to talk

22   with them sooner rather than later.

23          MR. RYAN:  You're free to talk to them

24    at the conclusion of the auction.  You know, their bid

25    is premised on being a liquidation bid.  So you know,

34

1    we have not considered their bid as a going concern

2    bid.  But I think it's -- that's just the bid they

3    have submitted, very clearly that they were submitting

4    a liquidation bid.  But as of right now, they're still

5    a bidder.  So I think for right now, we're going to

6    say you're free to talk with them when the auction

7    concludes.

8                    MR. SIMON:  Very good.

9                    MR. GUPTA:  I guess moving to UMB,

10   then, it seems like -- I think we have cleared

11   everything.  So at least from an APA standpoint, we're

12   on a consistent basis with other bidders, UMB would

13   have to increase their bid by, by $5.3 million to meet

14   the $7.5 million baseline bid.

15                   UMB, would you like to increase your

16   bid?

17                    MS. BROWNSTEIN :  This is Beth

18    Brownstein from ArentFox Schiff on behalf of UMB.  So

19    just to confirm that the email that was sent by Tal

20    today at -- I believe it was 12:59 with the redline,

21    that that red line was acceptable to the debtors and

22    we are bidding off that APA, to confirm?

23                    MR. RYAN:  Yes, that that red line was

24    generally acceptable.  I mean, we may have small

25    revisions, but in concept, we view that as an

35

1    acceptable redline.

2                    MS. BROWNSTEIN :  Okay.  Okay.  Then --

3    and we can confirm that we are prepared to submit a --

4    using a credit bid for the $7.5 million.

5                    MR. RYAN:  And so to be clear, that

6    would be --

7                    MR. GUPTA:  Yeah, a $10.3 million

8    credit bid less the $2.8 million.

9                    MS. BROWNSTEIN :  Correct.  Correct.

10    Accounting for the adjustment, yes.

11              MR. GUPTA:  Okay.  All right.  Now

12    we'll move on to round two.  So the minimum bid in

13    round two will be 7 -- and from a net bid perspective,

14    as well, with the adjustment.  So it'll be $7.75

15    million.  So the bid will go to Freepoint first.  Your

16    cash bid would have to be $10.65 million, and then

17    with the adjustments, to be a $7.75 million bid.

18              MR. MCMAHON :  Yeah.  With the

19    departure of Braven, I think we'd like to request a

20    breakout session, because the way that this $2.8

21    million is treated now without Braven in the mix I

22    think requires some additional discussion.

23              MR. RYAN:  I think we'd like to have

24    that discussion on the record.

25              MR. MCMAHON :  Okay.  So the way we see

36

1    it right now is, essentially, Brightmark Parent is

2    getting credit for what is essentially a credit bid of

 3   a portion of their DIP, which is unsecured.  And it

 4   was different when Braven was in.  That's a third

 5   party taking over liabilities.

 6              But with Brightmark Parent in here,

 7   who's the owner of the DIP, essentially those

 8   transition liabilities should be funded under the DIP.

 9   And if they want to include that as part of their bid,

10   they can credit bid that, but it shouldn't be treated

11   as a cash adjustment like it's being treated here.

12   And let me just defer to my colleague, Jason or Mark.

13              MR. BOLAND :  Just to add to that --

14   this is Jason Boland, Norton Rose.  You know, if the

15   DIP, which is a subordinated DIP, is funded to --

16   well, which is funded to pay those straddle costs, I

17   mean, that $2.8 million is dollar for dollar reduction

18   of the secured debt versus what is effectively, as

19   Jeff said, a credit bid by Brightmark Parent right

20   now.

21              So we don't see these being dollar for

22   dollar comparisons of the bid, and we think our bid is

23   well superior than the existing bids on the table with

24   Braven dropping out.

25              MR. WORDEN :  Yeah.  And, and this is

37

 1    Mark Worden from Freepoint.  So the Parent is already

 2    obligated under the DIP to provide 13 million of

 3    financing.  My understanding is that limit has not

 4    been reached.  So the debtor is fully able to pull the

 5    2.8 million that we're talking about here from DIP

 6    financing.

 7                    Why wouldn't the debtor pull that money

 8    instead of reducing bids that would go to other

 9    creditors?  That's the question; right?  The 2.8

10    million's already funded, but we're trying to deduct

11    it from bids, and that doesn't seem to make any sense.

12                    MR. RYAN:  We understand your

13    articulation of the issue, and we thank you for

14    putting that on the record.  The debtors will consider

15    that issue.

16                    I do want to note right now that, while

17    Braven has chosen not to make a bid, that was based on

18    the rules and valuations we announced at the beginning

19    of the last round.  And so I understand your

20    perspective of the debtors, the perspective with

21   respect to Brightmark.  But you know, the debtors also

22   need to be mindful of whether the process was also

23   fair, and maintains fair, and doesn't change after the

24   fact in a way that Braven might have acted

25   differently.

38

1             So the debtors also have duties to all

2   who have participated in the process.  We're not

3   announcing a a decision right now.  We understand your

4   concerns, and the debtors will confer to to discuss

5   those returns.  But we did want to just note that it

6   is not from the debtor's perspective, at this point.

7             MR. MCMAHON :  Well, I'd like to make a

8   point here, though, because it's not like we're

9   proposing that we change the rules.  What we're

10   proposing is the value of assuming those transition

11   liabilities with Braven gone.  Now the bids are

12   different.  There's just different valuation.

13             It's not changing the rules.  It's

14    changing how you evaluate it.  Just like Braven came

15    back with a $25 million structured note, you guys went

16    and valued that.  That's different.  So I think the

17    debtor should be looking at this now.

18                    MR. RYAN:  We are going -- please let

19    me finish.  Please, let's not interrupt.  I've just

20    been interrupted once.  We're not going to conduct an

21    auction where people talk over each other and

22    interrupt.

23                    We acknowledge your position.  There

24    have been values placed on components of bids in the

25    first round and in the second round.  All I'm telling

39

1    you is the debtors will examine the issue you have

2    raised.  But I'm just letting you know that from the

3    debtor's perspective, we also need to make sure it's

4    fair to those who have participated and made decisions

5    based on the previously announced valuations of bids,

6    and that includes Braven's, someone who has

 7    participated and has made decisions based on what

 8    we've announced to be values.

 9              So I hear your concern, and the debtors

10    are going to take it seriously.  We will take a break

11    to discuss the concern.  I see other people turning

12    their screens on.  So while this is not going to turn

13    into oral argument, if people want to -- other bidders

14    want to weigh in on the issue briefly so that the

15    debtors have the perspective of the other two bidders

16    that remain, we will hear those perspectives.

17              This is not going to become a debate

18    among bidders, but we will hear if Brightmark Parent

19    and if UMB want to put their position on the record

20    with respect to whether valuation changed.  And

21    frankly, we'll also let Braven weigh into, if that

22    would -- if they're going to say that that would have

23    affected their decision-making.

24              MS. BROWNSTEIN :  This is Beth

25    Brownstein from ArentFox Schiff on behalf of UMB.  We

1   want to consider the point, and we will reserve our

2   rights to weigh in when we revert back from a break.

3   Thank you.

4            MR. RYAN:  Thank you.

5            MR. WORDEN :  And just to be clear, if

6   I may, for Freepoint, our question is, why are the

7   post-petition expenses not being covered by the DIP

8   loan that seems to have availability?  That's our

9   question.

10           MR. RYAN:  Yeah, we understand the

11  point.  Mr. Rosenblatt?

12           MR. ROSENBLATT:  This is Paul

13  Rosenblatt for the Brightmark Parent.  The $2.8

14  million amount are expenses that would come due

15  post-closing, and the DIP expires on May 18th.  So

16  there is no provision in the DIP to pay expenses that

17  occur after the DIP expires, even if there was

18  remaining availability under the DIP.

19           MR. RYAN:  Thank you for your position.

20  I will now -- if Braven wants to offer a position on

21  this as well, we will entertain it -- or listen to it,

22  I'm sorry.

23           MR. SIMON:  Yeah.  This is Jim Simon

24  with Braven, and just to point to what Mr. Rosenblatt

25   just said, that's not how it was explained to us by

41

1    the bankers.  So we'd want clarity on just what that

2    straddle liability is truly meant to cover.

3              All the information communicated to us,

4    it was as the definition in the APA states.  It was

5    for costs incurred from petition to closing, not

6    incurred after closing.  So that's point one, and

7    point two, we'll have to talk amongst ourselves with

8    counsel before we give a final position.

9              MR. RYAN:  I think, and I don't want to

10   speak for Mr. Rosenblatt too much.  I think

11   Mr. Rosenblatt's point was -- your definition of

12   straddle is correct.  Mr. Rosenblatt's point is that

13   after May 16th, we do not have a DIP facility.  So to

14   the extent that things are due post May 16th, even if

15   there's availability, I no longer have a DIP loan.  So

16   I think that was his point.

17             And I would ask Braven -- you know, we

18    will consider this, as the debtors.  We will discuss

19    it.  We hear everyone's positions.  We will keep this

20    discussion on the record for clarity.  And so we will

21    break for 30 minutes until --

22              UNASSIGNED:  -- 30 minutes?

23              MR. SIMON:  Yes.  We'll break for 30

24    minutes, and we'll come back on the record.  The

25    debtors will announce what their position is with

                                                    42

1    respect to the issue that has been raised by

2    Freepoint.

3              (Off the record.)

4              MR. RYAN:  Madam Reporter, this is

5    Jeremy Ryan.  We are back on the record.

6              It is 1:52 p.m.  The debtors have

7    considered the request of Freepoint to change the

8    method in which bids have been evaluated for the

9    auctions.  The debtors also heard the viewpoints

10   expressed on the record prior to breaking of other

11    parties.

12              MS. BROWNSTEIN :  Jeremy, I apologize

13    for interrupting you.  It's Beth Brownstein from

14    ArentFox Schiff.  We didn't have a chance to weigh in,

15    so I don't know if you want to hear our weigh-in

16    before you discuss it.

17              MR. RYAN:  Happy to have it.  But we're

18    not going to -- just so you know -- I mean, I'm not

19    trying to be -- we have made a decision, so we're not

20    going to break again.  But we're happy to have you put

21    your position on the record.

22              MS. BROWNSTEIN :  Okay.  Thank you.

23    Again, this is Beth Brownstein from ArentFox Schiff on

24    behalf of UMB.  Our position is that we do agree with

25    and support Freepoint's position as it was stated on

43

1    the record prior to the break.  And if their position

2    is adopted by the debtors, we do not believe that it

3    prejudices is UMB.  Thank you.

4              MR. RYAN:  Thank you for that

5    perspective.  For the debtors, their perspective is to

6    the participants of all parties in the process.  And

7    the debtors do not believe it is appropriate, in

8    mid-round, to depart from the stated methods of

9    evaluating bids based on who may or may not be in

10   subsequent rounds of bids.

11              The valuation of bids was announced at

12   the outset.  People did not object to the valuation of

13   bids at the outset.  And we conducted the first round

14   based on that valuation, and the debtors will stick

15   with the valuations that they announced at the outset

16   of the auction.

17              We understand parties may disagree with

18   that, and we understand parties may have redressed to

19   the court.  And if the court disagrees with the

20   debtor's decision and directs the debtors to reopen

21   the auction, the debtors will of course honor any

22   direction from the court.  But the decision we have

23   made today in this moment is that process must be

24   respected, and we cannot change process or valuation

25   mid-round or mid-auction.

44

1             So with that being said, I'll turn the

2    podium back over to Mr. Gupta.  We have people's

3    positions on the record.  If you want to put a further

4    bid in under protest, that's fine.  I don't think we

5    need to -- you know, we have everyone's positions on

6    the record to date, so I don't think we need to

7    belabor the record to that.

8             So I'll turn the podium back over to

9    Mr. Gupta to go to the next round of the auction.

10             MR. GUPTA:  All right.  And I'll ask my

11   colleague, Nick, to open up round two on the

12   spreadsheet here.  So with round two, the bidding goes

13   to Freepoint.  The minimum bid would be $7.75 million,

14   which would be a $10.65 million cash offer from

15   Freepoint, or you could always assume the straddle

16   liabilities to reduce the cash.

17             Freepoint, would you like to bid?

18             MR. MCMAHON :  Yes.  It's Jeff McMahon

19   with Freepoint.  We will agree to move our all-cash

20   offer to 10.65.

21             MR. GUPTA:  All right.  UMB, would you

22    like to increase your bid, which would -- similarly,

23    you could either help help with the credit bid

24    component of it by assuming straddle liabilities.

25    Otherwise, you'd have to increase your credit bid

45

1    about up to $10.55 million.

2              MS. BROWNSTEIN :  This is Beth

3    Brownstein from ArentFox Schiff on behalf of UMB.  We

4    would like to credit bid for 10.55 million.

5              MR. GUPTA:  Okay.  And now Brightmark

6    Parent, would you like to increase your cash bid to

7    $7.75 million or higher?  Is Mr. Rosenblatt on the

8    line?

9              MR. ROSENBLATT:  Yeah.  What is the

10    amount that we need to raise?

11              MR. GUPTA:  $7.75 million is the

12    minimum bid amount.  Well, that would be to match what

13    Freepoint and UMB have done on a net basis.

14              MR. ROSENBLATT:  Yes, we raise to 7.75.

15             MR. GUPTA:  Thank you.  All right.

16    We'll go to the next round of bidding, then.  And the

17    minimum bid requirement is $8 million, which for

18    Freepoint, that would require a $10.9 million cash

19    offer, or you can reduce the cash amount by assuming

20    the straddle liabilities.  Do you wish to bid?

21             MR. MCMAHON :  Yes, we'll go to 10.9.

22             MR. GUPTA:  All right.

23             MR. MCMAHON :  Oh, sorry, this is Jeff

24    McMahon, Freepoint.

25             MR. GUPTA:  Thank you, Jeff.

46

1             UMB, would you like to bid?  The

2    minimum bid requirement would be at least that $10.8

3    million credit bid, or you could assume the straddle

4    liabilities to reduce some of that credit bid

5    requirement.

6             MS. BROWNSTEIN :  I apologize.  The

7    Freepoint bid was 10.9?

8                    MR. GUPTA:  That's correct.  And it's

9     net $8 million.

10                   MS. BROWNSTEIN :  Okay.  Beth

11    Brownstein from ArentFox Schiff on behalf of UMB.  We

12    are prepared to increase our bid to 10.8 million.

13                   MR. GUPTA:  All right.  Thank you,

14                   Brightmark Parent, would you like to

15    bid?  The minimum requirement would be $8 million

16                   MR. ROSENBLATT:  Brightmark Parent bids

17    $8 million.

18                   MR. GUPTA:  Thank you, Paul.

19                   All right.  We'll move on to round

20    four, then.  The minimum net bid requirement is 8.25

21    million in this round.  So for Freepoint, that would

22    mean either an $11.15 million cash bid or a reduced

23    cash bid and assuming the straddle liabilities.  Do

24    you wish to bid?

25                   MR. MCMAHON :  Yes.  Jeff McMahon for

1    Freepoint.  We'll bid 11.150 million.

2                    MR. GUPTA:  Okay.  So with that bid,

3    your net bid is $8.25 million.

4                    UMB, do you wish to bid?  Your minimum

5    bid requirement would be a credit bid of $11.05

6    million or a lower credit bid and assuming the

7    straddle liabilities.

8                    MS. BROWNSTEIN :  This is Beth

9    Brownstein from ArentFox Schiff.  We are prepared to

10   credit bid 11.5 million -- 11.05 million.

11                   MR. GUPTA:  Okay.  All right.  With

12   that your net bid is 8.25 million.

13                   Brightmark Parent, do you wish to bid?

14   Your minimum cash bid amount is 8.25 million?

15                   MR. ROSENBLATT:  Yes.  Brightmark

16   Parent bids 8.25 million.

17                   MR. GUPTA:  Thank you.

18                   Going on to round five now.  So the

19   minimum net bid amount is $8.5 million.  Freepoint,

20   that would mean a $11.4 million cash bid or a reduced

21   cash bid and assuming is straddle liabilities.  Do you

22   wish to bid?

23                   MR. MCMAHON :  Yes.  Jeff McMahon.

24   Freepoint moves our bid to $11.4 million.

25                   MR. GUPTA:  All right.  So the net bid

48

1  amount from Freepoint is $8.5 million.

2              UMB, do you wish to bid?  The credit

3  bid amount would have to be $11.3 million in order to

4  get to a net bid of 8.5 million.

5              MS. BROWNSTEIN :  Beth Brownstein from

6  UMB.  We are prepared to bid $11.3 million in credit

7  bid.

8              MR. GUPTA:  Okay.  So UMB now has a net

9  bid of 8 and a half million.

10              Brightmark Parent, do you wish to bid?

11  Minimum cash bid of 8 and a half million.

12              MR. ROSENBLATT:  Yes.  Brightmark

13  Parentent bids 8.5 million.

14              MR. GUPTA:  All right.  Thank you.

15              All right.  Going on to the next round

16  now.  The minimum -- round six.  Minimum bid amount is

17  $8.75 million.

18              Freepoint, that would mean a cash bid

19   of $11.65 million.  Do you wish to bid?

20                   MR. MCMAHON :  Yes, we will -- Jeff

21   McMahon for Freepoint increases our bid to 11.65

22   million.

23                   MR. GUPTA:  Okay.  Thank you, Jeff.  So

24   net bid of 8.75 million from Freepoint.

25                   UMB, do you wish to bid?  Your credit

49

1    bid amount would have to be $11.55 million.

2                    MS. BROWNSTEIN :  Beth Brownstein from

3    ArentFox Schiff.  We would like to credit bid 11.55

4    million.

5                    MR. GUPTA:  Great.  So UMB'S net bid is

6    also 8.75 million.

7                    Brightmark Parent, do you wish to bid?

8    Minimum cash amount of 875.

9                    MR. ROSENBLATT:  Yes.  Brightmark

10   Parent bids 8.75.

11                   MR. GUPTA:  Thank you.

12                All right.  We're going on to round

13    seven, then.  Minimum bid amount is 9 million, which,

14    for Freepoint, would mean a minimum cash bid of $11.9

15    million.  Do you wish to bid?

16                MR. MCMAHON :  Yes.  Jeff McMahon.

17    Freepoint bids 11.9 million.

18                MR. GUPTA:  Freepoint with a net bid of

19    $9 million.

20                UMB, the credit bid amount would have

21    to be $11.8 million to meet the minimum $9 million net

22    bid amount.  Do you wish to bid?

23                MS. BROWNSTEIN :  Beth Brownstein from

24    ArentFox Schiff on behalf of UMB.  We wish to credit

25    bid 11.8 million.

50

1                MR. GUPTA:  Okay.  And Brightmark

2    Parent, do you wish -- minimum bid amount is $9

3    million of cash.  Do you wish to bid?

4                MR. ROSENBLATT:  Yes.  Brightmark

5   Parent bids $9 million.

6               MR. GUPTA:  All right.  Thank you.

7               On to round eight.  Minimum bid amount

8   is $9.25 million, so for Freepoint, that would mean a

9   $12.15 million cash offer.  Do you wish to bid?

10              MR. MCMAHON :  Yes.  Jeff McMahon,

11  Freepoint, 12.15 million.

12              MR. GUPTA:  Okay, thank you.

13              UMB, do you wish to bid?  You would be

14  required a $12.05 million credit bid to to meet the

15  minimum $9.25 million net bid.

16              MS. BROWNSTEIN :  Beth Brownstein for

17  UMB.  We wish to credit bid at 12.05 million.

18              MR. GUPTA:  All right.  Thank you.

19              And Brightmark Parent, do you wish to

20  bid a minimum cash bid of 9.25?

21              MR. ROSENBLATT:  Yes.  Brightmark

22  Parent will bid 9.25 million.

23              MR. GUPTA:  Thank you.

24              Onto Round 9.  Minimum bid amount of

25  $9.5 million.  So for Freepoint, that would mean a

1    $12.4 million cash offer.  Do you wish to bid?

2                    MR. MCMAHON :  Yes.  Jeff McMahon.

3    Freepoint bids 12.4 million.

4                    MR. GUPTA:  Okay, thank you.

5                    UMB, minimum credit bid amount would

6    have to be $12.3 million.  Do you wish to bid?

7                    MS. BROWNSTEIN :  Beth Brownstein for

8    UMB.  We will credit bid 12.3 million.

9                    MR. GUPTA:  Thank you.  And then

10   Brightmark Parent, minimum cash bid amount of 9 and a

11   half million dollars.  Do you wish to bid?

12                    MR. ROSENBLATT:  Yes.  Brightmark

13   Parent bids $9.5 million.

14                    MR. GUPTA:  Thank you.

15                    Moving on to Round 10 now.  Minimum bid

16   amount of 9.75 million.  So Freepoint, minimum cash

17   bid of 12.65 million.  Do you wish to bid?

18                    MR. MCMAHON :  Yes.  Jeff McMahon with

19   Freepoint bids $12.65 million.

20                    MR. GUPTA:  Thank you.

21                    UMB, minimum credit bid amount required

22   would be $12.55 million.  Do you wish to bid

23                    MS. BROWNSTEIN :  Beth Brownstein for

24   UMB.  We will credit bid at 12.55 million.

25                    MR. GUPTA:  Thank you.

52

1                    And Brightmark Parent, minimum cash bid

2    of $9.75 million.  Do you wish to bid?

3                    MR. ROSENBLATT:  Yes.  Brightmark

4    Parent bids $9.75 million.

5                    MR. GUPTA:  Thank you.

6                    On to round 11. $10 million net minimum

7    bid.  For Freepoint, that would be aa $12.9 million

8    minimum cash bid.  Do you wish to bid?

9                    MR. MCMAHON :  Yes.  Jeff McMahon for

10   Freepoint bids 12.9 million.

11                   MR. GUPTA:  Thank you.

12                   UMB, minimum credit bid amount of $12.8

13   million.  Do you wish to bid?

14                   MS. BROWNSTEIN :  Beth Brownstein for

15   UMB.  We will credit bid 12.8 million.

16                    MR. GUPTA:  All right.  And Brightmark

17    Parent, minimum cash bid of $10 million.  Do you wish

18    to bid?

19                    MR. ROSENBLATT:  Yes.  Brightmark

20    Parent bids $10 million.

21                    MR. GUPTA:  Thank you.

22                    Moving on to Round 12 now.  Minimum net

23    bid of $10.25 million.  So Freepoint, that would mean

24    at $13.15 million minimum cash bid.  Do you wish to

25    bid?

53

1                     MR. MCMAHON :  Yeah.  Jeff McMahon from

2    Freepoint bids 13.15 million.

3                     MR. GUPTA:  All right.  Thank you,

4    Jeff.

5                     UMB minimum credit bid requirement

6    would be $13.05 million.  Do you wish to bid?

7                     MS. BROWNSTEIN :  Beth Brownstein from

8    ArentFox Schiff on behalf of UMB.  We will bid 13.05

 9   million for credit bid.

10                   MR. GUPTA:  And Brightmark Parent,

11   minimum cash bid of $10.25 million, you wish to bid?

12                   MR. ROSENBLATT:  Yes.  Brightmark

13   Parent bids $10.25 million.

14                   MR. GUPTA:  Thank you.

15                   Round 13.  Minimum net bid of 10 and a

16   half million dollars.  Freepoint, that would mean a

17   minimum cash bid of $13.4 million.  Do you wish to

18   bid?

19                   MR. MCMAHON :  Yes, Jeff McMahon with

20   Freepoint bids $13.4 million.

21                   MR. GUPTA:  Thank you.

22                   UMB, minimum credit bid amount of $13.3

23   million.  Do you wish to bid?

24                   MS. BROWNSTEIN :  Beth Brownstein for

25   UMB.  We will credit bid 13.3 million.

 1                   MR. GUPTA:  Thank you.  And then

2    Brightmark Parent, minimum cash bid amount of $10.5

3    million.  Do you wish to bid?

4                    MR. ROSENBLATT:  Yes.  Brightmark

5    Parent bids $10.5 million.

6                    MR. GUPTA:  Moving on to the next

7    round.  Minimum net bid of $10.75 million.  For

8    Freepoint, that means minimum cash bid of 13.65

9    million.  Do you wish to bid?

10                    MR. MCMAHON :  Yes.  Jeff McMahon with

11   Freepoint bids 13.65.

12                    MR. GUPTA:  UMB, minimum credit bid at

13   13.55 million.  Do you wish to bid?

14                    MS. BROWNSTEIN :  Beth Brownstein for

15   UMB.  We will credit bid 13.55 million.

16                    MR. GUPTA:  Brightmark Parent, minimum

17   cash bid of $10.75 million.  You wish to bid?

18                    MR. ROSENBLATT:  Yes.  Brightmark

19   Parent bids $10.75 million.

20                    MR. GUPTA:  Thank you.

21                    All right.  Round 15.  Minimum net bid

22   of $11 million.  Freepoint, that's a minimum cash bid

23   of 13.9 million.  Do you wish to bid?

24                    MR. MCMAHON :  Yes.  Jeff McMahon with

25   Freepoint bids 13.9 million.

55

1                    MR. GUPTA:  Thank you.

2                    UMB, minimum credit bid of 13.8

3    million.  Do you wish to bid?

4                    MS. BROWNSTEIN :  Beth Brownstein for

5    UMB.  We will credit bid 13.8 million.

6                    MR. GUPTA:  Thank you.

7                    And then Brightmark Parent, minimum

8    cash bid of 11 million.  Do you wish to bid?

9                    MR. ROSENBLATT:  Yes.  Brightmark

10   Parent bids $11 million.  Can we take a short recess?

11                   MR. GUPTA:  Yes, we can.  How much time

12   do you need, Mr. Rosenblatt?

13                   MR. ROSENBLATT:  Ten minutes.

14                   MR. GUPTA:  Okay, sounds good.  We'll

15   put everybody in breakout rooms.

16        (Off the record.)

17                   MR. GUPTA:  We're back on the record

18   now.  There was a concern raised by one of the bidders

19   about the order of bidding.  We've kept it consistent

20    throughout, and you know, I guess that the concern is

21    that maybe that some parties might have an advantage

22    for either being first, second, or third in the whole

23    thing.  So debtors would like another few minutes to

24    discuss this.

25                    MR. RYAN:  Yeah.  But if the party that

56

1    raised the concern could raise the concern on the

2    record, please.

3                    MR. ROSENBLATT:  Hey, this is Paul

4    Rosenblatt.  There's two issues I want to raise.  The

5    first one is that there should be a difference in the

6    order of bidding each round.  It shouldn't be the same

7    bidder that bids first, the same bidder that bids

8    second, and the same bidder that bids third each

9    round.

10                    That should be mixed up so that it

11    rotates evenly.  Each bidder has an equal chance of

12    bidding first.  Then the next round, that bidder would

13   bid second.  Then the next round, that bidder would

14   bid third.  So each party is in the mix of in what

15   order they bid.

16            The second issue I wanted to raise is

17   with regard to the Freepoint bid.  The Freepoint --

18   we've had a chance now to review all the redlines

19   during the time that we've had during this auction,

20   and there's two provisions in the Freepoint bid that

21   we don't believe there's funding for under the DIP

22   loan to accomplish and that those provisions should be

23   moved to a post-closing obligation of that buyer so

24   that they should not be obligations of the debtor to

25   do prior to closing.

57

1            And the first one is Section 3.07,

2    dealing with an EPA filing.  And the second one is

3    Section -- I'm sorry, 3.04 dealing with an EPA filing,

4    and Section 5.07 with regard to delivering the plant

5    in an idle and clean state.  Those are obligations

 6   that should be completed by the purchasing entity post

 7   -closing.

 8            MR. RYAN:  Thank you, Mr. Rosenblatt.

 9   We will break for ten minutes to discuss with our

10   clients both issues you raised.  While we're breaking

11   for issues, are there other issues that people want to

12   raise at this time that we should consider?  All

13   right.  Hearing none, we're going to take a ten-minute

14   break.

15            MR. MCMAHON :  I'm sorry, I couldn't

16   get my microphone on.  Just to be on the record, we

17   have no objection -- this is Jeff McMahon with

18   Freepoint -- on the order of the bidding.

19            MR. RYAN:  Thank you, Mr. McMahon.

20   That is actually helpful.

21            Does UMB have a position on the order

22   of bidding?

23            MS. BROWNSTEIN :  This is Beth

24   Brownstein.  We don't have a preference on the order

25   of bidding.

58

1          MR. RYAN:  Okay.  Thank you.  That's

2    very helpful to hear from all three parties.  So we'll

3    take both of those points back under consideration.

4    We'll be back on in ten minutes.

5          (Off the record.)

6          THE REPORTER:  Okay.  On the record.  I

7    am ready.

8          MR. GUPTA:  Thank you.

9          MR. RYAN:  Back on the record?

10          MR. GUPTA:  Yes, she's already on the

11    record now.

12          MR. RYAN:  Okay.  The debtors had an

13    opportunity to confer with the representatives for

14    Freepoint regarding the issues raised by Brightmark

15    Parent before we went off the record last time.

16          The debtor's position on Section 3.04

17    is that this language that was included in the asset

18    purchase agreement is not an impediment to continuing

19    with the auction and not an impediment to closing,

20    should Freepoint end up being the successful bidder at

21    the conclusion of the auction.  And that is because

22    this is a representation in warranty that would not

23    survive the closing, and it is not a condition to

24    closing.

25                    As for Section 5.07 and as was stated

59

1    and confirmed by Freepoint on the record of the

2    auction, when we opened the auction, the debtors

3    agreed to use commercially reasonable efforts to

4    deliver the facility and the purchased assets in the

5    condition as stated in Section 5.07, and there will be

6    a whole backup of the purchase price of $250,000 that

7    would be available to Freepoint, were it to be the

8    successful bidder, if that were not to occur.

9                    And I would ask representatives of

10   Freepoint to confirm their understanding of that as

11   well.

12                    MR. MCMAHON :  Yes.  Jeff McMahon with

13   Freepoint confirming that's the understanding.

14                    MR. ROSENBLATT:  The commercially

15   reasonable language is not in the APA.  Is that going

16   to be modified to reflect that?

17          MR. RYAN:  Yes.  And that was the

18  understanding from earlier in the day.

19          MR. ROSENBLATT:  And that condition in

20  5.07 is not a closing condition; is that correct?

21          MR. RYAN:  That's correct.

22          MR. ROSENBLATT:  Thank you.  The

23  Brightmark Parent reserves all rights with respect to

24  this issue.

25          MS. BROWNSTEIN :  And this is Beth

                                                            60

1   Brownstein from ArentFox Schiff on behalf of UMB.

2   From a fairness and process perspective, we would have

3   issues with modifying APAs that were previously agreed

4   to when we started, and our understanding is that the

5   APA is not being modified.  Thank you.

6          MR. BOLAND :  And this is Jason Boland,

7   Norton Rose Fulbright.  We also share a view, from a

8   fairness standpoint, we don't believe it's appropriate

9   to be negotiating the terms of an APA mid-auction, ten

10    rounds in, so we prefer the auction to resume.

11                    MR. RYAN:  Understood, and thank you

12    all.

13                    MR. GUPTA:  Okay.  With that, I think

14    we'll proceed with the auction now.

15                    MR. RYAN:  Changing orders?

16                    MR. GUPTA:  Yeah.  If you could pull up

17    the spreadsheet, Nick, we can talk about the order of

18    of bidding now.

19                    Pursuant to Brightmark Parents' request

20    to update the order or rotate the order, we are going

21    to be doing that going forward.  So each party will

22    rotate in their order.  For this next round, UMB will

23    go first, Brightmark Parent second, Freepoint third,

24    and then it'll continue to adjust.  Brightmark Parent

25    will go first next round, and then Freepoint second,

61

1     UMB third, and then it'll go back to Freepoint being

2     first, UMB second, Brightmark Parent third.  And we'll

3    keep doing that for the remainder of the auction as

4    all three parties are participating.

5              Assuming no comments to that, we will

6    proceed.  We're at round 16.  Minimum net bid is

7    $11.25 million.

8              UMB, the minimum credit bid you'd be

9    required, it would be $14.05 million.  Do you wish to

10   bid

11             MS. BROWNSTEIN :  Beth Brownstein for

12   UMB.  We will bid 14.05 million credit bid.

13             MR. GUPTA:  All right.  Thank you.

14             Brightmark Parent, minimum cash bid

15   would be $11.25 million.  Do you wish to bid?

16             MR. ROSENBLATT:  Yes.  Brightmark

17   Parent bids $11.25 million.

18             MR. GUPTA:  Thank you.

19             And Freepoint, minimum cash bid would

20   be $14.15 million.  Do you wish to bid?

21             MR. MCMAHON :  Yes.  Jeff McMahon for

22   Freepoint.  We bid 14.150 million.

23             MR. GUPTA:  All right.  Thank you.

24             On to Round 17, minimum net bid of

25   $11.5 million.

62

1               Brightmark Parent, do you wish to bid

2    at that cash amount or higher?

3               MR. ROSENBLATT:  Yes.  Brightmark

4    Parent bids at $11.5 million.

5               MR. GUPTA:  All right.  Thank you.

6               Freepoint, minimum cash bid of $14.4

7    million.  Do you wish to bid?

8               MR. MCMAHON :  Yes.  Jeff McMahon for

9    Freepoint.  We bid 14.4 million.

10               MR. GUPTA:  All right.  And UMB,

11    minimum credit bid of $14.3 million.  Do you wish to

12    bid?

13               MS. BROWNSTEIN :  Beth Brownstein for

14    UMB.  We'll bid 14.3 credit bid.

15               MR. GUPTA:  All right.  Thank you.

16               Round 18, minimum net bid of $11.75

17    million.  Freepoint, that would be a minimum cash bid

18    of $14.65 million.  Do you wish to bid?

19               MR. MCMAHON :  Yes.  Jeff McMahon for

20    Freepoint.  We bid 14.65 million.

21                    MR. GUPTA:  Thank you.

22                    UMB, minimum credit bid of $14.55

23   million.  Do you wish to bid?

24                    MS. BROWNSTEIN :  Beth Brownstein for

25   UMB.  We will credit bid 14.55 million.

63

1                    MR. GUPTA:  Thank you.

2                    And Brightmark Parent, minimum cash bid

3   of 11.75 million.  Do you wish to bid?

4                    MR. ROSENBLATT:  Yes.  Brightmark

5   Parent bids 11.75 million.

6                    MR. GUPTA:  Thank you.

7                     Round 19, minimum net bid of $12

8   million.  UMB, that's a minimum credit bid of $14.8

9   million.  Do you wish to bid?

10                    MS. BROWNSTEIN :  Beth Brownstein from

11   UMB.  We will credit bid 14.8 million.

12                    MR. GUPTA:  Thank you.

13                    Brightmark Parent, minimum cash bid of

14   $12 million.  Do you wish to bid?

15              MR. ROSENBLATT:  Yes.  Brightmark

16   Parent bids $12 million.

17              MR. GUPTA:  Thank you.

18              And Freepoint, minimum cash bid of

19   $14.9 million.  Do you wish to bid?

20              MR. MCMAHON :  Jeff McMahon for

21   Freepoint.  We bid $14.9 million, and we'd like to

22   request a brief intermission.

23              MR. GUPTA:  All right.  Can we keep it

24   to five minutes?

25              MR. MCMAHON :  We're going to need

                                                    64

1   longer than that.  Can we go to maybe 15?  Maybe the

2   half hour here?

3              MR. GUPTA:  Yeah.  Let's try for 15, if

4   that works.  Yeah, so reconvene around 3:30 here.  So

5   we'll put everybody in breakout rooms for 15 minutes.

6              (Off the record.)

 7                    MR. GUPTA:  Chanyri, are you ready?

 8  We're going back on the record?

 9                    THE REPORTER:  Yes.

10                    MR. GUPTA:  All right.  Thank you.

11                    All right.  We'll put the bid

12  spreadsheet back up.  So we're on round 20 now, and BM

13  Parent is is leading off this round.  Minimum cash bid

14  of $12.25 million.

15                    Brightmark Parent, do you wish to bid?

16                    MR. ROSENBLATT:  Yes.  Brightmark

17  Parent bids 12,250,000.

18                    MR. GUPTA:  All right.  Thank you.

19                    Freepoint, minimum cash bid requirement

20  of $15.15 million.  Do you wish to bid?

21                    MR. MCMAHON :  Yes.  It's Jeff McMahon

22  with Freepoint.  We bid 15.15 million.

23                    MR. GUPTA:  Okay.  UMB, minimum credit

24  bid of $15.05 million.  Do you wish to bid?

25                    MS. BROWNSTEIN :  Beth Brownstein from

1   UMB.  We credit bid 15.05 million.

2                 MR. GUPTA:  Thank you.

3                 I'll go to round 21 now.  Freepoint,

4   minimum net bid of $12.5 million.  That would be a

5   minimum cash bid of $15.4 million.  Do you wish to

6   bid?

7                 MR. MCMAHON :  Yes, Jeff McMahon with

8   Freepoint.  Wwe bid 15.4 million cash portion, and

9   then we would add our NPI concept that we had in

10  original bid of a $40 million cap, four zero.

11                MR. GUPTA:  Okay.  So Jeff, can you

12  expand on that?  Would it be similar terms in terms of

13  payment in 2027 based off of net profit interest up to

14  40 million?  Is that right?

15                MR. MCMAHON :  Yes.  That's our

16  expectation.

17                MR. GUPTA:  But it would first be --

18  your purchase price would be credited first before any

19  of that could be paid out?

20                UNASSIGNED:  Right.  So the first 15 --

21  in this case, if 15.4 was the winner, first 15 million

22  would come to Freepoint, and then 100 percent of the

23  waterfall would then go to the NPI holder until they

24  reach their cap of 40 million.

25               MR. GUPTA:  Okay.  Got it.  Take a five

                                                        66

1   minute break?

2               MR. RYAN:  Yeah.  Yeah.  Yeah, we

3   should take a five minute break.

4               MR. GUPTA:  Okay.  I'll put everybody

5   into breakout rooms.  We'll be right back.

6          (Off the record.)

7               MR. GUPTA:  Chanyri, we're going back

8   on the record again now.

9               So the debtor's had a chance to discuss

10  Freepoint's offer, and our view in terms of the net

11  profit interest has not changed from the beginning of

12  the auction even.  Even though the magnitude of the,

13  the cap of it has increased, the hurdle to get to any

14  of the net -- to realize any of the net profit

15  interest has increased as the purchase price has

16  increased.  And so we're still not assigning any value

17  in the bid to the net profit interest.

18                  That said, Freepoint's cash bid did

19   meet the minimum requirement for this round, so we

20   will continue with the other bidders now.

21                  So UMB, minimum credit bid of $15.3

22   million.  Do you wish to bid?

23                  MR. SLADE :  Beth Brownstein -- this is

24   Michael Slade from UMB.  And yes, we wish to bid.

25                  MR. UNRAD :  Yes.  Beth stepped away

                                                        67

1    for a minute.  But thank you, Michael.

2                   MR. GUPTA:  Oh, I'm sorry.  I thought

3    she was on.

4                   MR. UNRAD :  She was.  She had to step

5    away.  But Michael's bid is affirmative for UMB.

6                   MR. GUPTA:  Okay.  Thank you, $15.3

7    million credit bid for UMB.

8                   Brightmark Parent, minimum cash bid of

9    $12.5 million?

10                  MR. ROSENBLATT:  Brightmark Parent bids

11    $12.5 million.

12              MR. GUPTA:  Thank you.

13              So for Round 22, UMB will be the first

14   bidder.  Minimum credit bid at $15.5 million to get to

15   the net bid of 12.75 million.  For this round, UMB, do

16   you wish to bid?

17              MR. SLADE :  Yes, this is UMB.  We wish

18   to bid.

19              MR. GUPTA:  Confirming that you wish to

20   bid the minimum 15.55 million --

21              MR. SLADE :  That's correct.  Yes,

22   that's correct.

23              MR. GUPTA:  Thank you.

24              Brightmark Parent, minimum cash bid of

25   $12.75 million.  Do you wish to bid?

                                                      68

1              MR. ROSENBLATT:  Yes.  Brightmark

2    Parent bids $12,750,000.

3              MR. GUPTA:  All right.  Thank you.

4            Freepoint minimum cash paid of $15.65

5    million.  Do you wish to bid?

6            MR. MCMAHON :  We do not intend to

7    increase our cash offer at this stage, but we'd like

8    to make the statement for the record.

9            Jason, if you want to --

10           MR. BOLAND :  And again for the record,

11   Jason Boland with Norton Rose.  As Jeff mentioned, we

12   don't intend to increase our bid.  We just want to

13   state on the record that we do still believe that our

14   bid has been undervalued by $2.8 million.  We believe

15   there's unsecured DIP financing that is available to

16   cover these costs and that those costs are being

17   unfairly shifted onto a bidder, namely Freepoint.

18           We believe our bid, as we sit here

19   today, at this point, is the highest and best bid out

20   there.  We appreciate the debtors and their advisors

21   have a different view, which we respect.  So with

22   that, we won't be making an additional offer.  Thank

23   you.

24           MR. GUPTA:  Noted.  Thank you.

25           Sorry, I may have gotten out of order

69

1    on that round.

2              MR. RYAN:  I think we're moving on to

3    the next round; right?

4              MR. GUPTA:  Yeah, I just didn't -- I'm

5    sorry.

6              Did Brightmark Parent already confirm

7    their bid of 12.75 million?

8              MR. RYAN:  They did.

9              MR. GUPTA:  Okay.  Sorry.  We just

10   didn't populate it on the spreadsheet.

11             MR. SLADE :  This is UMB.  Are we -- is

12   this round clear?

13             MR. GUPTA:  Yes, it is.  So this round

14   is clear.  So now we have two bidders remaining, UMB

15   and Brightmark Parent.  As we discussed at the

16   beginning in terms of protocol, at this point, we'll

17   just be going to back and forth bids, and each bid

18   would have to be increased at the $250,000 bid

19   increment.  Just give us one minute to update our

20   spreadsheet for, for the the new protocol.

21             MR. ROSENBLATT:  Can we take five

22    minutes while you do that?

23            MR. GUPTA:  Yes.

24            MR. RYAN:  We can go off the record for

25    five minutes, please.


                                                    70

1            (Off the record.)

2            MR. GUPTA:  We've updated the

3    spreadsheet accordingly where we are going to stick at

4    the $250,000 bid increments, and the order as we

5    discussed at beginning the auction will be UMB in each

6    round and Brightmark Parent going after that.  And

7    each bid will have to be at that $250,000 increment at

8    this point as opposed to each round settling out at a

9    a specific number.

10            So Round 23, starting, the minimum bid

11    from UMB would have to be net $13 million, so a $15.8

12    million credit bid.  UMB, would you like to bid?

13            MS. BROWNSTEIN :  This is Beth

14    Brownstein from ArentFox Schiff on behalf of UMB.  We

15    would request -- we're actually on the phone with our

16    client right now, and we would request a 30-minute

17    break to confer with our client.

18              MR. GUPTA:  Okay.  We'll put everybody

19    in breakout rooms for 30 minutes.  Thank you.

20              (Off the record.)

21              MR. GUPTA:  Back to bidding now.  We'll

22    put up the spreadsheet again.  All right.  So where we

23    left it, the bid is to UMB, minimum net bid of $13

24    million, which would be a minimum credit bid of $15.8

25    million.  UMB, would you like to bid?

                                                        71

1              MS. BROWNSTEIN :  Yes.  Beth Brownstein

2    for UMB.  We will credit bid 15.8 million.

3              MR. GUPTA:  All right.  Thank you.

4              And now with the $250,000 increments on

5    each bid now, Brightmark Parent, $13.25 million cash

6    is the minimum.  Would you like to bid?

7              MR. ROSENBLATT:  One second.  So

 8    they're at 13 million net?

 9                     MR. GUPTA:  Correct.

10                     MR. ROSENBLATT:  So we're at --

11    Brightmark Parent will bid 13,250,000.

12                     MR. GUPTA:  Thank you.

13                     Now to Round 24.  UMB, minimum credit

14    bid of $16.3 million.  Do you wish to bid?

15                     MS. BROWNSTEIN :  Beth Brownstein for

16    UMB.  We will bid 16.3 million credit bid.

17                     MR. GUPTA:  Thank you.

18                     And Brightmark Parent, minimum cash bid

19    of $13.75 million.  Do you wish to bid?

20                     MR. ROSENBLATT:  It's 13.75?

21                     MR. GUPTA:  That's correct.  The net

22    bid from UMB was 13.5 million, so the minimum net bid

23    for Brightmark Parent is 13.75.

24                     MR. ROSENBLATT:  Okay.  Just give me

25    two seconds.

1          MR. GUPTA:  Sure.

2          MR. ROSENBLATT:  Brightmark Parent bids

3  13.75 million.

4          MR. GUPTA:  Thank you.

5          Now on to Round 25.  To UMD, minimum

6  net bid of 14 million, which would be a minimum credit

7  bid of $16.8 million.  Do you wish to bid?

8          MS. BROWNSTEIN :  Beth Brownstein for

9  UMB.  We will credit bid 16.8 million.

10          MR. GUPTA:  Thank you.

11          And Brightmark Parent, minimum cash bid

12  of $14.25 million.  Do you wish to bid?

13          MR. ROSENBLATT:  I need to take two

14  seconds.  Hold on.

15          MR. GUPTA:  Okay.

16          MR. ROSENBLATT:  I need ten minutes,

17  but I'll keep it to ten.

18          MR. RYAN:  That's fine.  We'll be back

19  at 5:26.

20      (Off the record.)

21          MR. GUPTA:  Let's go back on the

22  record, then.  And where we left off the bid is to

23  you, Brightmark Parent, minimum cash bid of $14.25

24  million.  Do you wish to bid?

25          MR. ROSENBLATT:  Yeah, I've reached my

73

1   authority, so I'm making my last bid.  So if -- the

2   bond holders know what to do, if they want to do it.

3   My last bid is $14.25 million.

4           MR. GUPTA:  Okay, understood.

5           The bid is to UMB, then.  Minimum

6   credit bid of $17.3 million would get you to a $14.5

7   million net bid.  UMB, do you wish to bid?

8           MS. BROWNSTEIN :  Can I just have one

9   minute to confer?

10          MR. GUPTA:  Sure.

11          MS. BROWNSTEIN :  UMB will bid 17.3

12  million credit bid.

13          MR. GUPTA:  Mr. Rosenblatt, I know you

14  mentioned that that was your last bid, but I'll still

15  give you the opportunity again.  Minimum bid of $14.75

16  million cash.  Do you wish to bid?

17          MR. ROSENBLATT:  Give me two seconds.

18  Brightmark Parent has no further bids.

19            MR. GUPTA:  Okay -- agree with that.  I

20  guess we --

21            MR. RYAN:  Declare the bidders and

22  backup bidders.

23            MR. GUPTA:  The winning bidders is UMB

24  with a net bid of 14 point -- dollars on a credit bid

25  of 17.3 million.  And Brightmark Parent is the backup

74

1  bidder at a cash bid of $14.25 million.  And anything

2  else in closing we need to do here?

3            MR. RYAN:  No, that's it.  I think --

4            MS. BROWNSTEIN :  I think -- yeah, just

5  that we reserve all of our rights with respect to the

6  backup bid and which is the highest and best for the

7  backup bid based on the discussions we had earlier

8  today about the Freepoint bid and where it left off.

9  So I just want to put that on the record that we

10  reserve our rights.

11            MR. RYAN:  Okay.  We expect you to

12    close on your bid and that to be irrelevant, but

13    that's --

14                    MS. BROWNSTEIN :  Understood.  Just

15    putting it on the record.

16                    MR. RYAN:  On the record.  Understood.

17    So we'll work with UMB on their form of sale order.

18                    MR. GUPTA:  Well, thank you everybody.

19    I know there were a lot of stops and starts today, but

20    I appreciate everybody's patience and perseverance

21    here.  With that, the auction is closed and we're off

22    the record.

23                    (Whereupon, at 5:30 p.m., the proceeding was

24                    concluded.)

25